

WARSHAW BURSTEIN, LLP
575 Lexington Avenue
New York, NY 10022
Tel: 212-984-7700
www.wbny.com

**Alan M. Pollack**
Partner
Direct Dial: 212-984-7794
Email: Apollack@wbny.com

May 6, 2021

**VIA ECF**

The Honorable Lorna G. Schofield
United States District Judge
United States District Court
for the Southern District of New York
500 Pearl Street
New York, New York 10007

    Re: *Harrington Global Opportunity Fund, Ltd. v. CIBC World Markets Corp. et al.*, No. 21-cv-00761(LGS)

Dear Judge Schofield:

This firm and Christian, Smith & Jewell, LLP represent Plaintiff Harrington Global Opportunity Fund, Ltd. ("Plaintiff" or "Harrington") in the above-captioned action. Pursuant to the Court's March 31, 2021 order (ECF No. 52), Harrington responds to Defendants' Joint Letter dated April 29, 2021 (ECF No. 61) (the "Joint Letter") that sets forth the grounds under the Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) for their anticipated motion.

**I.   The Foreign Defendants are Subject to Specific Personal Jurisdiction in this Forum**

Despite Defendants' contentions to the contrary, the Amended Complaint makes a *prima facia* showing of this Court's specific personal jurisdiction over the Foreign Defendants.[1] The Court's jurisdiction arises from the Foreign Defendants' participation with their affiliated domestic counterparts,[2] in a cross-border conspiracy to manipulate the market price of Concordia's shares that were traded on a U.S. exchange, including NASDAQ. The Amended Complaint alleges multiple specific examples of overt acts involving spoofing and abusive short selling that the Foreign Defendants performed in furtherance of the scheme and alleges that the Foreign Defendants directed their fraudulent activity into this jurisdiction by manipulating Concordia stock on the NASDAQ exchange and conspired with Defendants located in the

---

[1] The "Foreign Defendants," all of which are based in Canada, are CIBC World Markets, Inc.; Merrill Lynch Canada Inc.; TD Securities, Inc.; UBS Securities Canada, Inc; and Société Générale Capitale Canada, Inc.

[2] The affiliated domestic counterparts, a/k/a "Domestic Defendants", are CIBC World Markets Corp., BofA Securities, Inc., Merrill Lynch Professional Clearing Corp., TD Securities (USA) LLC, UBS Financial Services, Inc., and SG Americas Securities, LLC.

{1342666.1}

WARSHAW BURSTEIN, LLP

District to commit fraud, including by deliberately timing their transactions with their New York counterparts. *See, e.g.*, Am. Compl. ¶¶ 1-2, 17-19, 21-40, 56-60, 66-169, 188-197. These unlawful acts were directed at, and had an adverse impact on, the market price of the 4.9 million shares of Concordia stock that Harrington sold on the NASDAQ in the U.S. *See id.* ¶ 202 (alleging drop in Concordia's share price); *see also Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 86-87 (2d Cir 2018); *Allianz Global Inv'rs GMBH v. Bank of Am. Corp.*, 457 F. Supp. 3d 401 (S.D.N.Y. 2020).

## II. The Claims Asserted Against the Foreign Defendants Are Not Impermissibly Extraterritorial

Harrington is seeking in the Amended Complaint to hold the Foreign Defendants accountable for their participation in a cross-border market manipulation scheme that was directed to and had an adverse impact on the market price of Harrington's 4.9 million shares of Concordia stock that were sold on the NASDAQ in the U.S. Defendants' reliance on *Morrison v. Nat'l Australia Bank, Ltd.*, 561 U.S. 247 (2010) is misplaced. Unlike the plaintiff in *Morrison*, Harrington is not seeking the recovery of damages under Section 10(b) or 9(a)(2) for any purchase or sale of stock on a Canadian exchange. The Second Circuit in *Parkcentral Glob. Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 220 (2d Cir. 2012) recognized that a "bright line rule" that prohibits the application of Section 10(b) to certain cross border conduct would create a "safe harbor" for parties that commit fraudulent acts abroad that injure market participants trading on U S. exchanges. Defendants' argument that Sections 10(b) and 9(a)(2) cannot be applied to cross border market manipulation schemes that they designed, executed, and directed at the U.S. markets is flawed and unpersuasive.

