UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HARRINGTON GLOBAL OPPORTUNITY FUND, LIMITED,<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>CIBC WORLD MARKETS CORP., et al.,<br><br>　　　　　Defendants. | Civil Action No.: 1:21-cv-00761-LGS<br><br>Hon. Lorna G. Schofield |

**ELECTRONIC DISCOVERY STIPULATION AND [PROPOSED] ORDER**

Plaintiff Harrington Global Opportunity Fund, Limited ("Plaintiff") and Defendants BofA Securities, Inc.; CIBC World Markets Corp.; CIBC World Markets Inc.; Merrill Lynch Canada, Inc.; TD Securities, Inc.; and TD Securities (USA) LLC (collectively, "Defendants"), by and through their undersigned counsel, have stipulated and agreed to give effect to this Stipulation Establishing Electronic Discovery Protocol ("Protocol") as set forth below to facilitate discovery.

1.　　As used herein, the term "Party" or "Parties" means Plaintiff or Defendants or both of them, and the term "Third Party" means any person or entity that is served with a subpoena pursuant to Rule 45 of the Federal Rules of Civil Procedure.

2.　　The Parties will comply with this Protocol in producing any electronically stored information ("ESI") or other documents (collectively, "Discovery Material") in this litigation.

3.　　By agreeing to this Protocol, the Parties do not admit that any Discovery Material produced under its terms is relevant or admissible in this litigation or in any other litigation.

4.　　The Parties will make reasonable efforts to ensure that all ESI and other material they produce is reasonably usable to the same extent as it is maintained in the ordinary course of business.

1

5.      The terms of this Protocol shall apply to all Discovery Material disclosed during the course of the litigation pending before the Court, including Discovery Material disclosed prior or subsequent to the entry of this Protocol.

6.      "Native File(s)" means ESI in the electronic format of the application in which such ESI is created, viewed, and/or modified in the ordinary course of business.  Native Files are a subset of ESI.

7.      "Metadata" means: (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.  Metadata is a subset of ESI.

8.      "Static Image(s)" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard computer systems.

9.      An image load/unitization file in a standard .opt litigation support image load format shall be included that provides:  (i) the document number for each image; (ii) the full path name(s) of each TIFF that represents an image; and (iii) the document boundaries for each document.  The load file also shall be in the order that appropriately corresponds with each image file.  The following represents the format of a standard .opt image load/unitization file:  Bates, Volume, Path_to_image, Document Break, Folder Break, Box Break, Total_Pages.

10.     **Production of Hard-Copy Documents**.  The Parties agree to produce hard-copy documents in single-page, black-and-white Group IV TIFF image format named according to Bates number accompanied by document-level optical character recognition ("OCR") text files.

The Parties also agree to provide load files linking the TIFFs with their associated text. The database load file should contain the following fields: "BEGBATES," ENDBATES," "PAGE COUNT," "VOLUME," and "CUSTODIAN." The documents should be logically unitized (i.e., contain correct document breaks: for instance, a five-page document consisting of a cover page and a four-page report should be unitized as a five-page document).

     a.     The parties will scan hard-copy documents such that the images appear the same as the documents that are kept in the ordinary course of business. Reducing image size may be necessary to fit page size or display production numbers and confidentiality designations without obscuring text.

     b.     If a folder with hard copy documents is produced, the label of that folder should be scanned and produced along with the documents in the folder. The foldering relationship among the documents in the folder should be produced, either by use of a parent-child relationship or otherwise.

     c.     Hard copy documents containing color need not be produced in color in the first instance. However, if good cause exists for the receiving party to request production of specific documents in color, the receiving party may request production of such documents in color by providing (i) a list of the Bates numbers of documents it requests to be produced in color format; and (ii) an explanation of the need for production in color format. The producing party shall not unreasonably deny such requests, but need not make such production until the parties reach agreement regarding the additional costs associated with the production of documents in color. Color images produced in response to such a request shall be in single-page JPG format.

      d.    If any original hard-copy document has notes affixed thereto or attachments, the Parties will scan and produce copies of the notes or attachments in the same manner as other documents.

    11.    **Production of ESI.**  For the production of ESI, the Parties agree to produce ESI in single-page, black-and-white Group IV TIFF image format using at least 300 DPI print setting, with the exception of items listed in subsection (a) below.  Each image shall have a unique file name, which is the Bates number of the page.  Original document orientation shall be maintained (i.e., portrait to portrait and landscape to landscape).  TIFFs will show any and all text and images which would be visible to the reader using the native software that created the document.  Additionally, the Parties agree to deliver extracted text corresponding to each imaged document as individual text files named for the starting Bates number of the document.  The path to the text files will be referenced in the Full Text field in the .dat file.  An .opt image cross reference file will also be provided for all TIFF images.

      a.    Exceptions:

          1.    Microsoft Access files, Excel files, spreadsheet files, .CSV files, audio, and video shall be produced in native format with a placeholder TIFF image in accordance with the production format set forth above.  Each native file should be named according to the Bates number it has been assigned, and should be linked directly to its corresponding record in the load file using the NATIVE FILE PATH field.  Redacted Excel files may be produced in TIFF format as specified herein, or may otherwise be produced using a native Excel redaction process.  Images for the redacted Excel files will display the content in the same manner as if such files were printed.

