

**ALAN M. POLLACK**
PARTNER

DIRECT DIAL: 212-984-7794
EMAIL: apollack@wbny.com

WARSHAW BURSTEIN, LLP
575 Lexington Avenue
New York, NY 10022
(212) 984-7700
www.wbny.com

Defendants shall file a responsive letter, not to exceed three pages, by **August 12, 2022**.

So Ordered.

Dated: August 8, 2022
New York, New York

August 5, 2022

*[signature]*
LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

**VIA ECF**
The Honorable Lorna G. Schofield
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:  *Harrington Global Opportunity Fund, Ltd. V. CIBC World Markets Corp. et al.*, No. 21-cv-00761(LGS)

Dear Judge Schofield:

    We write pursuant to Local Rule 37.2 and Individual Rules I.B.2, II.B.2, and III.C.3 on behalf of plaintiff Harrington Global Opportunity Fund, Ltd. ("Harrington" or "Plaintiff") to request: (a) an extension of the date to complete document discovery due to unforeseen delays in receiving documents that have been subpoenaed from nonparties and requested from Defendants; and (b) a pre-motion discovery conference to compel Defendants to produce the full set of trading and order activity documents requested by Plaintiff—including customer trading records—concerning the alleged market manipulation of Concordia International Corp. ("Concordia") (the "Trading Records").

**I.**   **<u>Unavoidable Delays in Nonparty Production and the Extensive Meet-and-Confer Process in Which the Parties Engaged Present Compelling Reasons to Extend Deadlines</u>**

    This Court's March 7, 2022 Civil Case Management Plan and Scheduling Order [Doc. 102] directed the parties to serve their requests for production of documents on each other by April 22, 2022, and for responsive documents to be produced by August 22, 2022. Defendants and Harrington each served timely Requests for Production ("RFPs"). Harrington also served nonparty subpoenas on the New York Stock Exchange, CBOE Global Markets, NASDAQ, and IEX stock exchanges, the Depository Trust Clearing Corporation ("DTCC"), Broadridge Financial Solutions ("Broadridge"), and the Financial Industry Regulatory Authority ("FINRA"). The requested trading data from the nonparties was not available to Harrington prior to the commencement of this lawsuit. FINRA, which possesses particularly critical data, has agreed to produce the requested documents, but has advised counsel that because the documents must be retrieved from its archives, it believes that it will take until mid to late September for these documents to be produced.

    Regarding party discovery, the parties have conferred in good faith pursuant to Individual Rule III.C.3, jointly and individually, more than ten times and have exchanged multiple letters and

**Warshaw Burstein, LLP**

Hon. Lorna G. Schofield<br>
August 5, 2022<br>
Page 2 of 4

emails stating their respective positions concerning producing the requested Trading Records, in order to avoid Court intervention.  However, due to Defendants' unwillingness to produce these relevant documents, which they are required to produce pursuant to Fed R. Civ. P. 26, approximately twelve weeks have been spent unsuccessfully trying to resolve this issue.[1]  With respect to the documents requested in the other RFPs, the parties have had more success meeting and conferring and have not yet identified any objections they have not been able to resolve.  The parties are working to finalize the parameters of searches for those documents and produce them.

Based on the anticipated production of third-party discovery occurring in mid to late September and the critical relevance of the Defendants' Trading Records, which Defendants improperly refuse to produce, Harrington respectfully requests an extension until October 10, 2022 of the deadline for production of documents in this case.  No prior requests for this extension have been made, and Defendants do not oppose this requested extension of the date by which document production must be complete.  We do not anticipate that extending the cutoff date for document production until October 10, 2022 will require an extension of the December 15, 2022 deadline for parties to complete depositions in this case.

## II. This Court should Compel Defendants to Produce Data Responsive to RFPs 1 and 2

Harrington's Amended Complaint, filed April 22, 2021 [Doc. 56] ("Am. Compl."), alleges that Defendants and their customers perpetrated an unlawful spoofing scheme to manipulate downward the share price of Concordia securities by placing on multiple exchanges and trading venues throughout Canada and the United States orders that were never intended to be executed.  These allegations were based on the data regarding Concordia trading and order activity that was available to Plaintiff before commencing this action.  The Amended Complaint also includes claims against John Doe defendants (the "John Does") and specifically defines John Does as "entities, including . . . Defendants' customers, whose identities are currently unknown, that unlawfully participated in the scheme to manipulate the trading and market price of Concordia securities."  Am. Compl. ¶ 37 (emphasis added).  The Amended Complaint further alleges that the Defendants routed orders and executed trades on behalf of their own proprietary accounts and for "the accounts of its customers."  Id.¶¶ 21, 22, 24, 25, 28, 29 (emphasis added).  At least one Defendant—CIBC Canada—has since confirmed that some of the trading and order activity that the Amended Complaint identified as associated with CIBC Canada's Market Participant Identification ("MPID") was initiated by CIBC Canada's customers who used CIBC Canada's Direct Market Access Pipes ("DMAs") to place orders on exchanges.

