August 12, 2022

**BY ECF**

Hon. Lorna G. Schofield
United States District Court
Southern District of New York
40 Centre Street, Room 1106
New York, NY 10007

> Re:   *Harrington Global Opportunity Fund, Ltd v. CIBC World Markets Corp. et al.*, No. 21-cv-00761

Dear Judge Schofield:

We write on behalf of all Defendants and in response to the August 5, 2022 letter motion submitted by Plaintiff Harrington Global Opportunity Fund, Limited.

The Court should deny Plaintiff's request to compel Defendants to produce data showing orders and trades in Concordia in 2016 that were not made by Defendants themselves, but instead were made independently by customers, including by utilizing tools that allow them to place the orders directly rather than asking a Defendant employee to do so.  Defendants either already have produced or are ready to produce data concerning *their own trading* in Concordia in 2016, in accordance with the current production deadline.[1]  But customer trades are irrelevant to any claim against Defendants and thus outside the scope of discovery under the Federal Rules.

During the parties' pre-motion discussions, Plaintiff variously contended that discovery on client trading is properly sought: (1) to develop a theory (the authority for which Plaintiff fails to identify) that Defendants are liable for their clients' independent trading; (2) to identify new defendants to substitute for the "John Doe" defendants named in the Amended Complaint (the "AC"); or (3) to develop a new, unpled theory that Defendants conspired with their clients. None of these arguments is supportable under well-established law; nor can Plaintiff demonstrate that its demand—which imposes onerous burdens on Defendants—is proportional to the needs of the case.  The motion should be denied.

### 1. Plaintiff's complaint is based on Defendants' alleged trading, not client trading.

Plaintiff's claim is that Defendants engaged in ***intentional*** market manipulation.  AC ¶ 65.  As a matter of logic, such a claim can be based only on trading by Defendants themselves, not any customer trading.  That is why Plaintiff alleges that Defendants each placed specific orders and trades, all of which are alleged to be spoofing.  AC ¶¶ 70-141.

The AC contains a handful of vague, generalized allegations that Defendants traded for their clients' accounts.  But as this Court observed in ruling on the motion to dismiss, the AC's

---

[1] Defendants agree with Plaintiff that a modest extension of the schedule is warranted, but disagree with Plaintiff's suggestion that Defendants' "unwillingness to produce … relevant documents" is the reason.  As Plaintiff acknowledges, the parties have engaged in lengthy, good faith negotiations about the appropriate scope of discovery.

"tenuous[]" economic theory is that "when a Spoofing Defendant sold that stock, their profits would be increased, or losses decreased, by the difference of the price they paid versus the price they would have paid had they not engaged in spoofing." Dkt. No. 88 at 14. No facts are pled in the AC showing how any alleged spoofing would have benefited Defendants' *clients*.

For that reason, Defendants agreed to produce data showing orders and trades that *they placed*. But records of customers' independent orders and trades are not "relevant to any party's claim or defense," as required by Federal Rule of Civil Procured 26(b)(1). [2]

### 2. Plaintiff cannot prove a claim that Defendants are liable for their clients' trading.

There is no legal theory upon which Plaintiff may hold Defendants liable for customer trades. A customer's entry of orders—even spoof orders (which Defendants deny were made here)—is market activity by the customer, not market activity by its broker-dealer. There is no private right of action for aiding and abetting liability under Section 10b-5. *See, e.g.*, *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 158 (2008).

### 3. Plaintiff is not entitled to discovery to identify new defendants.

Plaintiff cites no authority for the proposition that it can pursue Defendants in this case merely to obtain discovery as to others. But beyond that, Plaintiff would not be able to add any new defendants because any claim against them would be long time-barred. When a plaintiff names "John Doe" as a placeholder defendant because it does not know the identity of a defendant, the plaintiff still must replace the placeholder with a named party within the applicable statute of limitations and statute of repose. *See Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 468-70 (2d Cir. 1995). "'John Doe' pleadings cannot be used to circumvent statutes of limitations, because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued." *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1075 (2d Cir. 1993). Here, Plaintiff's Section 10(b) claims are governed by a five-year statute of repose. *See In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*, 995 F. Supp. 2d 291, 299 (S.D.N.Y. 2014). This "absolute bar on a defendant's temporal liability" began running immediately on "the date of the last culpable act or omission of the defendant" alleged in the AC: November 15, 2016. *See* AC ¶ 1; *CALPERS v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2049 (2017). Thus, the five-year clock for the applicable statute of repose expired on November 15, 2021—almost ten months ago.

