

**ALAN M. POLLACK**
PARTNER

DIRECT DIAL: 212-984-7794
EMAIL: apollack@wbny.com

WARSHAW BURSTEIN, LLP
575 Lexington Avenue
New York, NY 10022
(212) 984-7700
www.wbny.com

October 21, 2022

**VIA ECF**

The Honorable Lorna G. Schofield
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:  *Harrington Global Opportunity Fund, Ltd. v. CIBC World Mkts. Corp.*, No. 21-cv-00761(LGS)

Dear Judge Schofield:

    We write on behalf of Plaintiff Harrington Global Opportunity Fund, Ltd. ("Harrington") pursuant to this Court's Individual Rule III.A.1 and Fed. R. Civ. P. 15 (a)(2) seeking a pre-motion conference in connection with filing a motion for leave to file Harrington's Second Amended Complaint (the "SAC"). Fed. R. Civ. P. 15(a)(2) directs district courts to "freely give leave when justice requires." It is well-settled that "[i]n the absence of . . . undue delay, bad faith or dilatory motives," leave to amend should be "freely given." *Forman v. Davis*, 371 U.S. 178, 182 (1962). The SAC is based on facts recently learned in discovery and will not add any new parties. Harrington has not unduly delayed or been motivated by bad faith or dilatory motives in making its request for leave to amend, nor would amendment be futile.

**<u>Harrington Has Neither Unduly Delayed nor Been Motivated by Bad Faith</u>**

    Following its extensive prelitigation investigation and analysis of the limited information available in the public domain, Harrington filed its original complaint in January 2021, alleging that defendants in the above-captioned action ("Defendants") engaged in a cross-border spoofing scheme. Shortly after Harrington filed its complaint—but before any discovery was taken—Harrington amended its complaint pursuant to Fed. R. Civ. P. 15(a)(1). Harrington recently obtained new evidence from Defendants and through subpoenas issued to third parties including the DTCC, Nasdaq, FINRA and Instinet. Harrington now seeks leave to file the SAC to reflect this new evidence and further substantiate its spoofing claims. *See Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 235 (2d Cir. 1995) (holding that leave to amend was properly granted where a party sought to reinstate a defense for which it "required discovery to substantiate").

    Harrington's request to amend is not motivated by bad faith. Rather, Harrington seeks to litigate the case on the merits and streamline the pleadings by dropping parties and claims that are no longer part of this action. The SAC will allege how: (a) Defendants CIBC World Markets, Inc.

{1519294.7}

("CIBC Canada")[1] and TD Securities ("TD Canada") structured and executed their cross-border spoofing schemes; (b) Defendants BOFA Securities, Inc. and Merrill Lynch Canada Inc. (together, "Merrill") perpetrated their domestic and cross-border spoofing scheme; (c) Defendants' schemes impacted the market price of Concordia shares in the United States; and (d) Defendants benefitted from their unlawful conduct.  This amendment is critical, because it will clarify the scope and nature of Harrington's claims to reflect the facts Harrington has learned and encompass conduct for which Defendants have thus far refused to provide discovery.  And while this adjustment might modestly impact the discovery schedule, this Court has previously held that the need for additional discovery is no reason to deny leave to amend.  *Allianz Global Invs. V. Bank of America Corp.*, No. 18 Civ. 10364, 2020 WL 4927575 (S.D.N.Y. Aug. 21, 2020) (Schofield, J.) (party provided "no legal authority for the proposition that the requirement that parties engage in [additional] discovery" is a valid basis to deny leave to amend).

### The Nature of the SAC's Allegations Against CIBC Canada and TD Canada

As Harrington alleged in its original complaint, the SAC will also allege that Defendants CIBC Canada and TD Canada knowingly or recklessly participated in a spoofing scheme to manipulate the price of Concordia.  Now, based on what Harrington has recently learned during discovery, the SAC will also allege that CIBC Canada and TD Canada participated in a cross-border spoofing scheme by disseminating on Canadian exchanges thousands of their customers' orders to sell Concordia securities ("Baiting Orders") even though those orders lacked any legitimate financial purpose and were never intended to be executed.  The sole purpose of these Baiting Orders—as CIBC Canada and TD Canada knew or recklessly ignored—was to inject false and misleading information into the market concerning the declining market price of Concordia's shares.  Within seconds or sometimes nanoseconds of the placement of the Baiting Orders, CIBC Canada and TD Canada disseminated customer buy orders of Concordia shares (the "Executing Orders")—to intermediary U.S. brokers including Instinet, Virtu and Citadel—which were then executed at the lower, manipulated price.  Thereafter, CIBC Canada and TD Canada cancelled the Baiting Orders.  This cycle was repeated thousands of times during the Relevant Period.  Because CIBC Canada and TD Canada disseminated the Baiting Orders on Canadian exchanges and disseminated the Executing Orders to multiple brokers in the U.S., the effect was to conceal the cross-border spoofing from *both* the Canadian regulators who focus their investigations on Canadian trades *and* the U.S. regulators who focus their investigations on U.S. trades.

