## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HARRINGTON GLOBAL OPPORTUNITY FUND, LIMITED,<br><br>                 Plaintiff,<br><br>        v.<br><br>CIBC WORLD MARKETS INC., BOFA SECURITIES, INC., MERRILL LYNCH CANADA INC., TD SECURITIES, INC., TD SECURITIES (USA) LLC, and JOHN DOES 1 THROUGH 10.<br><br>                 Defendants. | Civil Action No. 1:21-cv-00761 (LGS)<br><br>Hon. Lorna G. Schofield |

### MEMORANDUM OF LAW IN SUPPORT OF
### DEFENDANTS' MOTION TO DISMISS
### THE SECOND AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................1

BACKGROUND ....................................................................................................3

ARGUMENT .........................................................................................................6

I.        The SAC Is Barred by the Statute of Repose............................................7

II.      Harrington Fails to Adequately Plead an Exchange Act Claim.............................10

      A.    The SAC Fails to Satisfy Rule 9(b)'s Requirement to Plead Manipulative Conduct with Particularity. .........................................................10

      B.    Harrington Fails to Plead Particularized Facts Yielding the Requisite Strong Inference of Scienter. .....................................................14

      C.    Harrington Fails to Plead the Remaining Exchange Act Elements. ....................17

III.     Plaintiff Fails to Plead Facts Permitting the Court to Exercise Personal Jurisdiction over the Canadian Defendants............................................19

IV.     Harrington's Claims Are Impermissibly Extraterritorial......................................22

CONCLUSION .....................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alki Partners, L.P. v. Vatas Holding GmbH*,
769 F. Supp. 2d 478 (S.D.N.Y. 2011)........................................................................18

*In re Aluminum Warehousing Antitrust Litig.*,
No. 13-md-2481 (KBF), 2015 WL 6472656 (S.D.N.Y. Oct. 23, 2015)....................6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................................................................6

*In re AstraZeneca Sec. Litig.*,
559 F. Supp. 2d 453 (S.D.N.Y. 2008)......................................................................22

*ATSI Commc'ns Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007)................................................................................ *passim*

*Barilli v. Sky Solar Holdings, Ltd.*,
389 F. Supp. 3d 232 (S.D.N.Y. 2019)................................................................8, 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................................................6

*Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*,
137 S. Ct. 2042 (2017)................................................................................................7

*Charles Schwab Corp. v. Bank of Am. Corp.*,
883 F.3d 68 (2d Cir. 2018)..................................................................................19, 22

*Citibank, N.A. v. K-H Corp.*,
968 F.2d 1489 (2d Cir. 1992)....................................................................................18

*Cohen v. Stevanovich*,
722 F. Supp. 2d 416 (S.D.N.Y. 2010)......................................................................15

*de Kwiatkowski v. Bear, Stearns & Co., Inc.*,
306 F.3d 1293 (2d Cir. 2002)....................................................................................13

*Ernst & Ernst v. Hochfelder*,
425 U.S. 185 (1976)..................................................................................................15

*Fezzani v. Bear, Stearns & Co.*,
384 F. Supp. 2d 618 (S.D.N.Y. 2004)................................................................10, 18

*Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*,
    141 S. Ct. 1017 (2021) .................................................................................19, 21

*Gamma Traders - I LLC v. Merrill Lynch Commods., Inc.*,
    41 F.4th 71 (2d Cir. 2022) ....................................................................................13

*Gotham Diversified Neutral Master Fund, LP v. Chicago Bridge & Iron Co. N.V.*,
    No. 18 Civ. 9927 (LGS), 2019 WL 3996519 (S.D.N.Y. Aug. 23, 2019)
    (Schofield, J.) ........................................................................................................7

*Jazini v. Nissan Motor Co.*,
    148 F.3d 181 (2d Cir. 1998) ...................................................................................6

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001) .................................................................................15

*Laydon v. Cooperatieve Rabobank U.A.*,
    No. 20-3626(L), 2022 WL 17491341 (2d Cir. Dec. 8, 2022) ...............................23

*In re Longtop Fin. Techs. Ltd. Sec. Litig.*,
    939 F. Supp. 2d 360 (S.D.N.Y. 2013) .....................................................................8

*Lorenzo* v. *SEC*,
    139 S. Ct. 1094 (2019) ....................................................................................16, 17

*Lorenzo v. SEC*,
    872 F.3d 578 (D.C. Cir. 2017) ..............................................................................16

*Morrison v. National Australia Bank Ltd.*,
    561 U.S. 247 (2010) ..........................................................................3, 22, 23, 24

*Parkcentral Glob. Hub Ltd. v. Porsche Auto. Holdings SE*,
    763 F.3d 198 (2d Cir. 2014) ...........................................................................23, 24

*Peifa Xu v. Gridsum Holding Inc.*,
    No. 18 Civ. 3655 (ER), 2021 WL 773002 (S.D.N.Y. Feb. 23, 2021) ............7, 8, 10

*In re Platinum & Palladium Antitrust Litig.*,
    449 F. Supp. 3d 290 (S.D.N.Y. 2020) ..............................................................22, 24

*Police & Fire Ret. Sys. v. IndyMac MBS, Inc.*,
    721 F.3d 95 (2d Cir. 2013) .....................................................................................7

*Prime Int'l Trading, Ltd. v. BP P.L.C.*,
    937 F.3d 94 (2d Cir. 2019) ...................................................................................23

*Ret. Sys. v. ANZ Sec., Inc.*,
    137 S. Ct. 2042 (2017) ...........................................................................................7

*Robinson v. Overseas Military Sales Corp.*,
    21 F.3d 502 (2d Cir. 1994)......................................................................................6

*SEC v. Masri*,
    523 F. Supp. 2d 361 (S.D.N.Y. 2007).....................................................................16

*SEC v. U.S. Environmental, Inc.*,
    155 F.3d 107 (2d Cir. 1998)...................................................................................16

*Tellabs v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)...............................................................................................14

*Troma Entm't Inc. v. Centennial Pictures Inc.*,
    729 F.3d 215 (2d Cir. 2013)...................................................................................19

*Walden v. Fiore*,
    571 U.S. 277 (2014).........................................................................................20, 21

**Statutes**

15 U.S.C. § 78u-4(b)(2)(A).............................................................................................14

28 U.S.C. § 1658(b)(2) ......................................................................................................7

28 U.S.C. § 2072(b) ...........................................................................................................7

Fed. R. Civ. P. 9(b) ..............................................................................................2, 10, 11

Fed. R. Civ. P. 15(c) ..................................................................................................1, 7, 8

## PRELIMINARY STATEMENT

Despite months of discovery during which it obtained voluminous documents and data, Plaintiff Harrington Global Opportunity Fund has no evidence that Defendants[1] manipulated the market for Concordia International Corp. stock to benefit their own accounts.  Now, in the Second Amended Complaint (the "SAC"), Harrington pivots to a new, implausible theory that Defendants engaged in spoofing in connection with their *customers'* trading.  The SAC should be dismissed with prejudice.

