**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HARRINGTON GLOBAL OPPORTUNITY FUND, LIMITED,<br><br>                               Plaintiff,<br><br>                        v.<br><br>CIBC WORLD MARKETS INC., BOFA SECURITIES, INC., MERRILL LYNCH CANADA INC., TD SECURITIES, INC., TD SECURITIES (USA) LLC, and JOHN DOES 1 THROUGH 10.<br><br>                               Defendants. | Civil Action No. 1:21-cv-00761 (LGS)<br>Hon. Lorna G. Schofield |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS
THE SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**

Page(s)

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...................................................................................................................................3

    I.    The SAC Is Barred by the Statute of Repose..................................................................3

    II.    Harrington Fails to Plead an Exchange Act Claim .......................................................6

        A.  Harrington Fails to Plead Manipulative Conduct with Particularity ......................6

        B.  Harrington Fails to Plead Scienter ...........................................................................8

        C.  Harrington Fails to Plead the Remaining Exchange Act Elements ........................11

    III.    Harrington Fails to Establish Personal Jurisdiction Over the Canadian Defendants ..................................................................................................................12

    IV.    Harrington's Claims Against the Canadian Defendants Are Impermissibly Extraterritorial.................................................................................14

CONCLUSION.................................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ATSI Commc'ns Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)...........................................................................................2, 6, 7, 8

*Charles Schwab Corp. v. Bank of Am. Corp.*,
    883 F.3d 68 (2d Cir. 2018).................................................................................................12, 14

*Cohen v. Stevanovich*,
    722 F. Supp. 2d 416 (S.D.N.Y. 2010)..................................................................................9, 12

*Ernst & Ernst v. Hochfelder*,
    425 U.S. 185 (1976)....................................................................................................................9

*Fezzani v. Bear, Stearns & Co.*,
    777 F.3d 566 (2d Cir. 2015).....................................................................................................11

*Laydon v. Coöperatieve Rabobank U.A.*,
    55 F.4th 86 (2d Cir. 2022) .......................................................................................................14

*Lorenzo v. SEC*,
    139 S. Ct. 1094 (2019)..........................................................................................................9, 11

*Morrison v. Nat'l Australia Bank Ltd.*,
    561 U.S. 247 (2010)............................................................................................................14, 15

*Parkcentral Glob. Hub Ltd. v. Porsche Auto. Holdings SE*,
    763 F.3d 198 (2d Cir. 2014).................................................................................................14, 15

*Peifa Xu v. Gridsum Holding Inc.*,
    2021 WL 773002 (S.D.N.Y. 23, 2021) .....................................................................................4

*Prime Int'l Trading, Ltd. v. BP P.L.C.*,
    937 F.3d 94 (2d Cir. 2019).......................................................................................................14

*SEC v. Gold*,
    2006 WL 3462103 (E.D.N.Y. Aug. 18, 2006)...........................................................................9

*SEC v. Masri*,
    523 F. Supp. 2d 361 (S.D.N.Y. 2007)......................................................................................10

*SEC v. U.S. Env.*,
    155 F.3d 107 (2d Cir. 1998).........................................................................................9, 10, 11

*Shields v. Citytrust Bancorp, Inc.*,
    25 F.3d 1124 (2d Cir. 1994)........................................................................................................6

*United States v. Coscia*,
    866 F.3d 782 (7th Cir. 2017) ......................................................................................................8

*Walden v. Fiore*,
    571 U.S. 277 (2014)..................................................................................................................13

**Statutes**

28 U.S.C. § 1658(b)(2) ....................................................................................................................3

## PRELIMINARY STATEMENT

Harrington responds to the arguments in Defendants' opening brief mainly by trying to convince the Court that the claims asserted in the SAC and the FAC are the same. According to Harrington, because the Court rejected Defendants' arguments for dismissal of the FAC, it must also reject Defendants' arguments for dismissal of the SAC. But why then was it necessary to stay discovery, amend the complaint, and put the parties and the Court to the trouble and expense of briefing and deciding this motion? A glance at the redline comparison of the two complaints (ECF No. 125-1) reveals the answer: The claims asserted in the SAC and the FAC are *not* the same, and the Court has *not* had occasion to analyze whether the SAC satisfies the exacting pleading requirements of the PSLRA to state an Exchange Act claim against each Defendant. On that analysis, multiple grounds warrant dismissal of the SAC.

