

O'Melveny & Myers LLP  
Times Square Tower  
7 Times Square  
New York, NY 10036-6537

T: +1 212 326 2000  
F: +1 212 326 2061  
omm.com

**Plaintiff shall file a responsive letter, not to exceed two pages, by December 7, 2023. So Ordered.**

**Dated: December 5, 2023**  
**New York, New York**

December 4, 2023

The Honorable Lorna G. Schofield  
United States District Judge  
United States District Court  
Southern District of New York  
500 Pearl Street  
New York, NY 10007

LORNA G. SCHOFIELD  
UNITED STATES DISTRICT JUDGE

**Re:** *Harrington Global Opportunity Fund, Limited v. CIBC World Markets Corp., et al.*, No. 1:21-cv-00761 (LGS) (S.D.N.Y.)

Dear Judge Schofield:

We write under Local Rule 37.2 and Your Honor's Individual Rules II.B.2, III.A.1, and III.C.3 on behalf of Defendants Merrill-US and Merrill Lynch Canada Inc. (collectively, "Merrill Lynch") to request a pre-motion discovery conference to compel Plaintiff Harrington Global Opportunity Fund, Ltd. to identify the "Baiting Orders" allegedly entered by Merrill Lynch to engage in "spoofing episodes," as Harrington pleaded in Paragraph 56 of the Second Amended Complaint ("SAC"). (ECF No. 133, ¶ 56.) The parties have met and conferred in good faith and been unable to resolve this issue.

Harrington alleged in its SAC that the Merrill Lynch Defendants collectively engaged in 565 "spoofing episodes" involving Concordia stock in 2016, in connection with which they entered and cancelled Baiting Orders totaling 85,133,679 shares and purchased 474,612 shares on the U.S. and Canadian Exchanges. (*Id.*) Harrington pleaded specific details such as order entry and execution times (down to the millisecond) only for two of the alleged 565 episodes. (*See id.* ¶¶ 78–98.)

The Court relied on these allegations against Merrill Lynch and similar allegations against the other Defendants to deny Defendants' motion to dismiss the SAC. (*See, e.g.*, ECF No. 147, at 2 ("Defendants placed hundreds of baiting orders on U.S. and Canadian exchanges . . . ."); *id.* at 11 (citing SAC allegations of Defendants "placing baiting orders of at least 138,678,121 Concordia shares" that lowered the price of "Concordia shares by, on average, 0.8652%" and then "executed 578,530 executing orders of Concordia shares"); *id.* at 12 (citing SAC allegations of "7 illustrative examples," "a chart of an additional thirty spoofing episodes" and "the occurrence of over 900 spoofing episodes"); *id.* at 15 ("The SAC pleads that '[d]uring each Spoofing Episode, Defendants placed and then cancelled the Baiting Orders within seconds and even milliseconds.'").

O'Melveny

Since then, despite repeated requests from Merrill Lynch over nearly two months, Harrington still refuses to identify the orders Harrington characterized in the SAC as Merrill Lynch Baiting Orders—to the tune of precisely 85,133,679 shares.  (ECF No. 133, ¶ 56.)  Harrington has no basis for withholding this information—information it *must have* to have made the allegations in the SAC.  Not surprisingly, in none of the parties' meet-and-confer discussions has Harrington ever suggested that does not have this data or that it would be burdensome to produce the data to Merrill Lynch.

To be sure, Harrington has produced data concerning the "Executing Purchases" alleged in Paragraph 56 of the SAC and stated an aggregate number of shares comprising the Baiting Orders surrounding those purchases.  But that does not permit Merrill Lynch—and more important, its experts—to evaluate Harrington's allegations about Baiting Orders.  Harrington refuses to say how many Baiting Orders were allegedly placed (as opposed to the gross number of shares those orders contained), let alone when those orders were placed or when they were cancelled, by which Merrill Lynch entity, in what quantity, at what prices, on what trading venue, or even whether they were placed in the U.S. or Canada.  This information is essential to Merrill Lynch's ability to defend itself, and Harrington should be ordered to provide it to Merrill Lynch immediately.

Harrington justifies its refusal to provide this information—on which the Court relied to deny Defendants' motion to dismiss—by claiming that it is a premature request for Harrington's expert report.  But all Merrill Lynch seeks is data to identify the Baiting Orders *Harrington already pleaded*.  Harrington's expert will presumably explain why he or she believes that these orders constitute a spoofing scheme and how the alleged scheme injured Harrington.  Merrill Lynch seeks none of that, nor any other expert analysis, just the detail behind Harrington's factual allegations.

We are available to discuss at the Court's convenience.

                Respectfully,

                /s/ *Abby F. Rudzin*

                Abby F. Rudzin
                *of* O'MELVENY & MYERS LLP

cc: All counsel of record via ECF