

O'Melveny & Myers LLP  
Times Square Tower  
7 Times Square  
New York, NY 10036-6537

T: +1 212 326 2000  
F: +1 212 326 2061  
omm.com

Abby F. Rudzin  
D: +1 212 326 2033  
arudzin@omm.com

January 29, 2024

The Honorable Lorna G. Schofield  
United States District Court, Southern District of New York  
500 Pearl Street  
New York, NY 10007

Re: *Harrington Global Opportunity Fund, Limited v. BofA Securities, Inc., et al.*, No. 1:21-cv-00761 (LGS) (S.D.N.Y.)

Dear Judge Schofield:

      We write under Local Rule 37.2 and Your Honor's Individual Rules on behalf of Defendants BofA Securities, Inc. and Merrill Lynch Canada Inc. (collectively, "Merrill Lynch") to request a pre-motion conference to once again compel Plaintiff Harrington Global Opportunity Fund, Ltd., to identify the "Baiting Orders" that Merrill Lynch allegedly entered in furtherance of "spoofing episodes" that Harrington pleaded in Paragraph 56 of the Second Amended Complaint (the "SAC"). (ECF No. 133.) The Court previously ordered Harrington to identify those "Baiting Orders," rejecting Harrington's argument that doing so would improperly reveal Harrington's expert analysis, finding any work product protection waived because Harrington's complaint was sustained based on them. (*See* ECF No. 167, at 2.)

      Harrington did not, however, comply with the Court's order to produce the Baiting Orders—i.e., to "provide information identifying *each* trade, including the date and times of placement and cancellation (with the specificity possessed by Plaintiff), the quantity, the price, the trading venue and the broker-dealer that entered the order." (*Id.* (emphasis added).) Instead, nearly three weeks after the Court issued its order, Harrington finally sent a data dump and left it to Merrill Lynch to identify the needles in the haystacks. Despite its best efforts, Merrill Lynch cannot find the alleged Baiting Orders. Merrill Lynch has attempted to meet and confer with Harrington but is unable to resolve this issue.

      Harrington alleged in the SAC that in 2016 Merrill Lynch engaged in 565 "spoofing episodes" involving Concordia stock, entering and cancelling "Baiting Orders" totaling 85,133,679 shares and purchasing 474,612 shares on the U.S. and Canadian Exchanges. (SAC ¶ 56.) Harrington pleaded specific order entry and execution times (down to the millisecond) for only two of the alleged 565 episodes. (*See id.* ¶¶ 78–98.) The Court rejected Harrington's claim that identification of the Baiting Orders was protected work-product and agreed that Merrill Lynch was entitled to "identification of the orders on which the Complaint is based." (ECF No. 167, at 2.)

Austin • Century City • Dallas • Houston • Los Angeles • Newport Beach • New York • San Francisco • Silicon Valley • Washington, DC  
Beijing • Brussels • Hong Kong • London • Seoul • Shanghai • Singapore • Tokyo

Harrington's data dump does not comply with the Court's order. Harrington produced three spreadsheets containing trading data from three sources: (1) FINRA's Order Audit Trails System, which collects U.S. order data on both public exchanges and private venues; (2) the Toronto Stock Exchange, which collects order data on its exchanges; and (3) Instinet, a broker dealer that some Canadian entities use to execute trades in the U.S. These data do not "identif[y] [] the orders on which the Complaint is based" (*id.*) for at least the following reasons:

***No Identification of Baiting Orders.*** The three datasets contain more than a million different market events, with no indication about which of them Harrington characterizes as a Baiting Order. As a result, Merrill Lynch and its experts cannot distinguish Baiting Orders from unrelated trading events or link the market events with the Baiting Order analysis that appears in the SAC. It is not for lack of trying—Merrill Lynch and its experts attempted to cross reference the trading events in the three datasets with a list of the SAC's alleged spoofing "episodes" Harrington provided. Although Harrington identified some order activity in that list as "Baiting Orders," a comparison of that list with this latest production produced absurd outcomes. During one alleged spoofing "episode" on April 11, 2016, for example, the datasets indicate that Merrill Lynch placed supposed Baiting Orders for thousands of shares *after* it had already completed the Executing Purchase for that particular alleged spoofing episode. That does not make sense.

