# HOLWELL SHUSTER & GOLDBERG LLP

*Gregory J. Dubinsky*
*(646) 837-5151*
*gdubinsky@hsgllp.com*

*425 Lexington Avenue*
*New York, New York 10017*
*www.hsgllp.com*

**VIA ECF**                                                                February 13, 2024

The Honorable Lorna G. Schofield
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    <u>Harrington Global Opportunity Fund, Ltd. v. BofA Securities, Inc.</u>, No. 21-CV-761

Dear Judge Schofield:

      We write on behalf of Plaintiff Harrington Global Opportunity Fund, Limited ("Harrington") in response to yesterday's letter from Defendants BofA Securities, Inc. and Merrill Lynch Canada Inc. (together, "Merrill") (Dkt. 191).

      As a threshold matter, Merrill blatantly violated this Court's February 1, 2024 Order by failing to include in its letter motion "a joint description of what efforts were made to resolve the dispute without Court involvement." Dkt. 189 at 2. That alone is reason to deny Merrill's request. Perhaps Merrill declined to solicit Harrington's input for a "joint description" because any such description would reveal that Merrill's efforts to resolve the dispute before seeking the Court's intervention consisted of a two-minute telephone call with the undersigned during which Merrill's counsel engaged in no substantive discussion concerning Merrill's contention that Harrington has not complied with the Court's Order.

      The Court's Order directed Harrington to "provide information identifying each trade" on which the Second Amended Complaint is based "with the level of specificity possessed by Plaintiff." Dkt. 167 at 2; Dkt. 189 at 2. That is exactly what Harrington did. Its holistic analysis was based on *all* of the orders in the data it produced—so that Harrington "does not have information that identifies the alleged baiting orders with greater specificity than has already been provided to Defendants." Dkt. 189 at 2. For this reason, Harrington respectfully requests that the Court deny Merrill's request that Harrington do more.

      Merrill's letter reflects a fundamental misapprehension of the analysis reflected in the Second Amended Complaint—a misapprehension that could have been cleared up in the meet and confer. Merrill's letter refers to the allegation in the Second Amended Complaint that the "Baiting Orders" totaled 85,133,679 shares and attempts to fault Harrington for producing data for orders totaling more than 124 million shares. This is a red herring.

      As Harrington has explained, the analysis to identify spoofing as alleged in the Second Amended Complaint was not done by matching order identifiers on a one-to-one basis. Rather, it was necessary for Harrington to conduct a comprehensive analysis of the totality of Merrill's market activity around Executing Purchases. That is because just as a spoofer can manipulate the price of a security by creating an order and later cancelling the same order, she can also spoof in other ways—for example, by adding shares to an *existing* sell order and then removing that same

volume from a *different* sell order after the executing purchase, or by creating one order and cancelling another.[1] That is, the spoofing alleged in the Second Amended Complaint is *not* limited to Merrill's arbitrarily chosen pattern in which (i) Order with identifier X was placed for Y shares, (ii) an executing purchase was made, and (iii) Order with identifier X for Y shares was thereafter cancelled. Yet that is the narrow theory of spoofing into which Merrill would pigeonhole Harrington's claims by insisting that Harrington "identify" the specific order identifiers, created before Executing Purchases, that were canceled after Executing Purchases.

Harrington's analysis revealed that the spoofing attributable to Merrill created a false signal of supply to the tune of 85,133,679 shares, which is the lesser of the volume of sell-side orders cancelled in the five minutes after each Executing Purchase and the volume of sell-side orders created in the five minutes prior to each Executing Purchase. The orders constituting that artificial signal have been produced. The reason that there are orders representing more than 85,133,679 shares in the produced data is because all of that data is what Harrington was required to analyze to determine the false supply signal injected into the marketplace.[2]

Worse still, Merrill claims that Harrington has somehow made an "admission" that it "lacked a good-faith basis for the figures it alleged in its complaint." Nonsense.[3] As Harrington explained in its February 7 letter to the Court, pursuant to the holistic analysis Harrington conducted, *all* the market events produced to Defendants—*i.e.*, all market activity with a five-minute window of the spoofing—are the orders on which the Second Amended Complaint is based. Rather than engaging substantively with Harrington's explanation, Merrill asked counsel for Harrington simply to confirm whether its view was that it had complied with the Court's Order, and then rushed right back to this Court. That does not comply with what the Court ordered.

\* \* \*

Harrington has produced the data identifying the trades upon which the Second Amended Complaint is based. Merrill's complaints otherwise are the stuff of the expert stage, if anything. Should the Court require any additional information, Harrington will gladly oblige.

---

[1] This is uncontroversial—indeed, Merrill does not say that the examples Harrington gave in its prior letter would not constitute spoofing. And for good reason. *See Nw. Biotherapeutics, Inc. v. Canaccord Genuity LLC*, 2023 WL 9102400, at *17 (S.D.N.Y. Dec. 29, 2023) (liability would lie where "Defendants cancelled identically sized and priced prior orders, as opposed to a specific Baiting Order," because "regardless of whether the 'newer' or 'older' orders were cancelled, Defendants . . . sent false pricing signals to the market through their placement of Baiting Orders").

[2] Merrill would seemingly now demand that the Court order Harrington to disaggregate that volume and explain exactly how the number was derived. Indeed, in a January 17, 2024 email, Merrill demanded that Harrington "explain[] the basis" of a specific statistic, including "how Harrington computed it." But that is not what the Court ordered.

[3] Merrill's barely veiled reference to a possible Rule 11 motion is not well taken. As Merrill well knows, it has not complied with the proper procedure under Rule 11 (which calls for a motion for sanctions *not to be presented* to the Court in the first instance). Anyway, any such motion would be meritless, and the proper vehicle for Merrill to contest whether the evidence supports its liability is a motion for summary judgment. *See Safe-Strap Co., Inc. v. Koala Corp.*, 270 F. Supp. 2d 407, 416 (S.D.N.Y. 2003) ("[A] Rule 11 motion for sanctions is not a proper substitute for a motion for summary judgment.").

Respectfully submitted,

HOLWELL SHUSTER & GOLDBERG LLP

By: /s/ *Greg Dubinsky*
Richard J. Holwell
Gregory Dubinsky
Andrew C. Indorf
Jonathon R. La Chapelle
Aditi Shah
425 Lexington Avenue
New York, NY 10017
Tel.: (646) 837-5151
rholwell@hsgllp.com
gdubinsky@hsgllp.com
aindorf@hsgllp.com
jlachapelle@hsgllp.com
ashah@hsgllp.com

WARSHAW BURSTEIN LLP
Alan M. Pollack
Felicia S. Ennis
Thomas Filardo
Leron Thumim
Matthew A. Marcucci
575 Lexington Avenue, 7th Floor
New York, New York 10022
Tel.: (212) 984-7700
apollack@wbny.com
fennis@wbny.com
tfilardo@wbny.com
lthumim@wbny.com
mmarcucci@wbny.com

CHRISTIAN ATTAR
James Wes Christian
Ardalan Attar
2302 Fannin, Suite 205
Houston, Texas 77002
Tel.: (713) 659-7617
jchristian@christianattarlaw.com
aattar@christianattarlaw.com