**DENTONS**

**Sandra D. Hauser**

sandra.hauser@dentons.com
D   +1 212-768-6802

Dentons US LLP
1221 Avenue of the Americas
New York, NY 10020-1089
United States
dentons.com

March 8, 2024
*VIA ECF*

The Honorable Lorna G. Schofield
United States District Court, Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *Harrington v. BofA Securities, Inc., et al.*, 21-cv-00761 Rule 37.2 Letter

Dear Judge Schofield:

This firm represents defendant CIBC World Markets, Inc. ("CIBC"), a Canadian-based broker dealer. CIBC respectfully requests that this Court enter a Protective Order declaring that CIBC need not "unmask" its data or document production, nor otherwise disclose identifying information about its customers. Specifically, Harrington is demanding that CIBC re-produce its document and data production in order to "unmask" the identity of all of its *Canadian* customers who participated independently in direct market access trading in Concordia stock, without any active participation of CIBC. A Protective Order is warranted because Harrington seeks sensitive and proprietary information about third parties that has no relevance to its claims, disclosure of which would violate Canadian privacy and confidentiality rules. Production—particularly without advance notice to the third parties whose interests are directly implicated here—would also needlessly put at risk CIBC's relationships with customers who access its direct market access tool for trading. Importantly, Harrington agreed to accept CIBC's masked production with customer *identifiers* that enable the parties to detect critical information for the case—specifically whether or not the alleged baiting orders and executing purchases were entered by the same customer (absent which there is decidedly no spoofing). They now attempt to renege on that enforceable discovery agreement, a move which this Court should not countenance.

> **JOINT STATEMENT**: The parties exchanged numerous correspondence regarding the above items, including recent letters on January 31, 2024, February 6, February 9, February 28, and March 1. Counsel for Harrington and CIBC have had multiple meet-and-confers to discuss the issue as well, including most recently a virtual meet-and-confer via Microsoft Teams on February 22, 2024 from 2:30pm to 3:52pm. The parties were unable to resolve their dispute regarding these items and are at an impasse regarding (i) Harrington's request that CIBC produce customer-identifying information, and (ii) CIBC's refusal to do so.[1]

Notably, Harrington sought unsuccessfully to obtain exactly this sensitive customer information, not only in this case (in which Your Honor denied the request, ECF No. 120), but in prior proceedings in Canada. In May 2016, Harrington asked the Investment Industry Regulatory Organization of Canada ("IIROC") to investigate whether there was manipulative orders, executions, and cancellations in Concordia trading. IIROC conducted a yearslong investigation, and did not find any evidence of manipulative trading. When Harrington refused to accept that answer, Harrington sought a "*Norwich* Order"[2] against IIROC in an Ontario Court "to obtain

---

[1] This language was proposed by Harrington's counsel via email to CIBC. CIBC made no changes.

[2] A "Norwich" order allows a party to obtain information from an innocent party to identify a wrongdoer and ascertain the extent of the wrongdoing in order for the party to bring proceedings or consider doing so against the wrongdoer. Norwich Pharmacal & Others c. Customs and Excise Commissioners, (1974) A.C. 133 (H.L.).

information about all the persons trading in Concordia securities." (*See* Ex. 1, December 31, 2018 Reasons for Decision in *Harrington Global, et al. v. IIROC*, Ontario Superior Court of Justice, p. 2.) The Ontario Court conducted an evidentiary hearing, including expert testimony on behalf of Harrington. Critically, the Court **denied** Harrington's request. In so doing, that Court held:

> Harrington cannot minimize the intrusion on the privacy interests of the investors, the clients of the investment dealers, that IIROC has refused to disclose … What Harrington is seeking is personal financial information about the activities of those shareholders and **that is a major intrusion on the privacy and confidentiality interests of those shareholders**.

(*Id*, p. 13 (emphasis added).) Harrington's demand to CIBC now is simply an attempted end-run to get the same information to which the Ontario Court determined it was not entitled.

Revealing the identity of CIBC's customers will not lead to discovery of relevant information, as this Court already ruled (*See* ECF No. 120). Harrington's claims have been reduced to the allegation that CIBC failed to meet its "gatekeeper" obligations by failure-to-monitor customer trading. Identification of CIBC's specific clients by name sheds no light whatsoever on the viability of those allegations. Furthermore, as this Court previously held, the statute of limitations has long since run on any claim Harrington could potentially assert against Defendants' customers, so this discovery is also futile, harassing, and "unduly burdensome." (ECF No. 120.)

Harrington has the information it needs: CIBC produced all orders and trades placed in Concordia stock for the relevant period. For customer trading across the entire relevant period, CIBC produced data that fully anonymized those fields that would reveal customer names or account numbers and other potentially customer identifying information. For customer trading in the fifteen minutes before and after the executing purchase in each alleged spoofing episode identified in the Second Amended Complaint ("SAC"), CIBC produced data masking each entity with a unique identifier. The masking allows Harrington to see whether, consistent with its spoofing allegations, the alleged baiting orders and executing purchases were entered by the same customer, or alternatively to see that they were entered by different customers, effectively ruling out spoofing. The anonymization and masking in no way hinders Harrington's ability to analyze CIBC's trading data—price, quantity, timestamp, and orderID remain available for every order and trade. CIBC also produced the alerts its surveillance software, SMARTS, issued on orders placed for Concordia stock on the days at issue in the SAC, regardless of whether they related to possible spoofing or not, again anonymizing its client's identifying information using the same masking applied to the trading data, allowing Harrington to match alerts to trades. Separately, after conducting extensive searches using all of Harrington's suggested search terms, CIBC produced all responsive information including two internal emails regarding its customer trading with identifying information redacted. One email related to an inquiry from CIBC's regulator, IIROC (likely triggered by Harrington's May 2016 request and which resulted in a no-manipulation finding), and the other related to possible spoofing CIBC detected in trading activity unrelated to Concordia (and irrelevant to this case), but captured by the search terms.

