# HOLWELL SHUSTER & GOLDBERG LLP

*425 Lexington Avenue*
*New York, New York 10017*

*Richard J. Holwell*
*(646) 837-5151 | rholwell@hsgllp.com*

March 12, 2024

**VIA ECF**
The Honorable Lorna G. Schofield
United States District Court for the Southern District of New York
500 Pearl Street, New York, NY 10007

    Re:    <u>Harrington Global Opportunity Fund, Ltd. v. BofA Securities, Inc.</u>, No. 21-CV-761

Dear Judge Schofield:

    We write on behalf of Plaintiff Harrington Global Opportunity Fund, Ltd. ("Harrington") in response to Defendant CIBC World Markets, Inc.'s ("CIBC") motion for a protective order. CIBC has refused to produce its full set of customer trade and order data—key discovery about the alleged spoofing scheme—thus prejudicing Harrington's ability to prove its case. Harrington respectfully requests that CIBC's motion be denied, and that the Court compel CIBC to produce all deanonymized trade and order data for the Relevant Period.[1] The deanonymized data are central, and CIBC falls far short of showing that "good cause" exists to bar production of key data that would be shielded from public disclosure under the Protective Order entered by the Court on April 12, 2022. *See Barbini v. First Niagara Bank, N.A.*, 331 F.R.D. 454, 459 (S.D.N.Y. 2019) ("Ordinarily, good cause [for a protective order] exists 'when a party shows that disclosure will result in a clearly defined, specific and serious injury.'"); Dkt. 111 at 2 (Protective Order covers "[s]ensitive, non-public … *client, or customer information*") (emphasis added).[2]

    CIBC has improperly decided that Harrington is entitled only to (1) anonymized identifiers for client orders in 15-minute windows of executing purchases identified in the SAC and (2) **<u>zero</u>** identifying information—including anonymized identifiers—for <u>all</u> remaining orders (the vast bulk). As such, CIBC asks the Court to let it conceal who was telling CIBC to do what in terms of trading Concordia stock. As discussed below, spoofers can use different but related entities and accounts to coordinate their spoofs. Thus, if CIBC prevails, Harrington will be unable to see CIBC's clients' order flow as CIBC saw it, and Harrington will be hamstrung in seeking to prove that Defendants "are primarily liable for following their customer[s'] instructions" to "disseminate and/or effect false and misleading Baiting Orders" and "Executing Orders" because Defendants "knew or recklessly ignored" that their customers' market activity was "part of a spoofing scheme." SAC ¶¶ 129, 137; *see* MTD Op., Dkt. 147, at 17 ("The SAC details a pattern of spoofing activity that strongly suggests Defendants shirked [their] duties."). The law spurns such a result, and CIBC's attempt to cut Harrington's claim at its knees by withholding key information runs aground on basic principles of discovery and would, if successful, manifestly prejudice Harrington. *See Societe Nationale Industrielle v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 540 n.25 (1987).

    Harrington does not seek this discovery without good reason. As is critical but Defendants disregard, spoofers—like other securities fraudsters—are likely to seek to evade ready detection by authorities. *Cf. SEC v. Bajic*, 2023 WL 6289953, at *5 (S.D.N.Y. Sept. 27, 2023) (Schofield, J.) (penalizing defendant who "conceal[ed] the identity of the party paying for the stock promotions, acting as a middleman"); Dkts. 190,

---

[1] Merrill informed Harrington on March 8 that it will produce deanonymized data only if the Court orders its production from CIBC. If the Court grants CIBC relief on its motion, Harrington respectfully requests that the Court reserve decision as to separate motion practice which may raise additional or separate issues.

[2] *See IPC Info Sys., LLC v. Odyssey Grp., Inc.*, 232 F.R.D. 206, 207 (S.D.N.Y. 2005) (rejecting argument that "disclosure of [a] customer list could result in economic harm" as protective order "adequately addresses [the party's] concerns").

{1661140.3 }

192 (trickery in Baiting Orders). As relevant here, spoofers can seek to evade detection by using different (but related) trading entities and accounts to spoof on Defendants' platforms. For example, Entity A can place Baiting Orders and Related Entity B can effect Executing Purchases. Without access to the deanonymized data, however, Harrington will be unable to evaluate the full universe of spoofing activity, and the market harm caused by clever spoofers using various entities or accounts will go unremedied. That would gut the principle that "Section 10(b) was designed as a catch-all clause to prevent fraudulent practices, including not just garden type variet[ies] of fraud but also unique form[s] of deception involving [n]ovel or atypical methods." *VanCook v. SEC*, 653 F.3d 130, 132, 138-39, 143 (2d Cir. 2011) (emphasis added; cleaned up); *cf. U.S. v. Russo*, 74 F.3d 1383, 1387, 1391 (2d Cir. 1996) ("market maker" "moved stock from account to account in order to create the appearance of market activity").