## III. Harrington's Claims Are Not Time Barred

The Amended Complaint sets forth sufficient details demonstrating that a reasonably diligent investor would not have discovered the facts concerning the alleged market manipulation until May 2020. *See, e.g.*, Am. Compl. ¶¶ 41-52. In *Merck & Co. Inc. v. Reynolds*, 559 U.S. 633, 638, 648-53 (2010), the United States Supreme Court held that the two-year statute of limitations does not begin to run on a 10(b) claim until a reasonably diligent plaintiff would have discovered the facts, including scienter, constituting the violation. *See Pontiac Gen. Employees' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 173 (2d Cir. 2011) (limitations period does not begin to run until a reasonably diligent investor has discovered all the necessary facts required to adequately plead the violation). Here, Harrington has alleged sufficient facts demonstrating a reasonably diligent plaintiff could not have discovered these facts any earlier. Defendants improperly rely on when Harrington received certain limited materials from a Canadian regulator regarding Canadian trading, and ignore the additional information Harrington needed regarding transactions in the U.S. in order to plead its claim with specificity. Considering the Canadian regulators refused to file a claim against any broker due to insufficient evidence, it does not follow that the same body of insufficient evidence triggered the accrual of the limitation period. Moreover, Defendants misrepresent the caselaw by stating – without citing controlling authority – that no discovery rule

applies to unjust enrichment claims. Therefore, Plaintiff's Exchange Act claims and unjust enrichment claim – which has a three-year statute of limitations period – are timely.

## IV. Harrington's Amended Complaint States a Claim Upon Which Relief Can be Granted

Harrington has alleged each and every element of its claim, including its conspiracy and aiding and abetting claims.

**Injury in Fact and Loss Causation** – Harrington has alleged a clear causal link between its loss and Defendants' spoofing and abusive short selling manipulation schemes. *See, e.g.*, Am. Compl. ¶¶ 171-172 (alleging *inter alia* that the cumulative effect of 100,000 spoofing events, combined with the continuous abusive short selling of millions of unauthorized shares on 193 of 205 trading days during the months prior to and on the 27 days that Harrington sold its Concordia shares, caused the market price of Concordia stock to decline from $28.03 to $3.13 per share). This more than meets Harrington's pleading obligation. *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 187 (2d Cir. 2015), (Second Circuit held that the burden of pleading loss causation is "not a heavy one" and that the "complaint must simply give the defendants some indication of the actual loss suffered and a plausible causal link between the loss and the misrepresentation.").

**Misrepresentation/Reliance** – Harrington has properly alleged misrepresentation and reliance. For example, Harrington has alleged that by placing baiting orders that were never intended to be executed and engaging in abusive short selling of millions of unauthorized shares, Defendants injected false and misleading information into the market. Harrington also alleged that it reasonably relied on an assumption that the Canadian and U.S. markets were efficient and free of manipulation when it sold its Concordia shares. That is sufficient. Defendants' claim that Harrington's contention to a Canadian regulator somehow precludes it from relying on the efficient markets in the U.S. ignores (i) that Harrington's suspicions were limited to activities on the Canadian exchanges, not the U.S. exchanges, and (ii) at no point during the Canadian regulator's investigations did it ever suggest that there was any market manipulation on the Canadian exchanges, thus confirming Harrington's continued reliance on the market.

**Manipulative Acts** – Contrary to Defendants contentions, Harrington has: (1) alleged specific facts that plausibly demonstrate the nature, purpose and effects of Defendants' manipulative spoofing and abusive short selling schemes; (2) provided specific examples of each Defendant's unlawful manipulative acts; and (3) demonstrated a causal link between the manipulative acts of the Defendants and the artificially depressed prices that Harrington sold its Concordia shares into a market that was being manipulated.

**Knowledge/Intent** – Harrington has demonstrated the element of scienter by alleging facts that evidence conscious misbehavior or recklessness. A strong inference of scienter can be drawn from the facts that demonstrate *inter alia* how each Defendant benefitted and purposely engaged in the alleged fraudulent behavior; knew facts or had access to information that contradicted certain public statements that they made; and failed to supervise the algorithmic trading that they had a duty to monitor.

WARSHAW BURSTEIN, LLP

                                                  Respectfully submitted,

                                                  /s/ Alan M. Pollack
                                                    Alan M. Pollack