The extractable metadata and redacted text shall be produced in the same manner as other documents that originated in electronic form. To the extent that either Party believes that native files should be produced for a specific document or class of documents not required to be produced in native format pursuant to this Paragraph, the Parties agree to meet and confer on the issue in good faith.

2. *Image Not Readable*. To the extent the receiving party obtains through discovery a file or document that the receiving party believes is not adequately represented in TIFF image format, the receiving party may request that file or document be produced in native format.

3. *Non-Convertible Files*. Certain types of files such as video and sound files are not amenable to conversion into TIFF format. Such files will not be converted into TIFF format but will be represented in the form of a placeholder TIFF image. The placeholder TIFF image will include language indicating the following: bates number, confidentiality designation (if any), and "Document Produced in Native Format." These files will be provided in native format with the source file path provided, or in a reasonably usable form by agreement of the Parties. For example, if the native format is not playable using Windows Media Player, then the file may be produced in an alternate format (for example, recorded telephone calls may be produced in a .wav format).

b. In the event that ESI is produced in a format that is not reasonably usable by the requesting party, the receiving party may request that the producing party produce such ESI in a different format, the production of which shall not be unreasonably withheld.

c. For any document that is redacted, the producing party may withhold any metadata that is the subject of the redaction, and provide OCR text for the produced image as redacted.

d. The Parties agree that all ESI shall be produced with the metadata in the table below and in the manner set forth in this Paragraph, to the extent reasonably available for a particular document. Database information shall be provided in a ".dat" file, which contains the metadata fields provided below as a delimited database load file. For the Production.dat file, the Parties should use Relativity (Concordance) standard delimiters (ASCII 020 corresponding to a column delimiter, ASCII 254 corresponding to a double quote, ASCII 174 corresponding to a new line, and a semicolon used to separate multiple values within a single field). The fielded data should include all the below metadata fields for a file in addition to the unitization (including the production number of the first and last page of each document), and attachments (including information sufficient to identify the parent and child relationships of all documents and ESI that are or have attachments). The first line of the data load file should contain the field headers indicating the contents of each field, and each subsequent line should contain the fielded data for each document, with the same number of fields as the header row (even if empty). The Parties are not obligated to populate manually any of the following fields with the exception of the CUSTODIANS, VOLUME, CONFIDENTIALITY, and REDACTION fields, which must be populated by the producing party.

| Production Metadata Fields | Field Description |
|---|---|
| BegBates | Beginning Bates number |
| EndBates | Ending Bates number |
| BegAttach | Beginning Bates number of the first document in a document family |
| EndAttach | Ending Bates number of the last document in a document family |
| Custodians | Names of all persons from whom the file was obtained |
| FileName | File name of the original file name |
| FileSize | Size of the file in bytes |
| DocExt | Native File extension |
| EmailSubject | Subject line extracted from an email message |
| Title | Title field extracted from the metadata of a non-email document |
| Author | Author field extracted from the metadata of a non-email document |
| From | From field extracted from an email message |
| To | To field extracted from an email message |
| Cc | CC field extracted from an email message |
| BCC | BCC field extracted from an email message |
| DateRcvd | Received date of an email message |
| TimeRcvd | Received time of an email message |
| DateSent | Sent date of an email message |
| TimeSent | Sent time of an email message |
| DateCreated | Date that a file was created |
| TimeCreated | Time that a file was created |
| DateLastMod | Date that a file was last modified |
| TimeLastMod | Time that a file was last modified |
| DateLastAcc | Date that a file was last accessed |
| TimeLastAcc | Time that a file was last accessed |
| SHA-1 or MD5 | SHA-1 or MD5 value for the document |
| FileType | File type of the document |
| Native File Path | Path to native file as produced |
| Page Count | Number of TIFF pages produced |
| Volume | The name of the CD, DVD, or hard drive |
| Full Text | Path to the full extracted text of the document |
| Confidentiality | Confidentiality designation |
| Redaction | Indication whether the file contains redactions |

e.  To reduce the unnecessary costs of reviewing and producing exact duplicate documents, each Party will remove duplicate ESI prior to producing documents. Global de-duplication is executed at the document family level. Stand-alone files will de-duplicate against

7

other stand-alone files, but not against attachments contained in document families. Deduplication shall be done on exact duplicate documents based on MD5 or SHA-1 hash values at the document level. Each Party shall make reasonable efforts to remove exact duplicate ESI across custodians and to produce searchable metadata in the CUSTODIANS field for each produced document sufficient for the receiving party to identify all custodians of the produced document. If such a process is not possible, each Party will conduct deduplication only within a source (e.g., within a custodian). The producing party will disclose which method of deduplication has been utilized. If during the course of its review, the producing party identifies a large number of duplicate documents, the Parties can confer regarding a custom deduplication protocol. No custom deduplication method will be implemented without the consent of the receiving party, and such consent shall not be unreasonably withheld.