Accordingly, Plaintiff's first two RFPs seek the Trading Records—including customer identities and routing instructions—concerning all trades in Concordia securities made by or through Defendants during the relevant period.  This requested data is indisputably relevant and discoverable under Fed. R. Civ. P. 26 for the simple reason that it concerns the trading and order activity that was referenced in the Amended Complaint as the basis for Plaintiff's claims.  Plaintiff

---

[1] For several weeks during the meet and confer process, Defendants requested that Plaintiff *first* produce certain information, which Defendants would analyze and *thereafter* decide whether to produce the customer Trading Records that Plaintiff had requested.  When Harrington rejected taking a phased approach to discovery—which this Court previously rejected—Defendants refused to produce the requested data.

{1496314.10 }                                                                2

**Warshaw Burstein, LLP**                                                                                   Hon. Lorna G. Schofield
August 5, 2022
Page 3 of 4

is entitled to the identity of Defendants' customers who placed orders utilizing the Defendants' trading platforms for the additional reason that it may be relevant to claims against John Doe defendants.  It is well-settled that plaintiffs asserting claims against "John Doe" defendants may seek discovery that will enable them to identify the John Doe defendants, especially because their identities are not in the public domain.  The Second Circuit has held "we have recognized that situations arise in which the identity of alleged defendants may not be known prior to the filing of a complaint.  In such situations, **the plaintiff should be given an opportunity through discovery to identify the unknown defendants."**  *In re Murphy*, 482 F. App'x 624, 627 (2d Cir. 2012) (quotation and citations omitted; emphasis added); *see also Glonti v. Stevenson*, No. 08CV8960(CM), 2009 WL 311293, at *10 (S.D.N.Y. Feb. 6, 2009) (explaining, in a securities action against brokers, that where plaintiffs do not know the identities of potential defendants and were faced with looming limitations periods, they could "**sue[] defendants as 'John Does' until they [are] able to identify them through discovery**." (emphasis added)). Defendants have, however, refused to produce the requested data—not because it is unduly burdensome or because it implicates privacy concerns, as it is not and does not—but for other unsustainable reasons.

*First*, Defendants argue that their "understanding" of Plaintiff's claims is that they involve proprietary trading only, and therefore any trading or order data associated with Defendants' customers' use of DMAs is irrelevant and need not be produced.  It is not, however, Defendants' "understanding" of the Amended Complaint that controls the scope of discovery but rather it is the allegations themselves—and they plainly encompass trading by Defendants' John Doe customers.

*Second*, Defendants argue that they cannot be held liable for the unlawful trading activity of their customers through the Defendants' DMAs.  But without knowing who entered those trades, why they did so, and what involvement, if any, Defendants had in the genesis of the trading and order activity, it is impossible for Plaintiff to assess the relevance of such data as it relates to their claims against the Defendants.  The entire purpose of discovery is for the parties to *discover* the relevant facts, including the who, what, and why of the Defendants' trading activity.  Defendants' arguments regarding their lack of responsibility or liability for their customers' trading is an argument for a summary judgment motion, not a justification for withholding critical and indisputably relevant discovery.

*Third*, Defendants have refused to acknowledge the relevance of the requested customer Trading Records by arguing that any claims Plaintiff might assert against unnamed defendants are barred by the applicable statute of repose.  Defendants lack standing to assert any defenses on behalf of "John Doe" defendants and withhold relevant and discoverable data on the basis of those defenses.  Moreover, without knowing the identities of those defendants, their connections to existing defendants, and the details regarding their trading activity, it is premature to form any conclusions regarding the viability of claims against as-yet unnamed defendants.

Simply stated, the requested Trading Records are: (a) relevant to identifying and establishing the parties, including any "John Doe" defendants, responsible for the spoofing scheme; (b) not burdensome to produce (especially in proportion to the needs of the case and in comparison with custodial discovery); and (c) not implicating any privacy concerns, as the protective order that is in place eliminates this issue.  Defendants have no basis to withhold this information.

Warshaw Burstein, LLP

Hon. Lorna G. Schofield
August 5, 2022
Page 4 of 4

                Respectfully submitted,

                By:   /s/ Alan M. Pollack
                      Alan M. Pollack
                      Leron Thumim
                      Madison N. Kelley
                      WARSHAW BURSTEIN, LLP
                      575 Lexington Avenue, 7th Floor
                      New York, New York 10022
                      Tel: 212-984-7700
                      apollack@wbny.com
                      lthumim@wbny.com
                      mkelley@wbny.com

                      James Wes Christian, Esq.
                      Ardalan Attar, Esq.
                      CHRISTIAN LEVINE LAW GROUP, LLC
                      2302 Fannin, Suite 205
                      Houston, Texas 77002
                      Tel: (713) 659-7617
                      jchristian@christianlevinelaw.com
                      aattar@christianlevinelaw.com

                      *Attorneys for Plaintiff Harrington Global Opportunity Fund*

cc:     All parties via ECF

{1496314.10}