Defendants have explained to Plaintiff's counsel that Plaintiff is out of time to add new defendants. In neither its pre-motion correspondence nor its letter motion has Plaintiff addressed the controlling Second Circuit precedent cited by Defendants or otherwise shown that Defendants were incorrect in their assertion that the statute of repose bars any claim Plaintiff would assert against John Does. Instead, Plaintiff asserts that Defendants "lack standing" to address the application of the statute of repose. But the question is not one of standing, it is proportionality. *See* Fed. R. Civ. P. 26(a)(1). To the extent orders to buy and sell Concordia were even sent by Defendants during the relevant period, the majority were submitted by customers. Many and potentially all trades at issue here were made independently by customers with direct market access. Plaintiff demands the identification of every one of those customers

---

[2] CIBC US did not conduct principal trading in Concordia in 2016, nor was there any mechanism for direct market access trading by customers through CIBC US in 2016. There are thus no records for CIBC US to produce.

for a claim that it *can not assert*.  Collecting that detailed trade-level data requires obtaining, analyzing, and processing six-year-old data from multiple disparate trading systems.  Plaintiff's insistence that Defendants also identify each customer by name implicates sensitive client information protected under US and Canadian law, without prior notice, notwithstanding Plaintiff's purpose to identify these entities as defendants.  In sum, Plaintiff's demand for a large amount of sensitive data, for no actual or potential claim, is not proportional to the needs of this case.

4. **Plaintiff is not entitled to discovery to support a claim that Defendants conspired with their clients.**

Plaintiff has also argued that it is entitled to discovery concerning Defendants' clients to support a claim that Defendants conspired with their clients.  But no such theory of liability is pled in the AC.  As the Court previously explained, Plaintiff alleges that each Canadian Defendant conspired with its US counterpart, but there is no plausible or even identifiable allegation in the AC that any Defendant conspired *with its clients*.  Plaintiff cannot take discovery on a theory not pled in its complaint.  *See Lifeguard Lic. Corp. v. Kozak*, 2016 WL 3144049, at *3 (S.D.N.Y. May 23, 2016) (noting "sound reasons for limiting discovery to claims that have been pled"); *Guan Ming Lin v. Benihana Nat. Corp.*, 2010 WL 4007282, at *3 (S.D.N.Y. Oct. 5, 2010) (parties "have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings").

5. **Plaintiff should not be permitted to expand its "fishing expedition."**

Plaintiff's demand for customer data is merely an expansion of the fishing expedition that began with the AC.  In connection with its claim that each Canadian Defendant "coordinated" its alleged spoofing of Concordia with its U.S. affiliate, Plaintiff identified thousands of specific orders in Concordia on U.S. markets that it alleged were entered by the U.S. Defendants.  During a meet and confer on July 22, 2022, Plaintiff conceded that it had *no data* connecting those orders to any of the U.S. Defendants when it filed the AC.  According to Plaintiff, its consultant analyzed data from a Canadian industry self-regulatory organization, which purportedly shows Canadian Defendants' orders and trades, and then somehow attributed the specific U.S. orders to the U.S. Defendants based on the consultant's *anonymous* U.S. order data set.  Plaintiff asserted that it made these attributions by using "artificial intelligence," though could not explain how this was possible.

Plaintiff's allegations against Defendants thus amount to pure conjecture.  Defendants will produce discovery concerning their own trading (to the extent there was any), but to be clear, even that discovery is grounded on mere conjecture on Plaintiff's part—conjecture that proved demonstrably untrue in the case of CIBC US, which engaged in no trading in Concordia (and had no customer trading).[3]  Even *broader* discovery reaching client trading is unwarranted.

The Court should not compel this irrelevant and burdensome discovery and at minimum allow Defendants additional briefing to provide context, authority and evidence of undue burden.

---

[3] CIBC Defendants' pre-motion communications, referenced by Plaintiff but not attached, would provide additional context.

3

Respectfully submitted,

By: /s/ *Sandra D. Hauser*
Sandra D. Hauser
DENTONS US LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 768 6802
sandra.hauser@dentons.com

Stephen J. Senderowitz
DENTONS US LLP
233 South Wacker Drive, Suite 5900
Chicago, IL 60606
(312) 876-8000
stephen.senderowitz@dentons.com

*Counsel for CIBC World Markets Corp. and CIBC World Markets Inc.*

By: /s/ *Abby F. Rudzin*
Abby F. Rudzin
William J. Martin
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, New York 10036
(212) 326-2003
arudzin@omm.com
wmartin@omm.com

*Counsel for Defendants BOFA Securities, Inc. and Merrill Lynch Canada Inc.*

By: /s/ *Jamie Dycus*
Jamie Dycus
KING & SPALDING LLP
1185 Avenue of the Americas, 34th Fl.
New York, NY 10036
(212) 556-2211
jdycus@kslaw.com

*Counsel for TD Securities, Inc., and TD Securities (USA) LLC*