The following is an example of how Defendants participated in the spoofing scheme and perpetrated a fraud on the market:

(a) On June 24, 2016, at 15:30:53 the best offer to purchase Concordia shares on the U.S. markets was $21.38 per share.  From 15:31:01.984 to 15:32:36.843, CIBC Canada directed Instinet LLC to submit 20 Baiting Orders to multiple exchanges including NYSE ARCA, BATS/Y, BATS/Z, EDGA, EDGX, IEX and NASDAQ OMX BX as well as a series of alternative trading systems, to sell a total of 6,500 shares of Concordia stock at prices ranging from $21.45 to $21.39 per share.  The Baiting Orders placed by CIBC Canada through Instinet LLC drove down the price of Concordia shares from $21.40 to $21.37 on

---

[1]  The SAC will not include claims against Defendant CIBC World Markets Corp. ("CIBC U.S."), as Harrington intends to discontinue this action against CIBC U.S.  As discussed below, the SAC will allege in-forum conduct by CIBC Canada that is sufficient to subject it to liability in this Court under U.S. Securities Laws.

**Warshaw Burstein, LLP**

the U.S. markets—a decline of 0.14% over that short window.
(b) At 15:32:40.436, Instinet LLC purchased 100 shares for CIBC Canada at a price of $21.37 per share—below the prevailing best offer immediately prior to the Baiting Orders.
(c) Just 8 seconds later, CIBC Canada began to direct Instinet LLC to cancel all of the Baiting Orders it had submitted to the U.S. markets.

Harrington has also identified many cross-border spoofing episodes in which CIBC (a) disseminated Baiting Orders on Canadian exchanges, (b) submitted Executing Orders to U.S. brokers, and (c) then cancelled the Baiting Orders. For example, on March 22, 2016 from 14:40:06.842 to 14:40:42.695, CIBC Canada placed 15 Baiting Orders on the *Canadian* markets to sell shares of Concordia stock at prices above the then-best offer to purchase Concordia shares on the *U.S.* markets. The Baiting Orders placed by CIBC Canada drove down the price of Concordia shares in the *U.S.* markets by 0.31% over that short window. At 14:40:45, CIBC Canada purchased 100 shares of Concordia stock on the *U.S.* markets through Goldman Sachs & Co. at a price below the pre-Baiting Orders prevailing best offer. Immediately after executing the Executing Orders on the U.S. markets, CIBC Canada cancelled all of the Baiting Orders it had placed on the *Canadian* markets.[2]

**Amendment Would not be Futile; It Would Hold Defendants Liable for their Own Conduct**

It is anticipated that Defendants will argue that it is "futile" for Harrington to be granted the right to amend its complaint because there is no legal theory upon which Harrington can hold Defendants liable for "their customers' orders" and that there is no private right of action for "aiding and abetting" under 10b-5. These arguments misconstrue Plaintiff's theory of liability. Harrington seeks to hold Defendants liable for their own unlawful conduct in disseminating into the marketplace orders that they knew or should have known were false and misleading, rather than the unlawful trading conduct of their customers. The SAC's claims against CIBC Canada and TD Canada are nuanced, complex and cannot be properly articulated in a three-page pre-motion letter—indeed, they may even involve controlling questions of law for which there is substantial ground for difference of opinion. However, Harrington provides the following brief summary of its claims:

Defendants follow the instructions of their customers in placing orders on securities exchanges. However, Defendants are considered "Gate Keepers" of the exchanges, who are charged with the responsibility by both Canadian and U.S. regulators of having and enforcing monitoring and surveillance systems to prevent their customers from engaging in unlawful trading practices. Because Defendants disseminated thousands of Baiting Orders on Canadian exchanges that they knew or recklessly ignored were not intended to be executed and also disseminated Executing Orders to multiple U.S. brokers that they knew or recklessly ignored were part of a spoofing scheme, Defendants have primary liability for engaging in a device or scheme to defraud and/or enact or practice that operates as a fraud on the market under rules 10b-5(a) and (b) and section 9(a)(2) of the 34 Exchange Act. *See Lorenzo v. SEC & Exc. Comm.*, 139 S. Ct. 1094, 1096 (2019). Accordingly, Harrington should be permitted to move for leave to amend.

---

[2] Like CIBC Canada, TD Canada has placed executing orders through intermediary brokers—such as Citadel and KCG Americas—on U.S. exchanges that when executed cleared and settled in their multiple accounts at the DTCC.

{1519294.7}   3

**Warshaw Burstein, LLP**

Respectfully submitted,

By: /s/ Alan M. Pollack
Alan M. Pollack
Leron Thumim
Madison N. Kelley
WARSHAW BURSTEIN, LLP
575 Lexington Avenue, 7th Floor
New York, New York 10022
Tel:  212-984-7700
apollack@wbny.com
lthumim@wbny.com
mkelley@wbny.com

James Wes Christian, Esq.
Ardalan Attar, Esq.
CHRISTIAN LEVINE LAW GROUP, LLC
2302 Fannin, Suite 205
Houston, Texas  77002
Tel:  (713) 659-7617
jchristian@christianlevinelaw.com
aattar@christianlevinelaw.com

*Attorneys for Plaintiff Harrington Global Opportunity Fund*

cc: All parties via ECF