*First*, Harrington's Exchange Act claims seeking, for the first time, to hold Defendants liable for customer trading are barred by the applicable five-year statute of repose.  Harrington cannot avoid this result through relation back under Rule 15(c), because that doctrine does not apply to claims brought outside the repose period.  Nor can Harrington contend that the SAC asserts the same claims as the First Amended Complaint (the "FAC") but merely adds detail.  A simple comparison of the complaints refutes that contention, and in any event the Court has already rejected Harrington's argument that the FAC asserted claims based on customer trading.  The SAC should be dismissed as untimely.

*Second*, Harrington fails to plead with the requisite particularity any allegedly manipulative conduct, let alone attribute such conduct to any Defendant.  Incredibly, after months of discovery, the SAC is *less* specific about the allegedly unlawful trading than Harrington's prior complaints.  Harrington complains about alleged "Baiting Orders" but never explains how it distinguishes them from other orders, or which Defendant is responsible for which supposed "Baiting Order."  And

---

[1] "Defendants" refers to Defendants CIBC World Markets, Inc. ("CIBC Canada"); Merrill Lynch Canada Inc. ("Merrill Canada"); BOFA Securities, Inc ("Merrill US"); TD Securities, Inc. ("TD Canada"); and TD Securities (USA) LLC ("TD US").  "Canadian Defendants" refers to CIBC Canada, Merrill Canada, and TD Canada.

Harrington's new allegations fail to attribute any specific orders or trades to any specific Defendant.  Rule 9(b) requires more.

*Third*, Harrington fails to plead with particularity facts establishing the "strong inference" of scienter required by the Private Securities Litigation Reform Act (the "PSLRA").  Instead, the SAC advances three vague alternative theories concerning Defendants' supposed mental state, variously alleging that Defendants, as a group, *either* failed to develop adequate policies and procedures, *or* were reckless in developing such policies, *or* knowingly participated in a fraud. Harrington alleges no facts to support any of these theories.  The SAC does not meet the PSLRA's high scienter pleading standard and should be dismissed on this basis alone.

*Fourth*, the SAC does not plead loss causation or reliance.  Harrington does not explain how it was injured or attribute its alleged injury to any particular Defendant.  In fact, unlike the FAC, the SAC no longer even clearly attributes Harrington's alleged injury to Defendants as a group, instead theorizing that unidentified customers and affiliates also contributed.  The SAC thus fails to plead the requisite causal connection between any Defendant's conduct and any injury to Harrington.  The SAC also precludes Harrington from proving injury in reliance on an assumption of an efficient market.  It is undisputed that Harrington complained to Canadian regulators years ago, and the SAC now—unlike the FAC—admits that Harrington did so because it thought the market price of Concordia stock was depressed.  Harrington kept trading anyway, foreclosing any contention that it relied upon an efficient market.

*Fifth*, the claims against the Canadian Defendants should be dismissed for lack of personal jurisdiction.  Unlike the FAC, the SAC no longer pleads that these entities conspired with their U.S. affiliates.  Instead, the SAC attempts to ground jurisdiction on Canadian customer orders that occasionally were routed to U.S. markets based on customer instructions or Defendants' duty to

obtain best execution.  But the SAC does not identify even one specific "Baiting Order" routed to the U.S. by a Canadian Defendant.  Nor has Harrington pled facts demonstrating jurisdiction on a theory that the Canadian Defendants "expressly aimed" their customers' trading at the United States.  The claims against the Canadian Defendants should be dismissed on jurisdictional grounds.

*Sixth*, Harrington's Exchange Act claims based on actions allegedly taken in Canada rely on "predominantly foreign" conduct and are barred under *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010).  The Court found that the U.S. conduct pleaded in the FAC balanced the Canadian conduct such that the latter did not predominate, but that is not the case in the SAC.  The SAC pleads much more Canadian conduct and, critically, removes Harrington's concession in the FAC that it does not seek to hold Defendants liable for Canadian trading.  Harrington cannot maintain Exchange Act claims based predominantly on alleged conduct in Canada, and the claims against the Canadian Defendants should be dismissed on this basis as well.

## BACKGROUND

Harrington is a Bermuda-based investment firm that traded in the stock of Concordia, a Canadian company interlisted on the NASDAQ and the Toronto Stock Exchange.  (SAC ¶¶ 2, 11, 24.)  Harrington claims generally that it was harmed when, between January 27, 2016 and November 15, 2016 (the "Relevant Period"), it sold 6.8 million shares of Harrington stock at "manipulated lower prices."  (*Id.* ¶ 144.)

In April 2016, partway through the Relevant Period, Harrington came to believe that "Concordia's price appeared depressed."  (*Id.* ¶ 105.)  Harrington opted to continue trading in Concordia stock, though it hired a consultant to investigate "volatility" in the share price and asked a Canadian regulator, the Investment Industry Regulatory Organization of Canada ("IIROC"), to investigate.  (*Id.*)  In 2017, after providing certain trading data to Harrington, IIROC closed its investigation "based on its failure to discover sufficient evidence that Concordia's share price had

been manipulated." (*Id.* ¶¶ 106, 108.)  Harrington hired two more consultants, in 2017 and 2019, in an effort to develop its own evidence of manipulation in the market for Concordia stock.  (*Id.* ¶¶ 110, 113.)  Harrington also unsuccessfully sought an order of a Canadian court compelling IIROC to produce more trading data.  (*Id.* ¶ 111.)

In January 2021, Harrington filed its original complaint in this action.  (ECF No. 5.) Harrington alleged that Defendants and other broker-dealers drove down Concordia's stock price through a combination of "spoofing" and "naked short selling."  As to spoofing, in its original complaint and the FAC (ECF No. 63), Harrington alleged that CIBC Canada, TD Canada, and Merrill Canada, in coordination with their U.S. affiliates, entered sell orders intended to depress the price of Concordia stock (i.e., "Baiting Orders"), then executed buy orders to take advantage of the artificially low price for their own accounts (i.e., "Executing Orders"), then cancelled their "Baiting Orders."  (*See* FAC ¶¶ 1–4, 7.)  On this basis, Harrington asserted claims against Defendants under the Securities Exchange Act as well as common-law claims.