*First*, the Exchange Act's statute of repose bars the claims in the SAC. Harrington does not dispute that any new claims are time-barred, but insists that the claims in the SAC are not new because, like those in the FAC, they arise under the Exchange Act against the same Defendants based on similar alleged misconduct. Courts routinely reject arguments based on such superficial similarity, however, and look instead to plaintiffs' specific allegations. Here, as the redline reveals, the allegations of the SAC differ radically from those of the FAC. Harrington now seeks to hold Defendants liable for customer spoofing, which—as this Court has already explained—was not a claim articulated in the FAC. Nor can Harrington explain why, if the claims are the same, so many of the allegations in the FAC, including all the allegedly unlawful transactions, have been removed and replaced with new ones. Harrington's claims based on customer spoofing must be dismissed.

*Second*, Harrington fails to plead "what manipulative acts were performed, which defendants performed them, when the manipulative acts were performed, and what effect the scheme had on the market for the securities at issue." *ATSI Commc'ns Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 102 (2d Cir. 2007). Rather than show how the SAC meets this demanding standard, Harrington pretends that it should not apply. But *ATSI* and the PSLRA require particularity—especially after months of discovery—and the SAC flouts that requirement. Its reliance on aggregate data and on allegations that lump Defendants together with each other, their unidentified or nonexistent "affiliates," and their customers is not sufficient.

*Third*, the SAC pleads no facts capable of supporting the requisite strong inference of scienter. Harrington points to the Court's decision that the FAC pleaded sufficient indicia to distinguish alleged spoofing by Defendants from legitimate order activity, but the allegations that supported that decision are absent from the SAC, which advances weaker, less particularized allegations in their place. Despite the voluminous discovery Harrington has obtained, the facts now alleged in the SAC fail to give rise to a strong inference that any Defendant intentionally or recklessly manipulated the market for Concordia stock.

*Fourth*, the SAC fails to plead loss causation. Unlike the FAC, the SAC attributes Harrington's alleged losses to an undifferentiated group of Defendants and unidentified third-party "affiliates." Harrington's generalized allegations—which differ materially from the allegations the Court found sufficient in the FAC—fail to plead the essential causal link between any Defendant's alleged misconduct and Harrington's alleged injury.

*Fifth*, the SAC fails to plead reliance. Unlike the FAC, the SAC affirmatively pleads that Harrington complained to regulators years ago based on the "fact" that Concordia's stock price appeared artificially depressed. Yet Harrington continued to trade.

Harrington's claims against the Canadian Defendants fail for two additional reasons. First, Harrington's new claims based on customer trading fail to plead a basis for this Court to exercise personal jurisdiction over the Canadian Defendants because Canadian customer trading is not a contact with the United States initiated by a Canadian Defendant. Harrington does not mention, let alone rebut, Defendants' declarations regarding the lack of U.S. conduct. Second, the Exchange Act does not provide Harrington a cause of action against the Canadian Defendants because the alleged conduct attributed to them is overwhelmingly extraterritorial.

## ARGUMENT

**I.     The SAC Is Barred by the Statute of Repose.**

Defendants showed in their opening brief that Harrington cannot initiate new claims outside the five-year statute of repose that governs claims under the Exchange Act. *See* 28 U.S.C. § 1658(b)(2). Harrington does not disagree. (*See* Opp. 10 (acknowledging Exchange Act "precludes … the assertion of new claims after the expiration of the 5-year repose period").) Thus, the question is whether the claims asserted in the SAC are "new." They are, and the Exchange Act statute of repose bars Harrington from pursuing them. None of the arguments in Harrington's opposition brief changes that result.[1]

Harrington argues repeatedly that the claims in the SAC are not new, but are the same as those asserted in the FAC, because "[e]ach and every element of every claim alleged in the SAC was alleged in the FAC." (Opp. 9; *see also id.* at 12.) But that is just another way of saying that

---

[1] Harrington has abandoned any argument that the claims in the SAC are new claims that nonetheless relate back to those asserted in the FAC (an argument that in any event would fail for the reasons set forth in Defendants' opening brief). Although the SAC contends that it "relates back to the prior pleadings" (SAC ¶ 124), Harrington disclaims that contention in its opposition brief, stating that "Harrington is not relying upon the 'relation back' [sic] and does not need its application" (Opp. 12). Thus the claims in the SAC are timely only if they are the *same claims* as those asserted in the FAC, which, for the reasons explained in text, they are not.