Harrington's theory is that Merrill Lynch customers entered the Baiting Orders to temporarily reduce the market price in order to execute an Executing Purchase at a lower price. (See SAC ¶¶ 40-43, 47.) As another court recently explained it:

> If the spoofer's goal is to drive the stock price downward, the spoofer enters Baiting Orders to sell, which are intended to "bait" or "trick" other market participants to enter their own sell orders (to avoid suffering losses in a seemingly downward trending market). Once the price of the security has been lowered, the spoofer completes "Executing Purchases," whereby the spoofer buys at the artificially low price. Immediately thereafter, the spoofer cancels the Baiting Orders and thus "completes the spoofing cycle."

*Nw. Biotherapeutics, Inc. v. Canaccord Genuity LLC*, 2023 WL 9102400, at *2 (S.D.N.Y. Dec. 29, 2023) (citations omitted). In other words, an order is not a Baiting Order unless it *precedes* the Executing Purchase. Yet Harrington's supposed set of Baiting Orders includes numerous orders entered *after* the Executing Purchase. They cannot possibly be Baiting Orders.

When Merrill Lynch asked Harrington to identify the particular trading events in the datasets that the SAC categorizes as Baiting Orders versus Executing Purchases versus Cancellations, Harrington refused on the basis that such identification results from its expert analysis. But that is precisely the argument this Court previously rejected. The Court should order Harrington to identify to Merrill Lynch which market events among the million plus rows in the three datasets correspond to the market events that Harrington pleaded as spoofing. If Harrington now admits that it cannot substantiate the specific number of Baiting Order shares on

which the Court relied to sustain its claim in the SAC, the Court should reconsider its decision on Defendants' motion to dismiss.

**No Identification of Cancellations**. The datasets similarly do not identify the Cancellations of the alleged Baiting Orders, despite the Court's clear instruction that Harrington do so. The Cancellations should be consistent with the details of the Baiting Orders as pleaded in the SAC, such that Harrington ought to be able to specifically identify the data field(s) it used to link the events it characterizes as Baiting Orders with their corresponding Cancellations. After all, an order is, by definition, not a Baiting Order if it was not canceled. (It also is not a Baiting Order just because it was canceled—it needs to have been placed with an intent not to execute it.) Harrington contends that because (1) *some* Cancellations appear among the million-plus rows in the datasets and (2) it is possible to link *those* Cancellations to orders, it has complied with the Court's order. But the Court did not order Harrington to set up a puzzle for Merrill Lynch to solve: It told Harrington to identify for Merrill Lynch "the date and times of placement and cancellation" of the Baiting Orders that Harrington *relied on* to file the SAC. (ECF No. 167, at 2.) Again, Harrington *must* have had this information to have made the allegations in the SAC in good faith, and its continuing refusal to provide this information to Merrill Lynch as the Court ordered warrants immediate relief.

**Incomplete and Inadequately Described Data from Instinet**. Harrington acknowledges that its Instinet compilation contains Executing Purchase volumes that do not consistently align with the volumes that Harrington previously identified to Defendants as the basis for the SAC's Baiting Order analysis. If Harrington is not able to explain this discrepancy, Harrington once again appears to lack a good-faith basis to allege the Baiting Order numbers in the SAC.

\* \* \*

Harrington should have at its fingertips the information it relied upon to support the allegations it made in the SAC. Merrill Lynch respectfully requests that the Court again order Harrington to produce that information with appropriate specificity within one week of the date of its order.

We are available to discuss at the Court's convenience.

Respectfully,

/s/ Abby F. Rudzin

Abby F. Rudzin
*of* O'MELVENY & MYERS LLP

cc: All counsel of record via ECF

3