Moreover, Harrington agreed to accept masked data in October 2023. Harrington's last letter to this Court requesting an extension of the discovery schedule (ECF No. 186), represented that the focus of its remaining discovery was on Defendants' trade data and documents responsive to this Court's January 10, 2024 order. This was consistent with how the Parties had been operating over the prior weeks—Harrington "particularized its requests by, through the meet-and-confer process, describe[ed] with reasonable specificity the exact categories of requested documents…" (ECF No. 171), the parties engaged in numerous meet and confer sessions to discuss those

categories of documents, and CIBC produced its responsive documents, gathered in part by ***using each of the exact search terms Harrington requested***. At significant expense, CIBC gathered, anonymized, and produced this data to Harrington. And now, at this late stage of the case, Harrington now seeks to backout of that agreement and essentially start discovery anew.

Since obtaining this Court's extension and retaining new counsel, Harrington began a campaign of revisiting and reversing course on discovery inquiries the parties negotiated many months (or even years) ago to reach agreement on the scope of disclosures. In doing so, Harrington cancelled CIBC's corporate deposition just days before it was scheduled, where it could ask questions about CIBC's trade and order data as well as the "alerts" CIBC deemed to be false-positives from its trade surveillance software, and also inquire about CIBC's document production, all of which could resolve questions Harrington asserts its cannot answer without unmasked data. But Harrington has since refused to even discuss rescheduling that deposition. Instead, Harrington has issued repeated demands that Harrington agree to reveal its ***Canadian*** customers, their trading activity (and thus their trading strategy), and potentially subject them to costly and invasive third party discovery, as indicated by Harrington's March 1, 2024 letter to this Court (ECF No. 196).

Disclosure of CIBC's customers puts at risk its relationships, since they expect CIBC to maintain their privacy and highly sensitive proprietary trading strategies. The Canadian Personal Information Protection and Electronic Documents Act ("PIPEDA") sets rules for when Canadian private-sector organizations (like CIBC) can disclose personal information. Under PIPEDA, "Personal information shall not be used or disclosed for purposes other than those for which it was collected, **except with the consent of the individual** or as required by law." R.S.C., ch. 5 § 4.5 (2000) (Can.) (emphasis added). Courts have found that PIPEDA applies in United States' federal courts. *See AGV Sports Grp., Inc. v. Protus IP Sols., Inc.,* No. CIVARDB-08-3388, 2010 WL 1529195, at *2 (D. Md. Apr. 15, 2010). An order forcing disclosure of this information would have widespread implications to CIBC, including violations of PIPEDA, agreements made with customers to protect private information, and risk CIBC's reputation of safeguarding client information, for little to no benefit to Harrington. A protective order is warranted here to prevent Harrington's continued "injury, harassment or abuse of the court's processes." *Tailored Lighting, Inc. v. Osram Sylvania Prod., Inc.,* 236 F.R.D. 146, 147 (W.D.N.Y. 2006) (granting protective order to protect sensitive trade secret information).

Ultimately, Harrington's new demands and frustration regarding the limited number of responsive CIBC custodial documents (as indicated in its March 4, 2024 letter to this Court) is simply a reflection of the truth—there's "no there, there." There simply is no evidence of mass manipulation of the Concordia stock in 2016 to which Harrington contends CIBC turned a blind-eye or conspired with its customers to hide. The absence of responsive discovery is not a reflection of CIBC's discovery failures, but a reflection of the lack of merit of Harrington's claims. CIBC and IIROC did not flag any Concordia trading as manipulative in real time. A yearlong investigation conducted at Harrington's request IIROC "concluded that no market manipulation had occurred." (*See* Ex. 1, p. 7.) When Harrington refused to accept that answer, Harrington was again rebuffed when an Ontario Court determined that Harrington was not entitled to the exact information is now seeks because it would be "a major intrusion on the privacy and confidentiality" of CIBC's clients. (*Id.*, p. 13.) CIBC respectfully asks this Court to do the same here, and enter an Order declaring that CIBC need not reveal its client's identities.

**DENTONS**

**March 8, 2024**
Page 4

dentons.com

Sincerely,

*/s Sandra Hauser*

Sandra D. Hauser
Stephen Senderowitz
Timothy Storino
DENTONS US LLP
1221 Avenue of Americas
New York, New York 10020
Telephone: (212) 768-6700
Fax: (212) 768-6800

Attorneys for Defendant CIBC World Markets, Inc.

Plaintiff shall file a responsive letter, not to exceed three pages, by **March 13, 2024**. So Ordered.

Dated: March 8, 2024
       New York, New York

_____
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

126403712