Recognizing the problem, CIBC's lawyers tried to stave off the issue by telling Harrington recently that "the masked data contains trading activity by two affiliated entities." CIBC conveniently left out what specific criteria it used to identify "affiliated entities" (nor did it speak to affiliations in the rest of the data). Regardless, the Federal Rules do not require Harrington to accept the say-so of opposing counsel or CIBC in lieu of discovery—either about which affiliations are relevant or which customers are affiliated. *See Jacob v. City of New York*, 2008 WL 2065706, at *1 (E.D.N.Y. May 13, 2008) (rejecting claim "that production is unnecessary because the main purpose for producing the memo books was the identification of all the officers involved … who have now all been identified," as "no party is required to rely on the say-so of opposing counsel, even on the question of identification, to ascertain critical issues.").

It is imperative that Harrington have deanonymized data so it can prove up all spoofing activity, including spoofing coordinated via related entities and accounts.[3] That scenario is no idle speculation. In preparing this opposition, Harrington did a preliminary analysis on the tiny fraction of data CIBC produced with any identifiers. Even as to that limited set, the analysis shows that, in addition to the two "affiliated entities" CIBC noted, there are ***several CIBC customers with different anonymized "identifiers" who on many occasions initiated new orders in the same millisecond***. For example, two particular CIBC customers initiated new orders in the same millisecond on over 14,000 occasions for the same or similar amounts at slightly different prices on either side. This involves a degree of synchronicity that precludes random chance. CIBC customers otherwise rarely placed new orders in the same millisecond, and when this did occur, it occurred 3 times on median. What is more, CIBC produced a document indicating that customer trading in Concordia generated thousands of alerts triggered by potentially problematic trading activity—including a number flagged for what CIBC deemed possible spoofing from a single client (who CIBC refuses to identify).[4] CIBC says it "deemed" these alerts "false-positives," Mot. 3, but obviously Harrington is entitled to test this claim itself and reference those customers with the full data.

Moreover, manipulative intent can be inferred from conduct, *see, e.g.*, *SEC v. Masri*, 523 F. Supp. 2d 361, 369 (S.D.N.Y. 2007) (noting that "timing, size, or repetition of a transaction" can "give rise to an inference of manipulative intent"), so evidence of efforts to conceal close-in-time baiting and executing orders using related entities or accounts would certainly suggest the orders were in furtherance of an illicit scheme. *United States v. Davis*, 690 F.3d 127, 133 (2d Cir. 2012) ("evidence ... that [a party] concealed [its] involvement .... supports an inference of [its] knowledge" of wrongfulness). Harrington must be able to analyze the complete picture of client activity as CIBC itself saw it—not through a glass, darkly, as CIBC would have it. *Cf.* Order, *Set Capital LLC v. Credit Suisse Grp. AG*, No. 18-2268 (S.D.N.Y. Mar. 10, 2023) (granting motion to compel "production of the identities of [non-party] market participants" engaged in trading of futures); *Allianz Global Investors GmbH v. Bank of Am. Corp.*, 2021 WL 211544, at *2 (S.D.N.Y.

---

[3] The full data from CIBC is also critical so it can be linked to data obtained from third parties involved in CIBC's U.S. trading. CIBC has confirmed that it executes through U.S. brokers for U.S. markets.

[4] Of the very few emails sent by a human that CIBC produced, one involves a regulatory inquiry into a customer's trading in Concordia, and, in another, a customer asserts to CIBC that it did not *intentionally* spoof, but flagged its own activity as concerning. CIBC redacted both—making it impossible to cross-reference the emails with the customers' trading activity.

Jan. 21, 2021) (Schofield, J.) ("relevance, for the purposes of discovery, is an extremely broad concept"; ordering bank to produce discovery about employee's "work as an FX trader" over objection that he traded for independent entity, as discovery "could bear on the claims").

Given all this, CIBC has not come close to showing (as is required for a protective order) that disclosure will result in a "clearly defined and serious injury," *Allen v. City of New York*, 420 F. Supp. 2d 295, 302 (S.D.N.Y. 2006), let alone one that "outweighs its likely benefit," *Mitchell v. Fishbein*, 227 F.R.D. 239, 253 (S.DN.Y. 2005). CIBC's objections are easily disposed. While Harrington provisionally agreed in good faith to accept anonymized data around certain windows in a first phase, it reserved rights to seek deanonymized data for the Relevant Period. Ex. 1 at 2 (anonymized data "a reasonable first step" but "Plaintiff reserves all rights to later seek production of the full discovery," "including the deanonymized names"). CIBC's long-delayed production fell short of what was agreed and made clear that anonymization is unworkable. The Court should reject CIBC's weaponization of Harrington's good-faith efforts.[5]