12. For all forms of production, parent-child relationships (i.e., the association between an attachment and its parent document) should be preserved. For example, if a Party produces a printout of an email with its attachments, such attachments should be produced behind the email in the order in which they were attached and identified as child documents to the parent email. If a Party withholds as privileged any document or portion of a document, any parent-child relationship must be similarly maintained. For example, if a Party withholds an attachment to an email as privileged, the email will be produced with a child file stating that an attachment has been withheld, and stating the grounds for the withholding. Similarly, if a Party withholds an email as privileged while producing the attachment, the parent-child relationship will be similarly maintained and the grounds for withholding of the email will be similarly stated.

13. Each Bates number will: (i) be unique across the entire document production; (ii) maintain a constant length across the entire production (i.e., ABC0000000 with no space between

the prefix and the number, padded to the same number of characters); (iii) contain no special characters other than dashes or underscores; and (iv) be sequential within a given document and within a given family. If a Bates number or set of Bates numbers is skipped in a production, the producing party will so note in a cover letter or production log accompanying the production. Each production will be assigned a unique volume production number.

14. A Party that issues a Third Party subpoena ("Issuing Party") shall include a copy of this Protocol with the subpoena and request that the Third Party produce documents in accordance with the specifications set forth herein. If a Party issued a Third Party subpoena prior to the execution of this Protocol, that Party shall promptly forward a copy of this Protocol to the Third Party and request that the nonparty produce documents in accordance with the specifications set forth herein. The Issuing Party is responsible for producing any documents obtained pursuant to a subpoena to all other parties. No Party shall be required to reformat or re-Bates stamp any documents or data produced by a Third Party in this litigation. In the event that a Third Party produces documents without Bates numbers, then the Party who sought discovery from the Third Party shall produce the reproduction or production with a unique Bates number in accordance with Paragraph 13 above. Nothing in this Protocol is intended or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or Third Party to object to a subpoena.

15. If there is a conflict between the provisions of this Protocol and the Stipulation and Protective Order Regarding Confidentiality of Discovery Materials (the "Protective Order"), the Protective Order shall control.

16. Nothing in this Protocol shall be interpreted to require the disclosure of any Discovery Material that a Party contends is protected from disclosure by the attorney-client privilege, work-product doctrine, or any other applicable privilege or protection, nor shall this

Protocol require the production of ESI or other documents that are not discoverable under applicable law.

17. Moreover, nothing in this Protocol shall waive or limit any protections afforded the Parties under Federal Rule of Evidence 502(d).

18. The parties will discuss and attempt to reach an agreement on search methodologies with the goal of limiting the scope of review for production, minimizing the need for motion practice, and facilitating production in accordance with the deadlines set by the Court or agreed upon by the Parties.

19. Nothing in this protocol limits the Parties' right to utilize advanced culling methodologies, including but not limited to deploying Technology Assisted Review workflows.

20. The Parties shall make their best efforts to comply with and resolve any differences concerning compliance with this Protocol.

Dated: New York, New York
April 11, 2022

SO STIPULATED AND AGREED

*/s/ Jamie S. Dycus*
Jamie S. Dycus
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8851
jamie.dycus@wilmerhale.com

*Counsel for Defendants TD Securities, Inc., and TD Securities (USA) LLC*

*/s/ Sandra D. Hauser (e-signed with consent)*
Sandra D. Hauser
DENTONS US LLP
1221 Avenue of the Americas

*/s/ Alan M. Pollack (e-signed with consent)*
Alan M. Pollack
Felicia S. Ennis
Leron Thumim
WARSHAW BURSTEIN, LLP
575 Lexington Avenue, 7th Floor
New York, New York 10022
(212) 984-7700
apollack@wbny.com
fennis@wbny.com
lthumim@wbny.com

James Wes Christian, Esq.
Ardalan Attar, Esq.
CHRISTIAN LEVINE LAW GROUP, LLC
2302 Fannin, Suite 205
Houston, Texas 77002

10

New York, NY 10020  
(212) 768-6802  
sandra.hauser@dentons.com  

Stephen J. Senderowitz  
233 South Wacker Drive, Suite 5900  
Chicago, IL 60606  
(312) 876-8141  
stephen.senderowitz@dentons.com  

*Counsel for Defendants CIBC World Markets Corp. and CIBC World Markets Inc.*

*/s/ Abby F. Rudzin (e-signed with consent)*  
Abby F. Ruzdin  
William J. Martin  
O'MELVENY & MEYERS LLP  
Seven Times Square  
New York, NY 10026  
(212) 326-2000  
arudzin@omm.com  
wmartin@omm.com  

*Counsel for Defendants BofA Securities, Inc. and Merrill Lynch Canada, Inc.*

(713) 659-7617  
jchristian@christianlevinelaw.com  
aattar@christianlevinelaw.com  

*Counsel for Plaintiff Harrington Global Opportunity Fund*

Dated: _____

**So Ordered:**

_____  
The Honorable Lorna G. Schofield  
United States District Judge