On February 9, 2022, the Court granted a motion to dismiss Harrington's Exchange Act claims based on short selling and its state law claims.  (ECF No. 88.)  The Court permitted the Exchange Act claims against Defendants based on alleged spoofing to proceed, however, stating that Harrington's theory of the case "made economic sense, albeit tenuously."  (*Id.* at 14.) Discovery commenced.  Over the ensuing months, Harrington obtained voluminous documents and data, including order and trade data produced by Defendants and third parties reflecting proprietary and customer trading in Concordia stock.  (*See* SAC ¶ 121.)

On August 5, 2022, apparently having identified no evidence that Defendants engaged in spoofing to benefit their own accounts, Harrington asked the Court to compel production of data reflecting trading in Concordia stock by Defendants' customers.  (ECF No. 116.)  The Court

declined, stating that (1) Harrington's operative complaint had "not articulated any plausible theory under which any currently named Defendant is liable for their customers' trading activity," and (2) it was too late for Harrington to add customers as defendants.  (ECF No. 120 at 4.)

On December 19, 2022, Harrington attempted a reboot in the form of the SAC.  (ECF No. 133.)  The SAC pivots away from Harrington's original theory that Defendants engaged in spoofing to benefit their own accounts, instead embracing the idea that Defendants are liable for their customers' trading.[2]  For the first time, the SAC asserts that Defendants are liable for (1) "following the directions of their customers to disseminate and/or effect Baiting Orders on Canadian exchanges or failing to supervise the dissemination and/or effectuation their customers' Baiting Orders" and (2) "disseminating and/or effecting Baiting and Executing Orders to U.S. Brokers-Dealers on U.S. Exchanges."  (SAC ¶ 4.)  According to the SAC, Defendants' so-called Baiting Orders were placed "pursuant to the directions of their customers," and their Executing Orders "at the direction of their customers."  (*Id.* ¶¶ 51–52.)

The SAC abandons all of the 18 specific allegations of allegedly unlawful trading that appeared in the FAC.  Instead—and notwithstanding Harrington's claim to have obtained "documentation and information that is particularly relevant to this case and has enabled Harrington to conduct a more robust and fulsome analysis of the Defendants role in the market manipulation of Concordia securities" (*id.* ¶ 120)—the SAC offers just 7 "illustrative examples" of such trading (*id.* ¶¶ 78–98).  Not one of the "illustrative examples," however, alleges that any

---

[2] The SAC also drops CIBC Canada's U.S. affiliate, CIBC World Markets Corp. ("CIBC US"), from the case.  In the FAC, Harrington had incorrectly alleged that "in coordination with" CIBC Canada, CIBC US entered "Baiting Orders" on six dates in 2016.  (FAC ¶¶ 70, 72, 76, 80, 84, 88, 92.)  In truth, CIBC US did not trade in Concordia at all in 2016, leading Harrington to remove CIBC US from the case.

specific Defendant placed an order or executed a trade, instead vaguely describing activity by, e.g., "TD-Canada, TD-U.S., and their affiliates." (*Id.* ¶ 84.)

The SAC also does not explain why Defendants would have participated in such a scheme to assist customers in spoofing the market for Concordia stock. Instead, the SAC offers three "possibilities," speculating that Defendants either "recklessly failed to develop and maintain any policies, procedures, and systems that were designed and intended to ensure the integrity of the markets," or "attempted to set up policies, procedures, and systems designed to monitor their customers and identify unlawful conduct, but did so with severe recklessness," or "unlawfully continued to participate in a scheme to defraud by effecting customers' orders and trades that they knew were unlawful." (SAC ¶ 136 (emphasis in original).)

## ARGUMENT

To survive this motion, Harrington's complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility" only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court need not "draw argumentative inferences in the plaintiff's favor," *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994), or accept as true "a legal conclusion couched as a factual allegation," *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998). And the Court may "look beyond the pleadings to affidavits and supporting materials submitted by the parties" to assess jurisdiction. *In re Aluminum Warehousing Antitrust Litig.*, No. 13-md-2481 (KBF), 2015 WL 6472656, at *2 (S.D.N.Y. Oct. 23, 2015). The SAC fails at every turn.

## I.       The SAC Is Barred by the Statute of Repose.

Harrington's claims are untimely because they are based on transactions that occurred in 2016 (SAC ¶ 1)—well outside the 5-year statute of repose period applicable to Exchange Act claims. *See* 28 U.S.C. § 1658(b)(2). The SAC should therefore be dismissed. *See, e.g., Gotham Diversified Neutral Master Fund, LP v. Chicago Bridge & Iron Co. N.V.*, No. 18 Civ. 9927 (LGS), 2019 WL 3996519, at *2–3 (S.D.N.Y. Aug. 23, 2019) (Schofield, J.) (granting 12(b)(6) motion to dismiss Exchange Act claim as untimely). To try to avoid this result, Harrington invokes the doctrine of relation back, contending in one conclusory paragraph of the SAC that it "relates back to the prior pleadings" because of "a clear overlap of the facts between the occurrences and events raised in the original pleading and this [SAC]." (SAC ¶ 124); Fed. R. Civ. P. 15(c)(1)(B) ("An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."). Harrington's argument fails.

"[S]tatutes of repose are enacted to give more explicit and certain protection to defendants" than statutes of limitations and reflect "a legislative judgment that a defendant should be free from liability after the legislatively determined period of time." *Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2049–50 (2017) (holding that equitable tolling cannot apply to statute of repose); *see also Police & Fire Ret. Sys. v. IndyMac MBS, Inc.*, 721 F.3d 95, 106 (2d Cir. 2013) (statute of repose provides "a substantive right in those protected to be free from liability after a legislatively-determined period of time" (emphasis omitted)). And the Rules Enabling Act forbids interpreting Rule 15(c) to "abridge, enlarge or modify" that statute of repose. *See* 28 U.S.C. § 2072(b). Courts in this District have thus rejected relation back for a claim otherwise barred by the statute of repose. *See, e.g., Peifa Xu v. Gridsum Holding Inc.*, No. 18 Civ. 3655 (ER), 2021 WL 773002, at *7 (S.D.N.Y. Feb. 23, 2021) (rejecting relation back: "Unlike statutes of limitation,

statutes of repose are not subject to equitable tolling, nor may they be circumvented by application of the "relation back" doctrine under Federal Rule 15(c)."); *Barilli v. Sky Solar Holdings, Ltd.*, 389 F. Supp. 3d 232, 263–64 (S.D.N.Y. 2019) ("[T]o allow a plaintiff to utilize Rule 15(c) to avoid the statute of repose would significantly abridge the substantive, statutory rights of Defendants in violation of the Rules Enabling Act."); *In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 939 F. Supp. 2d 360, 380 (S.D.N.Y. 2013) ("[W]hen a claim is barred by a statute of repose, Rule 15 may not be construed to permit relation back because such a construction would conflict with the Rules Enabling Act."). In short, relation back has no application here.