Harrington asserts Exchange Act claims against Defendants in both the FAC and the SAC. It does not demonstrate that the claims are the same. Otherwise, *all* claims under the Exchange Act, which necessarily have the same elements, would be the same claims—a position courts of course reject. *See, e.g.*, *Peifa Xu v. Gridsum Holding Inc.*, 2021 WL 773002, at *8 (S.D.N.Y. 23, 2021) (claims with same elements but based on new allegations were barred).

Harrington also contends that its claims in the SAC are the same as those in the FAC because they "arise from the same exact spoofing events," with "complete and total overlap between the spoofing events upon which the FAC's and SAC's claims are based." (Opp. 12–13.) That is false, as even a glance at the redline comparing the two complaints demonstrates. (*See* ECF No. 125-1.) In the FAC, Harrington alleged over 100,000 undefined "spoofing events" on U.S. and Canadian exchanges between January 27, 2016, and November 15, 2016. (FAC ¶ 67.) Now, Harrington alleges 948 (also undefined) "spoofing episodes" on U.S. and Canadian exchanges that occurred during an unspecified period. (SAC ¶¶ 50–51 & n.8, 56.) Harrington also removed every single one of the FAC's 18 alleged examples of spoofing (FAC ¶¶ 70–165) and instead alleges 7 different examples in the SAC (SAC ¶¶ 78–98, 100). Harrington has not identified even one order alleged in the SAC that overlaps with those alleged in the FAC.

Moreover, and critically, the SAC now seeks to establish that Defendants are liable for their customers' trading activity, which (as this Court has explained) the FAC did not do. (*See* ECF No. 120.) The SAC also alleges for the first time that customer trades through "Direct Market Access" are a central part of the spoofing scheme (SAC ¶¶ 28–29, 38) and that the Canadian Defendants engaged in an unexplained cross-border spoofing scheme involving "Intermediary Brokers" not mentioned in the FAC (*see, e.g.*, *id.* ¶¶ 3, 7, 47). And the SAC abandons the FAC's allegations of a conspiracy among Defendants. (*See, e.g.*, FAC ¶¶ 63, 66.)

4

Harrington tries to gloss over the significant changes in the way it has pled its case by contending that the SAC merely "resolve[s] lingering confusion" by "clarifying" its claims, "articulate[s a] legal theory," and makes "cosmetic and stylistic changes" to the FAC. (Opp. 8.) In truth, Harrington has asserted new claims based on new factual allegations intended to support a new theory of liability.

Finally, Harrington argues that the SAC's claims are not new because the FAC "unambiguously alleged that each of the Defendants placed orders … for the accounts of their customers"—essentially contending that this case has *always* been about holding Defendants liable for their customers' trading. (Opp. 14.) That is also wrong. The allegations of the FAC that Harrington cites in its opposition brief are generic descriptions of Defendants handling customer orders. (*See, e.g.*, FAC ¶ 22.) They are not, as in the SAC, supposed "Baiting Orders" placed by Defendants' customers. (*See, e.g.*, SAC ¶ 84.) Harrington also cites this Court's decision on Defendants' motion to dismiss the FAC, which noted the FAC's allegation that Defendants had purchased Concordia shares "at manipulated prices" for "either client or proprietary accounts." (*See* Opp. 14 (citing ECF No. 88 at 10–11); *see also* FAC ¶ 58.) But the SAC does not attempt to hold Defendants liable based on those *purchases* alleged in the FAC; it seeks to hold Defendants liable for *spoofing* by or for customers. (*See* SAC ¶¶ 78–98.)