Next, CIBC mischaracterizes why Harrington contends the data are relevant and wrongly invokes the Court's pre-SAC order denying "discovery of Defendants' customers' trading activity." Dkt. 120 at 4. This is meritless. Before the SAC was filed, the Court noted that Harrington had not "articulated any plausible theory" under which Defendants were liable for customers' trading, so customer trading was not relevant. *Id.* After the SAC, the Court held that Harrington *did* "allege[] legal duties on the part of broker-dealers serving as 'gate keepers,'" Dkt. 147 at 16–17, and data are being produced. Thus, the reasoning of the Court's prior order (and its decision denying dismissal) militates for production of the full data set.

CIBC also asserts that producing deanonymized data would violate Canada's Personal Information Protection and Electronic Documents Act ("PIPEDA"). That is baseless. As CIBC misleadingly omits, PIPEDA expressly permits disclosure without knowledge or consent where "required to comply with ... an order made by a court ... with jurisdiction to compel the production." R.S.C., ch. 5 § 7(3)(c) (2000) (Can.). Thus, "PIPEDA provides no grounds for denying [a] motion to compel." *Dennison v. Air Canada*, 2010 WL 11699778, at *2 (D. Ore. Oct. 13, 2010).[6] Again, the Protective Order covers "customer information," which includes that "considered personally identifiable … under any applicable law." Dkt. 111 at 2.

The full data are at the center of this case, and CIBC neither shows burden nor any harm that would ensue from disclosure. Instead, CIBC insists full discovery should be denied because the claims "lack [] merit." Mot. 3. This is a remarkable claim by a defendant seeking to withhold key discovery. *See Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co.*, 1993 WL 437767, at *3 (S.D.N.Y. Oct. 23, 1993) (rejecting argument that "discovery … should be denied because [the] claim is without basis," as "a discovery motion is not the proper forum for deciding the merits"). Anyway, CIBC is wrong, as the many alerts and other evidence evince. Harrington respectfully requests the Court order CIBC to produce deanonymized data and identify the customers in the e-mails CIBC_002965 and CIBC_003801 and the SMARTS alerts.

---

[5] While Harrington has diligently pursued production of the deanonymized data, CIBC has engaged in gamesmanship. Harrington wrote on February 27 and asked CIBC to confirm an impasse by the next day, including as to this dispute. CIBC did not respond. On March 5, Harrington asked CIBC to confirm solely an impasse on the deanonymized data. CIBC waited until 10:40pm on March 7, when it abruptly confirmed an impasse. It filed the instant motion early next morning, using Harrington's joint statement. CIBC's unseemly gambit—go silent while it raced to file first—shows Harrington's good-faith efforts have been in vain. As for CIBC's claim that it has been diligent with custodial productions, that is not in issue here and is, besides, untrue.

[6] CIBC's reference to prior proceedings before the Investment Industry Regulatory Organization of Canada ("IIROC") and the Ontario Superior Court are unavailing. Both proceedings involved different legal regimes, records, and procedural postures. Harrington sought pre-action discovery (rarely granted in Canada) from IIROC. Yet because Canadian law requires that there be "some connection or relationship between the target of the Order and the wrongdoer or the wrongdoing"—and because IIROC was the regulator—the court denied the request, while "disagree[ing] … that Harrington does not have a *bona fide* claim … against a wrongdoer." Dkt. 203-1 at 10–11. None of this bears on Harrington's entitlement to discovery in U.S. court in this case.

Respectfully submitted,

HOLWELL SHUSTER & GOLDBERG LLP

By: /s/ *Richard J. Holwell*
Richard J. Holwell
Gregory Dubinsky
Andrew C. Indorf
Aditi Shah
425 Lexington Avenue
New York, NY 10017
Tel.: (646) 837-5151
rholwell@hsgllp.com
gdubinsky@hsgllp.com
aindorf@hsgllp.com
ashah@hsgllp.com

WARSHAW BURSTEIN LLP
Alan M. Pollack
Felicia S. Ennis
Thomas Filardo
Leron Thumim
Matthew A. Marcucci
575 Lexington Avenue, 7th Floor
New York, New York 10022
Tel.: (212) 984-7700
apollack@wbny.com
fennis@wbny.com
tfilardo@wbny.com
lthumim@wbny.com
mmarcucci@wbny.com

CHRISTIAN ATTAR
James Wes Christian
Ardalan Attar
2302 Fannin, Suite 205
Houston, Texas 77002
Tel.: (713) 659-7617
jchristian@christianattarlaw.com
aattar@christianattarlaw.com