Harrington also cannot avoid the statute of repose by arguing that Defendants have been on notice of the claims against them because, according to Harrington, the SAC merely alleges "with greater specificity the same course of conduct arising out of the same series of transactions and occurrences that were alleged in the original complaint." (SAC ¶ 124.) The statute of repose represents the legislature's decision to protect defendants from stale claims, no matter how much notice has been provided to the defendant. *See Longtop*, 939 F. Supp. 2d at 379–80 (whether original complaint provided "adequate notice of the matters raised in the amended pleadings" is "inapplicable to statutes of repose, under which it is irrelevant whether parties have notice of a claim"). Again, courts in this District have routinely rejected attempts like Harrington's to characterize new allegations barred by the statute of repose as supplemental gloss on earlier timely allegations. *See, e.g.*, *Peifa Xu*, 2021 WL 773002, at *7–8 (statute of repose barred claims based on additional alleged misrepresentations in same allegedly misleading document at issue in previous timely complaint); *Barilli*, 389 F. Supp. 3d at 263 (same); *Longtop*, 939 F. Supp. 2d at 380 (plaintiff could not add alleged misrepresentations to securities fraud claim after repose period).

Even if notice were relevant to the repose analysis, which it is not, a simple comparison of the FAC to the SAC shows that Harrington's claims in the SAC are new.  The allegations of the FAC focused on Defendants' *own* trading.  (*See* FAC ¶¶ 1, 7, 17–19, 63, 66, 70–141.)  The FAC did not allege facts or articulate any theory suggesting how Defendants were liable for their conduct in handling *their customers'* trading.  This Court has already rejected Harrington's argument, made in a motion to compel Defendants to produce customer trading data, that the FAC articulated cognizable claims against Defendants based on how they executed customer trades. (ECF No. 116 at 3.)  The Court found that the FAC did not suggest that Defendants were liable for executing their customers' trades, but instead alleged "only the obvious fact that the named Defendants execute trades for customers."  (ECF No. 120 at 4.)

The SAC, by contrast, asserts explicitly for the first time that Defendants are liable for routing or executing customer trades.  (*See, e.g.*, SAC ¶ 4 (asserting that Defendants are "primarily liable" for customer Concordia trades).)  It also effectively abandons Harrington's prior theory of the case based on proprietary trading, inasmuch as it removes every one of the alleged 18 examples of spoofing activity in the FAC based on trades Defendants supposedly placed for their own accounts, pleading instead 7 alleged examples based on customer trading.  (*Compare* FAC ¶¶ 70–164, *with* SAC ¶¶ 78–98, 100; *see also* ECF No. 125-1 at 76–110 (deleting every illustrative example of alleged spoofing episodes asserted in FAC).)  Harrington maintains that its examples are only "illustrative" (*see* SAC ¶ 77), but Harrington's failure to include a single overlapping example in the FAC and the SAC highlights how far Harrington's allegations have strayed from the FAC.  And, to be clear, now that the SAC does not contain a single example of alleged spoofing by a Defendant for its own account, Harrington is unable to turn back to its original theory based on proprietary trading.  (*See* Section II.A *infra*.)

Harrington notes that it is still alleging a spoofing scheme based on trading in Concordia in 2016. (SAC ¶ 123.) But that resemblance is superficial at best and therefore insufficient. After all, in *Barilli* and *Peifa Xu*, the court found new alleged misrepresentations barred by the statute of repose even though they arose out of the *same* allegedly misleading document relied on in the original, timely complaint. *See* 389 F. Supp. 3d at 263; 2021 WL 773002, at *7–8. Harrington's new claims based on allegations that Defendants acted improperly in handling a *different* set of trades made by customers—as opposed to claims challenging how Defendants themselves traded—are barred by the statute of repose, and the SAC should be dismissed.

## II.   Harrington Fails to Adequately Plead an Exchange Act Claim.

Harrington's complaint should be dismissed for the additional reason that it fails to sufficiently plead the elements of an Exchange Act claim. Regarding its Section 10(b) claim, Harrington does not plead with the requisite particularity either manipulative acts or scienter; nor does it plead how it was damaged by Defendants' conduct or how it could possibly have relied "on an assumption of an efficient market free of manipulation." *ATSI Commc'ns Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 101 (2d Cir. 2007). On its Section 9(a)(2) claim, Harrington again does not plead with the requisite particularity "a series of transactions in a security creating actual or apparent trading in that security or raising or depressing the price of that security" that was "carried out with scienter," on which Harrington relied or by which it was damaged. *See Fezzani v. Bear, Stearns & Co.*, 384 F. Supp. 2d 618, 637 (S.D.N.Y. 2004) (emphasis omitted).

### A.   The SAC Fails to Satisfy Rule 9(b)'s Requirement to Plead Manipulative Conduct with Particularity.

Under Rule 9(b)'s heightened pleading standard for fraud claims, Harrington must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ P. 9(b). The Second Circuit has explained how Rule 9(b) applies to market manipulation claims: A plaintiff

must "plead with particularity the nature, purpose, and effect of the fraudulent conduct and the roles of the defendants," i.e., "what manipulative acts were performed, which defendants performed them, when the manipulative acts were performed, and what effect the scheme had on the market for the securities at issue." *ATSI*, 493 F.3d at 102.  The SAC falls well short.

To begin, the SAC fails to allege "what manipulative acts were performed" by Defendants. Instead, it alleges that Defendants are liable for "disseminating *and/or* effecting," either in the U.S. *or* in Canada, "their customers' *or* [their] own orders" to both buy *and* sell Concordia stock.  (SAC ¶ 3 (emphases added).)  While pleading in the alternative is permitted in some circumstances, this string of alternative forms of potential misconduct cannot satisfy the particularity requirement of Rule 9(b)—Defendants cannot even tell what they supposedly did wrong.  Nor does the SAC allege how Defendants' "disseminating and/or effecting" orders in Concordia stock was any different from how broker-dealers such as Defendants handle orders to buy or sell stock every day. Harrington makes the conclusory allegation that, in placing sell orders, Defendants "had the sole purpose . . . to deceive and mislead other market participants into believing that the market price of Concordia's securities was moving downward based on the natural forces of supply and demand."  (*Id.* ¶ 47.)  But Harrington fails to associate any order with a specific Defendant, let alone plead facts supporting a strong inference that any Defendant intended to "deceive and mislead other market participants."  (*See* Section II.B *infra.*)