In its decision on Harrington's motion to compel, this Court recognized that Harrington's descriptions of customer trading in the FAC articulated no basis to hold Defendants liable under the Exchange Act. (*See* ECF No. 120 at 4.) The Court was correct. Harrington first asserted claims based on customer trading when it filed the SAC. In fact, that was Harrington's asserted justification for filing the SAC rather than continuing to litigate based on the FAC. (*See, e.g.*, ECF No. 125 (request for leave to amend the FAC to add claims concerning defendants'

5

"customers' Baiting Orders" "based on what Harrington has recently learned during discovery").) Harrington's new claims concerning customer trading, asserted for the first time in the SAC, are out of time and must be dismissed.[2]

## II.  Harrington Fails to Plead an Exchange Act Claim.

### A. Harrington Fails to Plead Manipulative Conduct with Particularity.

As Defendants showed in their opening brief, the SAC should also be dismissed because Harrington has not alleged with particularity any manipulative conduct undertaken by each Defendant.  (*See* Mem. 10–14.)  Harrington responds that its complaint is lengthy and "replete with multiple tables" and "highly specific figures."  (Opp. 16.)  But Rule 9(b) requires detail, not verbosity.  All the tables and figures in the world do not matter if they fail to specify as to each Defendant the manipulative acts it allegedly performed.  *See ATSI*, 493 F.3d at 102.

Harrington also responds that Defendants' argument concerning particularity "directly contradicts this Court's prior ruling" and notes this Court's holding that the FAC adequately pled an Exchange Act claim.  (Opp. 17.)  Again, the Court has not assessed the SAC at all, and one look at the redline shows that the SAC is not the FAC.  (*See* ECF No. 125-1.)  As noted, Harrington has removed all 18 alleged examples of spoofing it previously pled.  (*Compare* FAC ¶¶ 7, 70–141, *with* SAC ¶¶ 3–4, 78–98.)  This is a new complaint, and it must be evaluated on its own merits.  *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (amended complaint supersedes earlier complaints and makes them irrelevant).

The Court should also disregard Harrington's protest that Defendants have relied too "heavily" on *ATSI*.  (Opp. 18.)  *ATSI* is the guidepost on this motion because it is the Second

---

[2] Nor, having removed from the SAC every single example of alleged spoofing by a Defendant for its own account, may Harrington now pivot back to its original theory based on supposed proprietary trading.  (*See* Mem. 9.)

6

Circuit's instruction on how to determine whether a plaintiff has stated a market manipulation claim. Harrington does not even attempt to show how the SAC satisfies *ATSI*, instead falsely stating: "*All ATSI* requires is that a complaint 'plead with particularity facts giving rise to a strong inference that the defendant intended to deceive investors.'" (*Id.* (quoting *ATSI*, 493 F.3d at 102).) That is the requirement for scienter, but Harrington must *also* plead "manipulative acts." *ATSI*, 493 F.3d at 101 (listing six elements to be pleaded to state market manipulation claim). That means "what manipulative acts were performed, which defendants performed them, when the manipulative acts were performed, and what effect the scheme had on the market for the securities at issue." *Id.* at 102. Failing to even acknowledge these requirements, Harrington cannot show how the SAC satisfies them.

Nor does Harrington respond to numerous other specific deficiencies in the SAC that Defendants identified in their opening brief, e.g.: (i) the SAC does not plead any occasions on which the *same person* placed and canceled sell orders and then executed buy orders, instead relying on aggregate figures; (ii) the SAC contains no allegations showing the significance of an alleged "sell-side imbalance" based on order volume, rather than share volume; and (iii) the SAC does not specify what was supposedly wrong with each Defendant's compliance procedures. (*See* Mem. 12–13.) To Defendants' argument that Harrington's allegations do not allow the Court to distinguish allegedly problematic orders from those that are not problematic, Harrington responds that it has pled "sixteen different ways … in which the available data demonstrates that the orders placed and executed by Defendants were not … normal order flow." (Opp. 18.) But Harrington's response vaguely pointing to "the data" and "Defendants" only highlights the problem with its pleading. *ATSI* requires that Harrington plead "which Defendant" performed which manipulative acts. Harrington's references to "the data" and "Defendants" generally are

7

insufficient, particularly where, as here, they must show not only allegedly manipulative orders or trades but each Defendant's specific role in them.  *See ATSI*, 493 F.3d at 102.