To the extent Harrington attempts to plead actual order and trade activity, the attempt still falls well short of Harrington's duty under Rule 9(b) and *ATSI* to plead facts concerning the alleged misconduct with particularity.  Rather than attributing alleged orders and trades to specific Defendants, as the FAC did, the SAC repeatedly alleges conduct by "Defendants" generally.  (*See, e.g.*, SAC ¶¶ 57–76.)  Even the SAC's 7 examples of specific purported spoofing episodes group

the Canadian Defendants together with the domestic Defendants (in the case of TD and Merrill) and, worse, with other unspecified "affiliates," rather than alleging which supposed "manipulative acts" were undertaken by which Defendant or third party. (*See id.* ¶¶ 78–83 (CIBC), 84–86 (TD), 93–98 (Merrill).) Harrington admits that any allegation against any Defendant "is intended to also include the subsidiaries, affiliates, sister companies, agents and representatives of that Defendant." (*Id.* at ¶ 6 n.5.) But "[g]eneral allegations not tied to the defendants . . . are insufficient," and allegations incorporating unidentified affiliates, agents, and representatives are obviously "not tied to the defendants." *ATSI*, 493 F.3d at 102.[3]

Even if the SAC attributed the supposedly unlawful trading to any specific Defendant, that still would not satisfy Harrington's pleading burden because Harrington alleges no facts explaining *why* the trading was unlawful. The SAC alleges that Defendants "spoofed" Concordia's share price 900 times and "disseminated and/or effected at the direction of their customers and/or own traders 'Baiting Orders' totaling at least 138,678,121 shares." (SAC ¶¶ 50, 56.) But there is no explanation at all of how Harrington arrived at these figures. The SAC alleges that Defendants' "Baiting Orders" were placed at "specific periods of time," but fails even to identify those periods. (*Id.* ¶ 50.) And critically, the SAC does not explain how Harrington distinguishes alleged "Baiting Orders" from any other sell orders—it refers to orders that Defendants "knew had no legitimate economic purpose and were never intended to be executed" (*id.* ¶ 50)—but not which orders those were or how Defendants or the Court could identify them. The SAC alleges that unidentified entities placed specific "Baiting Orders" on unidentified exchanges and unidentified entities subsequently placed "Executing Orders." (*See, e.g., id.* ¶¶ 78–80.) But it never alleges that the

---

[3] For some Defendants, the SAC pleads no wrongdoing specifically. For example, there are no allegations that TD US, as distinct from TD Canada or unnamed affiliates, engaged in any misconduct, supporting dismissal of the claims against TD US.

same broker placed and cancelled the "Baiting Orders" and "Executing Orders," much less that any such orders were placed on behalf of the same customers.  Defendants have many customers, and at any given moment some of them wish to sell a stock and some of them wish to buy it.  Without factual allegations that the same customer directed both Baiting Orders and Executing Orders, or that multiple customers were working together to do so, Harrington has not pleaded spoofing, but just normal order flow.  *See Gamma Traders - I LLC v. Merrill Lynch Commods., Inc.*, 41 F.4th 71, 75 (2d Cir. 2022) (describing spoofing scheme as involving "one trader placing both buy- and sell-side orders in the same market").

For the same reason, Harrington's complaint that unidentified Merrill, TD and CIBC entities created a "sell-side imbalance" by routing more sell orders than buy orders during this period is unavailing.  (*See* SAC ¶ 53.)  Harrington does not explain why the number of sell versus buy orders matters, much less how the numbers look if one considers the number of *shares* rather than the number of *orders*.  All this alleged "sell-side imbalance" means is that, at certain times, more of Defendants' customers wanted to sell Concordia stock than buy it.  But again, without coordination between customers buying and selling, there can be no spoofing.

Harrington also cannot satisfy its burden to plead particularized facts concerning alleged manipulative conduct with conclusory allegations that Defendants failed to monitor their customers' order flow.  (*See* SAC ¶¶ 64, 138.)  The SAC states that "each Defendant has compliance procedures which explicitly confirm and commit to honor their monitoring obligations" (*id.* ¶ 38), yet pleads no deficiencies in those procedures.  Merely citing a litany of regulations—which are, in any event, subject to enforcement by government regulators, not Harrington, *see, e.g.*, *de Kwiatkowski v. Bear, Stearns & Co., Inc.*, 306 F.3d 1293, 1311 (2d Cir.

2002) (no private right of action under securities laws for regulatory violations)—does not satisfy Harrington's obligation to plead exactly what Defendants supposedly did wrong.

In concluding previously that Harrington had carried its pleading burden, the Court noted that no discovery had yet taken place:  "A claim of manipulation can involve facts solely within the defendant's knowledge; therefore, at the early stages of litigation, [Harrington] need not plead manipulation to the same degree of specificity as a plain misrepresentation claim."  (ECF No. 88 at 13–14.)  But this case is no longer "at the early stages of litigation," such that the facts are "solely within the defendant's knowledge."  *ATSI*, 493 F.3d at 102.  Harrington has obtained discovery, including voluminous trading data concerning both proprietary and customer trading, from Defendants and third parties.  (*See* SAC ¶¶ 120 (alleging discovery permitted "robust and fulsome analysis"), 121 (describing data obtained from NASDAQ, TSX, FINRA, and Instinet); *see also* ECF No. 125 at 2 (admitting that then-proposed SAC "replac[es] the analysis contained in the original complaint . . . with a more accurate and fulsome analysis based on what Harrington has learned through party and nonparty discovery").)  The SAC should not receive the deference afforded to the FAC, and the case should be dismissed.

### B.    Harrington Fails to Plead Particularized Facts Yielding the Requisite Strong Inference of Scienter.

Harrington also fails to plead particularized facts supporting an inference that any Defendant intended to manipulate the price of Concordia stock.  Under the PSLRA, Harrington must "state with particularity facts giving rise to a *strong inference* that the defendant acted with the requisite state of mind."  15 U.S.C. § 78u-4(b)(2)(A) (emphasis added).  A "strong inference" must be "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."  *Tellabs v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).  And it requires Harrington to "plead specific facts as to each defendant."

*Cohen v. Stevanovich*, 722 F. Supp. 2d 416, 428 (S.D.N.Y. 2010).  In a stock manipulation claim, scienter means "intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price of securities." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199 (1976).  This heightened pleading requirement is "particularly important" for Harrington's claim that the lawful activity of cancelling sell orders constitutes manipulative conduct because often "scienter is the only factor that distinguishes legitimate trading from improper manipulation." *ATSI*, 493 F.3d at 102.