Finally, Harrington complains that it need not provide an "expert-level report or analysis of how it arrived at each of the figures cited in the SAC." (Opp. 18.)  Defendants do not contend otherwise.  But Defendants do contend that Harrington, having had the benefit of voluminous order and execution data and two opportunities to amend its complaint, should be required to allege particularized facts concerning each Defendant plausibly showing that it engaged in market manipulation.  Harrington's failure to do so should result in dismissal.

### B. Harrington Fails to Plead Scienter.

Defendants showed in their opening brief that Harrington has not pled scienter by positing "three possibilities" regarding Defendants' alleged state of mind. (Mem. 14–17.)  In its brief in opposition, Harrington simply ignores that argument, never bothering to explain why such speculation in the alternative suffices under the PSLRA.  It does not.

Instead, Harrington points to the four "indicia" identified in *United States v. Coscia*, 866 F.3d 782 (7th Cir. 2017), and cited by this Court in its decision on Defendants' motion to dismiss the FAC.  The trouble for Harrington is that whereas the Court previously found that the FAC alleged "particularized facts … fitting each of the four indicia" in *Coscia* (ECF No. 88 at 12), the SAC alleges no such particularized facts.  Instead, the SAC omits Harrington's original 18 alleged spoofing examples and replaces them with examples that do not attribute allegedly unlawful orders and trades to any party in particular, much less any specific Defendant.  Thus Harrington no longer "pleads that each pair of U.S. and Canadian Spoofing Defendants placed and canceled baiting orders in a matter of milliseconds," or for that matter that any Defendant engaged in any of the other three activities identified in *Coscia* as potentially reflecting scienter. (*Id.*)  Nor does Harrington's opposition brief direct the Court to any such specific pleading (it

8

cannot), but instead cites generalized, conclusory allegations, e.g., that all Defendants placed and canceled "tens of thousands of Baiting orders that were never intended to be executed." (Opp. 20.) The opposition brief thus betrays that, far from enhancing Harrington's efforts to plead scienter based on voluminous discovery, the SAC offers *weaker*, less particularized allegations that no longer satisfy Harrington's burden to plead scienter under the PSLRA. *See, e.g.*, *Cohen v. Stevanovich*, 722 F. Supp. 2d 416, 428 (S.D.N.Y. 2010) ("'Conclusory statements of associations' or generalized allegations of scienter against groups of defendants will not state a claim for securities fraud.") (internal quotation marks omitted).

Harrington continues to rely on *SEC v. U.S. Environmental*, 155 F.3d 107 (2d Cir. 1998), and *Lorenzo v. SEC*, 139 S. Ct. 1094 (2019). (*See* Opp. 21–23.) Neither case can rescue Harrington's deficient scienter allegations. The SEC, whose claims survived a motion to dismiss in *U.S. Environmental*, "is not a private litigant and, thus, is not subject to the heightened scienter pleading requirements of the Private Securities Litigation Reform Act." *SEC v. Gold*, 2006 WL 3462103, at *5 n.3 (E.D.N.Y. Aug. 18, 2006). Harrington insists that "the applicable pleading standard has nothing to do with the question of whether, *as a matter of law*, brokers may be liable for trades they knowingly or recklessly place on their customers' behalf." (Opp. 22 (emphasis in original).) But on this motion, the question is whether the SAC pleads facts giving rise to a strong inference that Defendants engaged in "intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price of securities." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199 (1976). The answer is "no."

Harrington points to the SAC's "sixteen factual allegations" (Opp. 20–21) that the order and trade data it has analyzed supposedly shows that spoofing occurred in 2016. But the allegations upon which Harrington relies are frequently confusing or even unintelligible, and

there is nothing in the SAC to suggest that any Defendant was (or could have been) aware of the alleged spoofing. As just one example, the first of Harrington's sixteen allegations is as follows:

> *First*, Defendants submitted Baiting Orders totaling, on average, 144,758 sell-side shares per spoofing episode which were subsequently cancelled. By contrast, over those periods, Defendants submitted orders for only 2,368 sell-side shares, on average, which were subsequently cancelled—a difference of **6,013%**. Meanwhile, Defendants' purchase of shares at prices artificially depressed by the spoofing episodes far exceeded their behavior in ordinary market activity.