Harrington seeks to establish Defendants' scienter mainly through conclusory allegations that Defendants are primarily liable for customers' "Baiting Orders" because Defendants "knew or recklessly ignored that those orders were part of a scheme, device, or course of conduct to manipulate the market price of Concordia securities."  (SAC ¶ 4.)  The SAC contains no *facts*, however, suggesting that any Defendant knew or recklessly ignored that its customers' orders were fraudulent.  Instead, Harrington offers an odd menu of "three possibilities regarding Defendants' knowledge and intent," hypothesizing that Defendants either (1) "recklessly failed to develop and maintain policies, procedures, and systems . . . to ensure the integrity of the markets by monitoring and surveilling the trading activities of their customers"; (2) "set up" such policies, "but did so with severe recklessness"; *or* (3) "did successfully identify the manipulative or deceptive practices of their customers" but "participate[d] in a scheme to defraud by effecting customers' orders and trades that they knew were unlawful."  (SAC ¶ 136 (emphasis in original).)  This is the exact opposite of what the PSLRA requires.  Harrington cannot plead a "compelling" inference of scienter by speculating, in the alternative, about Defendants' hypothetical collective state of mind. *See Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001) ("[P]laintiff cannot base securities fraud claims on speculation and conclusory allegations.").  That is especially so where, as here,

Harrington fails to explain any plausible economic rationale for the alleged misconduct.  *See, e.g.*, *id.* at 140–41 ("Where plaintiff's view of the facts defies economic reason, it does not yield a reasonable inference of fraudulent intent." (internal quotation marks and original alterations omitted)).

Nor does Harrington's effort to hold Defendants liable for their customers' trading activity find support in *SEC v. U.S. Environmental, Inc.*, 155 F.3d 107 (2d Cir. 1998).  (*See* SAC ¶¶ 3, 123 n.11.)  There, the SEC—which is not subject to the heightened scienter pleading standard that governs Harrington's claims—alleged that a broker-dealer was "liable under § 10(b) for following a stock promoter's direction to execute stock trades" that the broker-dealer "knew, or was reckless in not knowing, were manipulative."  *U.S. Env't*, 155 F.3d at 108.  But the trading at issue was (as another court of this District explained) "blatantly deceptive and fraudulent," such that "the only possible purpose for such transactions was to artificially affect the price of the security."  *SEC v. Masri*, 523 F. Supp. 2d 361, 375 (S.D.N.Y. 2007) (distinguishing *U.S. Environmental* and dismissing complaint against broker on scienter grounds).  In addition, the SEC alleged that the broker-dealer "agreed to participate in a scheme" with the other defendants "to move, or adjust, the price" of the manipulated stock with the assurance that it "would receive a profit."  *U.S. Env't*, 155 F.3d at 109.  Here, by contrast, Harrington alleges no "blatantly deceptive and fraudulent" trading, no collusion among Defendants, and no plausible motive for Defendants to aid unlawful acts of their customers.  The other case Harrington cites for support, *Lorenzo* v. *SEC*, 139 S. Ct. 1094 (2019) (SAC ¶ 4), is similarly inapposite.  Again, the PSLRA's heightened scienter pleading standard did not apply, and the Court of Appeals reviewed the Commission's factual findings of scienter under a "very deferential" standard.  *Lorenzo v. SEC*, 872 F.3d 578, 583 (D.C. Cir. 2017).

Indeed, before the Supreme Court, the defendant did not even challenge the finding that he possessed fraudulent intent.  *See Lorenzo*, 139 S. Ct. at 1100.  Neither case helps Harrington here.

Nor does anything else in the SAC meet Harrington's burden to state with particularity facts giving rise to a strong inference of scienter under the PSLRA.  Harrington makes conclusory allegations that "each Defendant's trading activities were approved by corporate officials" without identifying any such officials or alleging what information these supposed officials supposedly "knew or recklessly ignored."  (SAC ¶ 62.)  Harrington's general allegations about Defendants' "average" numbers of cancelled orders or purchased shares fail to show how such activity differs from ordinary market activity.  (*Id.* ¶¶ 58–59.)  As described above, despite the SAC's repeated refrain that Defendants engaged in a "continuous and repeated pattern" of spoofing "multiple times a day and continuously throughout the Relevant Period" (*see, e.g.*, SAC ¶¶ 48, 55, 74, 132), the SAC musters only 7 "illustrative examples" of "manipulative spoofing episodes" (*id.* ¶ 77).  And even regarding that handful of "episodes," Harrington omits critical facts such as *who* placed the orders and executed the trades.  (*See* Section II.A *supra.*)  This does not remotely satisfy Harrington's pleading burden under the PSLRA.

## C.  Harrington Fails to Plead the Remaining Exchange Act Elements.

The SAC's new allegations also destroy Harrington's ability to plead loss causation or reliance.  Although the Court previously held that the FAC did so, the SAC falls short.

*First*, the Court previously held that because the FAC alleged that Defendants collectively engaged in spoofing activity, Harrington could meet its burden to plead loss causation with allegations about Defendants as a group.  (*See* ECF No. 88 at 15–16.)  But the SAC no longer attributes Harrington's alleged loss to Defendants alone.  Instead, the SAC complains about actions taken by Defendants, their customers, *and* unnamed affiliates, with no unifying theory of liability among them.  (SAC ¶¶ 78–83 (CIBC), 84–86 (TD), 93–98 (Merrill).)  Such broad allegations

making no connection between any Defendant's actions and any alleged harm to Harrington are not sufficient. *See, e.g.*, *Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1497 (2d Cir. 1992) (affirming dismissal where complaint did "not detail how the alleged fraud directly and proximately resulted" in damage to plaintiff); *Fezzani*, 384 F. Supp. 2d at 637 (manipulative act must have "affected plaintiff's purchase or selling price" (internal quotation marks omitted)).

*Second*, the SAC's allegations remove the basis for the Court's decision that the FAC adequately pled reliance. Defendants argued in their motion to dismiss the FAC that Harrington could not plead that it was injured by "reliance on an assumption of an efficient market free of manipulation," *ATSI*, 493 F.3d at 101, because the FAC showed that Harrington was concerned about potential manipulation affecting Concordia stock as early as April 2016, when it requested a regulatory investigation. (*See* ECF No. 73 at 25–26 (citing *Stark Trading v. Falconbridge Ltd.*, No. 05-C-1167, 2008 WL 153542 (E.D. Wis. Jan. 14, 2008) (dismissing 9(a)(2) and 10(b) claims for failure to plead reliance because plaintiff had raised concerns with regulators before undertaking transaction).) The Court rejected Defendants' argument on the basis that the FAC pled that Harrington's request "was based on 'negative social media postings,' not any belief by [Harrington] that there was manipulative activity in the market." (*See* ECF No. 88 at 17.) But Harrington admits in the SAC that it requested an investigation in April 2016 based not only on "negative social media postings," but also on "the fact that Concordia's price appeared depressed in relation to the company's fundamentals." (SAC ¶ 105.) This new concession forecloses any plausible inference that Harrington relied on an efficient market. *See Alki Partners, L.P. v. Vatas Holding GmbH*, 769 F. Supp. 2d 478, 493 (S.D.N.Y. 2011) (dismissing 10(b) claim for failure to plead reliance because "[p]laintiffs were not ignorant of the manipulation of the price of RMDX

stock that they now claim to be victims of," since their own complaint alleged that their purchasing activity was also a "cause of [the] dramatic rise in value of RMDX stock.").