(SAC ¶ 58.) How is a "Baiting Order" or a "spoofing episode" defined? What are "those periods"? What is the "difference" described here comparing? What does it mean to say Defendants' purchases "far exceeded their behavior in ordinary market activity"? Which Defendants? How and why would any Defendant have performed whatever analysis Harrington performed, to arrive at this muddled conclusion? The SAC answers none of these questions. As a consequence its allegations fail to support a plausible inference that any Defendant (let alone all Defendants) acted intentionally or recklessly.

Nor are Harrington's allegations concerning scienter "identical" to those in *U.S. Environmental*, as Harrington misleadingly contends. (Opp. 21–22.) In that case, the defendant engaged in "blatantly deceptive and fraudulent" conduct, *SEC v. Masri*, 523 F. Supp. 2d 361, 375 (S.D.N.Y. 2007), such as wash trades, *see U.S. Environmental*, 155 F.3d at 109. Here, Harrington alleges that unspecified Defendants or their unidentified "affiliates" engaged in facially lawful conduct—placing and canceling orders—that supposedly violated the Exchange Act because Defendants' customers lacked intent to trade. And concerning motive, Harrington offers only the uncontroversial statement that Defendants collect fees for acting as broker-dealers, without any allegation that such fees depended on Defendants' engaging in *spoofing*, along with a vague assertion that Defendants saved on execution costs and reaped "ill-gotten gains," without any explanation of *how*. (Opp. 21.) That is a far cry from the allegation in *U.S.*

*Environmental* that the defendant acted in exchange for an express promise of "risk-free profit." *See* 155 F.3d at 109. *Lorenzo*, meanwhile, is even less helpful to Harrington. The Supreme Court decision in *Lorenzo* does not even *address* scienter, the defendant having conceded that issue. *See* 139 S. Ct. at 1100.

It is not, as Harrington contends, "silly" to require Harrington—which now has had the benefit of many months of discovery—to allege particularized facts capable of supporting a strong inference that each Defendant acted knowingly or recklessly. (Opp. 23.) It is Harrington's burden as a private plaintiff under the PSLRA. Harrington has failed to meet it.

### C. Harrington Fails to Plead the Remaining Exchange Act Elements.

The SAC also fails to plead loss causation and reliance, and the Court's prior rulings concerning the materially distinct allegations of the FAC are not to the contrary.

The SAC does not present "the exact same allegations" (Opp. 29) as the FAC concerning loss causation (*id.* 24–25). Unlike the FAC, which attempted to attribute Harrington's alleged injury to particular Defendants, the SAC instead attributes Harrington's alleged losses to an undifferentiated group that lumps Defendants together with unnamed third party "affiliates." (SAC ¶¶ 78–86, 93–98.) Such allegations are insufficient to connect any Defendant to any alleged stock purchase or sale by Harrington. *See Fezzani v. Bear, Stearns & Co.*, 777 F.3d 566, 572 (2d Cir. 2015) (affirming dismissal of market manipulation claim where plaintiffs failed to allege that alleged misconduct "moved the price they paid for particular shares"). Nor has the Court "already rejected" Defendants' argument on this issue (Opp. 24), because the Court has had no occasion to consider a motion to dismiss the SAC.

In the same way, the allegations of the SAC concerning reliance differ materially from those in the FAC. Although Harrington complained to regulators about Concordia trading in April 2016, the Court held that the FAC adequately pled reliance because it did not contain an

11

allegation that Harrington's complaint stemmed from "any belief … that there was manipulative activity." (ECF No. 88 at 17.)  But now the SAC admits that Harrington contacted regulators based on "the fact that Concordia's price appeared depressed." (SAC ¶ 105.)  Harrington insists that this allegation merely reflects "concern" about the share price rather than any "belief" that it was depressed (Opp. 25), but even if that were a meaningful distinction, that is not what the SAC says.  The SAC describes the appearance of a depressed price as a "fact" that motivated Harrington's investigation.  Harrington's new allegations in the SAC make clear that it cannot prove reliance as a matter of law, so its claim must be dismissed. *See Cohen*, 722 F. Supp. 2d at 433 (dismissing Exchange Act claims where plaintiffs failed to plead that they "relied in any way on Defendants' alleged wrongdoing").