## III.    Plaintiff Fails to Plead Facts Permitting the Court to Exercise Personal Jurisdiction over the Canadian Defendants.

Harrington fails to demonstrate that any Canadian Defendant has the necessary contacts with this forum to permit this Court's exercise of personal jurisdiction.  *See Troma Entm't Inc. v. Centennial Pictures Inc*., 729 F.3d 215, 217 (2d Cir. 2013) (plaintiff bears burden to demonstrate personal jurisdiction).  The Court previously held that Harrington had met this burden for the claims as pled in the FAC.  (*See* ECF No. 88 at 6–8.)  But as explained above, Harrington's claims against the Canadian Defendants in the SAC are materially different.  Most important, in the FAC, Harrington claimed specific jurisdiction over the Canadian Defendants "premised on their participation in a conspiracy with the U.S. Defendants in the United States to manipulate the market price of Concordia's Interlisted Securities."  (FAC ¶ 18.)  In the SAC, Harrington removes this allegation and no longer asserts any such conspiracy.  Instead, Harrington now relies solely upon two other theories of personal jurisdiction, each of which fails.

*First*, Harrington attempts to establish jurisdiction on the ground that the Canadian Defendants "purposefully availed" themselves of the forum.  *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (internal quotation marks and original alteration omitted).  To plead jurisdiction on this basis, Harrington must allege facts showing that the Canadian Defendants engaged in "suit-related" conduct creating a "substantial connection" with the forum.  *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 83–84 (2d Cir. 2018).  For conduct to be "suit-related," Harrington's claims must "arise out of or relate to" that conduct.  *Ford*, 141 S. Ct. at 1025.  Harrington, however, offers only vague, generalized allegations that the Canadian Defendants "employ[ed] high speed computer systems to route orders and execute trades

of Concordia shares throughout the U.S. including in New York, on Exchanges that are located in the U.S." (SAC ¶ 6; *see also id.* ¶¶ 13, 16, 19 (alleging that each Canadian Defendant "conducted continuous activity in New York state, directly related to these claims, by employing high speed algorithmic computer systems to disseminate and/or effect orders and execute trades of Concordia shares throughout the U.S., including in New York, on stock exchanges in the U.S. through intermediary U.S. Broker-Dealers").) Harrington fails to allege any specific, in-forum, suit-related conduct by each Defendant capable of supporting jurisdiction.

In particular, regarding Merrill Canada, Harrington alleges vaguely that "ML-Canada, Merrill-U.S., and their affiliates" executed orders in the United States (*Id.* ¶¶ 94, 97), but does not plead that Merrill Canada in particular did so. Regarding TD Canada, Harrington similarly fails to allege even one specific trade TD Canada routed to the United States, instead confusingly alleging that "TD-Canada, TD-U.S., and their affiliates" executed a single trade on an unidentified market that *might* be the United States—or might equally be Canada. (*Id.* ¶ 85.) And regarding CIBC Canada, Harrington again fails to allege specific orders or trades in the United States, instead relying on a vague allegation that CIBC "and its affiliates" executed certain trades. (*Id.* ¶¶ 79, 82, 87–88, 90–91.) Harrington, in other words, does not allege how any Canadian Defendant "reach[ed] out" and engaged in any suit-related conduct in the forum, as purposeful availment requires. *See Walden v. Fiore*, 571 U.S. 277, 285 (2014). Harrington's allegations are not only too vague to support jurisdiction; they are also false. Merrill Canada did not conduct any trading, much less unlawful trading, in Concordia stock on any U.S. exchange. (ECF No. 75, ¶ 5.) TD Canada, meanwhile, routed only a trivial number of Concordia trades to U.S. markets via third parties. (Stratis Decl. ¶ 6.) Such *de minimis* trading does not constitute "continuous activity in New York state, directly related to [Harrington's] claims." (SAC ¶¶ 13, 19.) And the

20

overwhelming majority of trades that Plaintiff attributes to CIBC Canada, and all of those challenged as spoofing, were customer trades that customers elected to have routed to U.S. markets where the orders were executed by a U.S. broker-dealer not affiliated with CIBC Canada. (Cancellara Decl. ¶¶ 7, 9, 11.)

Moreover, even if Harrington's allegations regarding trading on U.S. markets by the Canadian Defendants were more specific, the allegations still could not support jurisdiction because they concern *customer* trading rather than trading for the Canadian Defendants' own accounts. (*See, e.g.*, SAC ¶ 52 (alleging that the Canadian Defendants placed "Executing Orders" on U.S. markets "at the direction of their customers").) Such customer trades were not U.S. contacts initiated by the Canadian Defendants. They were initiated by the Canadian Defendants' customers. As such, they cannot support jurisdiction over Harrington's claims against the Canadian Defendants. Specific jurisdiction requires minimum contacts that "the *defendant himself* creates with the forum," not contacts created by the "unilateral activity of a third party." *Walden*, 571 U.S. at 284, 291 (emphasis added) (internal quotation marks omitted). Not only that, in each instance where a Canadian Defendant routed a customer trade to the United States, that occurred as a result of a client election or the Canadian Defendant's duty to obtain best execution, wherever best execution might be found, rather than as a result of any scheme to take advantage of the U.S. market. (Cancellara Decl. ¶¶ 9, 11; Stratis Decl. ¶ 7.) Such forum contacts are neither suit-related nor "continuous" nor by "the defendant's own choice"; they are instead "random, isolated, [and] fortuitous"—that is, *exactly* the sort of contacts that the Supreme Court has repeatedly said are incapable of supporting personal jurisdiction over a foreign litigant. *See, e.g., Ford*, 141 S. Ct. at 1025, 1027.