### III.  Harrington Fails to Establish Personal Jurisdiction Over the Canadian Defendants.

Harrington's insistence that it has pled personal jurisdiction over the Canadian Defendants because the SAC vaguely "alleges that each routed suit-related orders to be executed in the U.S." fails.  (Opp. 27.)  Rather than allege specific facts, the SAC broadly asserts that *either* a Canadian Defendant *or* a U.S. Defendant *or* an unidentified "affiliate" executed orders in the United States in connection with each identified trade.  (*See* SAC ¶¶ 79, 82, 85, 87–88, 90–91.)  Harrington can cite no authority showing that such vague *either/or* allegations are sufficient to satisfy its burden to plead that each Defendant deliberately reached out to the United States to engage in "suit-related conduct," i.e., to show a "causal relationship between a defendant's U.S. contacts and the episode in suit"—i.e., the alleged spoofing. *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 83–84 (2d Cir. 2018).  Moreover, the Canadian Defendants' uncontested declarations conclusively refute Harrington's vague allegations.  Merrill Canada did not conduct trading in Concordia in the United States at all.  (ECF No. 75, ¶ 5.)  TD Canada routed only a trivial number of trades to the United States via third parties.  (Stratis Decl. ¶ 6.)  And as to

CIBC, *customers*—not CIBC—entered the only orders challenged as spoofing (and nearly all of the non-spoofing orders as well). (Cancellara Decl. ¶¶ 7, 9, 11.) And there are no "affiliates" even potentially relevant here. *Id.* In short, Harrington alleges zero suit-related conduct in the United States by any of the Canadian Defendants.

Tacitly conceding that it cannot establish personal jurisdiction over any Canadian Defendant based on domestic proprietary trading, Harrington tries to do so based on customer trading. (*See* Opp. 27.) The attempt fails, because Defendants' customer orders are not contacts initiated by any Defendant. *See Walden v. Fiore*, 571 U.S. 277, 291 (2014) ("[I]t is the defendant, not the plaintiff or third parties, who must create contacts with the forum State."). Defendants' declarations rebut the unsupported assertion that the Canadian Defendants "decided" to "route or execute" customer trades in the United States. (*See* Opp. 27.) CIBC Canada's declaration establishes that customers entered their own orders and decided to route them to the United States, where they were executed by third parties not affiliated with CIBC. (Cancellara Decl. ¶¶ 7, 9, 11.) Harrington has nothing contrary to cite. Similarly, TD Canada did not "decide" to follow its best execution duty in routing *de minimis* customer orders to the United States. (Stratis Decl. ¶¶ 6–7.) And there are no Merrill Canada trades in the United States at all. Simply put, Harrington alleges no facts showing that any Canadian Defendant engaged in suit-related conduct in the United States or otherwise purposefully availed itself of the forum.

Finally, Harrington's contention that it has pled jurisdiction under the effects test by alleging that the Canadian Defendants engaged in conduct in Canada with "the purpose and intent" of affecting U.S. markets (Opp. 28) is wrong. Entering "Baiting Orders" on *Canadian* markets or failing to detect that customers entered such orders is not conduct by the Canadian

13

Defendants "expressly aimed" at the United States—it is, by its nature, conduct aimed at Canada. *See Schwab*, 883 F.3d 68 at 87–88. It cannot support jurisdiction under the effects test.

### IV. Harrington's Claims Against the Canadian Defendants Are Impermissibly Extraterritorial.

Harrington's brief in opposition also confirms that its claim against the Canadian Defendants should be dismissed under *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010), because it seeks an extraterritorial application of the Exchange Act. The principal alleged misconduct Harrington attributes to the Canadian Defendants is entering "Baiting Orders" on Canadian markets or failing to detect that customers did so. That is "predominantly foreign" conduct, and as such it is not actionable under the Exchange Act. *See Parkcentral Glob. Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 216 (2d Cir. 2014) ("[T]he relevant actions in this case are so predominantly German as to compel the conclusion that the complaints fail to invoke § 10(b) in a manner consistent with the presumption against extraterritoriality.").[3]