*Second*, Harrington attempts to demonstrate personal jurisdiction under the "effects test," which permits the exercise of jurisdiction when "the conduct that forms the basis for the controversy occurs entirely out-of-forum," but only if "the defendant expressly aimed its conduct at the forum."  *Schwab*, 883 F.3d at 87 (internal quotation marks omitted).  Harrington's generalized allegation that the Canadian Defendants "engaged in suit-related conduct on Canadian Exchanges with the intent and effect of manipulating the price of Concordia shares" traded on U.S. exchanges (SAC ¶ 6), bereft of specific, plausible allegations that the Canadian Defendants intended to affect the U.S. market falls far short of pleading, as Harrington must, that each Canadian Defendant "expressly aimed its conduct at the forum," *Schwab*, 883 F.3d at 87 (internal quotation marks omitted).  That is especially so where, as noted above, the alleged orders are not even Defendants' own orders, but customer orders that, to the extent they were executed in the United States, were executed there by client request or as a function of defendants' duty to obtain best execution.  Other courts in this district have rejected similarly threadbare allegations as insufficient to establish personal jurisdiction under the effects test.  *See, e.g.*, *In re Platinum & Palladium Antitrust Litig.*, 449 F. Supp. 3d 290, 319, 322 (S.D.N.Y. 2020); *In re AstraZeneca Sec. Litig.*, 559 F. Supp. 2d 453, 467 (S.D.N.Y. 2008).  And the alleged sending of "Baiting Orders" to a Canadian exchange (*see* SAC ¶¶ 6, 7) is by its nature conduct aimed at *Canada*, not conduct aimed at the U.S.  *See Schwab*, 883 F.3d at 87–8 (alleged submission of false data on price-setting calls in London was conduct expressly aimed at London, notwithstanding alleged effect on related U.S. prices).

## IV.   Harrington's Claims Are Impermissibly Extraterritorial.

Finally, Harrington's claims must be dismissed to the extent they plead an extraterritorial application of the Exchange Act.  *See Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 273 (2010).  In rejecting Defendants' *Morrison* argument in their motion to dismiss the FAC, the Court

recognized that U.S. transactions alone do not justify application of the Exchange Act—a claim based on a domestic transaction cannot be sustained where the alleged misconduct in executing it is "predominantly foreign."  (ECF No. 88 at 19 (citing *Parkcentral Glob. Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 216 (2d Cir. 2014)).)  The Court held that Harrington's claims were not extraterritorial because the FAC alleged that the Canadian Defendants "engaged in at least some conduct in the United States in their purported effort to manipulate Concordia's stock on U.S. exchanges."  (ECF No. 88 at 20.)  But under *Parkcentral*, such domestic conduct must be weighed against conduct the Canadian Defendants are alleged to have undertaken in Canada to determinate which "predominates."  *See* 763 F.3d at 217.  Harrington's extensive new allegations about alleged misconduct in Canada tip the balance away from the United States and require dismissal of Harrington's claims against the Canadian Defendants under *Morrison*.

The core allegedly manipulative acts that Harrington attributes to the Canadian Defendants occurred abroad.  The FAC expressly stated in a footnote that it limited the reach of its claims to sales of Concordia share on U.S. exchanges only.  (FAC at 5 n.2.)  The SAC, by contrast, repeatedly complains about the Canadian Defendants entering "Baiting Orders" on Canadian markets or failing to detect that their customers did so.  (*See* SAC ¶¶ 78–86, 136, 138.)  Market manipulation claims are routinely dismissed where, as, here, the alleged manipulative acts occurred outside the United States.  *See, e.g.*, *Laydon v. Cooperatieve Rabobank U.A.*, No.-20-3626(L), 2022 WL 17491341, at *5 (2d Cir. Dec. 8, 2022) (affirming dismissal of LIBOR manipulation claim based on submission of rates from foreign trading desks to London panel); *Prime Int'l Trading, Ltd. v. BP P.L.C.*, 937 F.3d 94, 107–08 (2d Cir. 2019) (affirming dismissal of claim that defendants "manipulated the physical Brent crude market" in Europe "by engaging in fraud there").

At a minimum, the Court should dismiss Harrington's claims against the Canadian Defendants based on alleged trading in Canada or an alleged failure to supervise customer trading in Canada.  Such alleged conduct is confined to Canada, with no nexus to the U.S.  Further, claims based on Canadian activity create the "regulatory and legal overlap and conflict" that *Parkcentral* and *Morrison* warned against.  *See Parkcentral*, 763 F.3d at 216 (affirming dismissal of claims after finding that "the fraudulent acts alleged in the complaint [were] the subject of investigation by German regulatory authorities and adjudication in German courts"); *see also Morrison*, 561 U.S. at 269 ("[F]oreign countries regulate their domestic securities exchanges, … [a]nd the regulation … often differs from ours as to what constitutes fraud.").  Nor may Harrington overcome *Morrison* by alleging—however falsely—that the Canadian Defendants sent *non-manipulative* orders for Concordia shares to U.S. markets.  *See In re Platinum & Palladium Antitrust Litig.* 449 F. Supp. 3d at 332 (holding claim alleging manipulative acts abroad impermissibly extraterritorial notwithstanding allegations of non-manipulative trading in U.S.).  Similarly irrelevant is Harrington's allegation that the Canadian Defendants' actions in Canada had a deleterious effect on Concordia stock in the United States.  *See id.* at 331 ("[I]t has been clear since *Morrison* that an allegation that a foreign course of conduct has caused malign effects in the United States is not enough to salvage an otherwise extraterritorial claim."); *see also Morrison*, 561 U.S. at 259 (rejecting "effects" test for extraterritoriality).

## CONCLUSION

For the foregoing reasons, the SAC should be dismissed with prejudice.

/s/ Jamie S. Dycus
Jamie S. Dycus
David S. Lesser
KING & SPALDING LLP
1185 Avenue of the Americas
34th Floor
New York, NY 10036
(212) 556-2100
jdycus@kslaw.com
dlesser@kslaw.com

*Counsel for Defendants TD Securities Inc.,
and TD Securities (USA) LLC*


/s/ Abby F. Rudzin
Abby F. Rudzin
William J. Martin
O'MELVENY & MEYERS LLP
Seven Times Square
New York, NY 10026
(212) 326-2000
arudzin@omm.com
wmartin@omm.com

*Counsel for Defendants BofA Securities, Inc.
and Merrill Lynch Canada, Inc.*


/s/ Sandra D. Hauser
Sandra D. Hauser
DENTONS US LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 768-6802
sandra.hauser@dentons.com

Stephen J. Senderowitz
233 South Wacker Drive, Suite 5900
Chicago, IL 60606
(312) 876-8141
stephen.senderowitz@dentons.com

*Counsel for Defendant CIBC World Markets
Inc.*