Contrary to Harrington's contention (*see* Opp. 30 n.19), Harrington's claims against the Canadian Defendants do not differ materially from those dismissed as impermissibly extraterritorial in *Prime International Trading, Ltd. v. BP P.L.C.*, 937 F.3d 94 (2d Cir. 2019), and *Laydon v. Coöperatieve Rabobank U.A.*, 55 F.4th 86 (2d Cir. 2022). Each case concerned allegations of manipulative acts that occurred outside the United States, and each resulted in dismissal consistent with the holding of *Parkcentral* that a claim does not lie under the Exchange Act based on predominantly foreign conduct. Harrington cannot avoid dismissal by identifying

---

[3] The Second Circuit's recent decision in *In re Platinum & Palladium Antitrust Litigation*, 2023 WL 2229364 (2d Cir. Feb. 27, 2023), is not to the contrary. There, the court held that Commodity Exchange Act claims alleging that a U.K.-based consortium of trading firms manipulated benchmark prices were not impermissibly extraterritorial because the firms' U.K. personnel were alleged to have conspired with their U.S. colleagues such that "much of the alleged manipulation was domestic." *Id.* at *14. Harrington alleges no conspiracy.

14

minimal domestic conduct in the form of customer trades that are not even alleged to be unlawful.  Even *Parkcentral* featured some alleged domestic activity.  *See* 763 F.3d at 201 (alleged fraudulent statements were "were made primarily in Germany, but were also accessible in the United States and were repeated here by the defendants").  Because Harrington does not (and cannot) disagree that the alleged *manipulative* acts attributed to the Canadian Defendants are predominantly Canadian, the claims against the Canadian Defendants must be dismissed.[4]

Finally, Harrington offers no real counterargument to, at a minimum, dismissing the claims against the Canadian Defendants to the extent that they are based on alleged trading in Canada or an alleged failure to supervise customer trading in Canada.  Harrington asserts, in a footnote and without authority, that the Exchange Act "comfortabl[y] encompasses" the alleged conduct in Canada.  (Opp. 29 n.18.)  But such conduct has no cognizable nexus to the United States, and its "effects" in the U.S. do not permit application of the Exchange Act.  *See Morrison*, 561 U.S. at 259 (rejecting "effects" test for extraterritoriality).  Ultimately, Harrington's claims under U.S. securities law challenging trading activity on a foreign regulated exchange create precisely the "regulatory and legal overlap and conflict" that the presumption against extraterritoriality seeks to avoid.  *See Morrison*, 561 U.S. at 269; *Parkcentral*, 763 F.3d at 216.  The claims against the Canadian Defendants should be dismissed.

## CONCLUSION

The SAC should be dismissed with prejudice.

---

[4] Harrington also cannot distinguish *Parkcentral* by arguing that this case does not involve precisely the same financial asset or that here the "goal and effect" was to manipulate domestic transactions.  (Opp. 29–30.)  In fact, in both cases the plaintiffs alleged that foreign defendants acted abroad with the intent of manipulating domestic trading of securities or "economically equivalent" security-based swaps.  *See Parkcentral*, 763 F.3d at 203 ("The plaintiffs allege that Porsche induced them [in the United States] to bet on a decline in the price of VW shares.").

15

/s/ Jamie S. Dycus
Jamie S. Dycus
David S. Lesser
KING & SPALDING LLP
1185 Avenue of the Americas
34th Floor
New York, NY 10036
(212) 556-2100
jdycus@kslaw.com
dlesser@kslaw.com

*Counsel for Defendants TD Securities Inc., and TD Securities (USA) LLC*


/s/ Abby F. Rudzin
Abby F. Rudzin
William J. Martin
O'MELVENY & MEYERS LLP
Seven Times Square
New York, NY 10026
(212) 326-2000
arudzin@omm.com
wmartin@omm.com

*Counsel for Defendants BofA Securities, Inc. and Merrill Lynch Canada, Inc.*


/s/ Sandra D. Hauser
Sandra D. Hauser
DENTONS US LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 768-6802
sandra.hauser@dentons.com

Stephen J. Senderowitz
233 South Wacker Drive, Suite 5900
Chicago, IL 60606
(312) 876-8141
stephen.senderowitz@dentons.com

*Counsel for Defendant CIBC World Markets Inc.*

16