# HOLWELL SHUSTER & GOLDBERG LLP

*425 Lexington Avenue*
*New York, New York 10017*
*Tel: (646) 837-5151*
*www.hsgllp.com*

*Gregory J. Dubinsky*
*(646) 837-5151*
*gdubinsky@hsgllp.com*

**VIA ECF**                                                                                          May 16, 2024

The Honorable Lorna G. Schofield
United States District Court for the Southern District of New York
500 Pearl Street, New York, NY 10007

Re:    *Harrington Global Opportunity Fund, Ltd. v. BofA Securities, Inc.*, No. 21-CV-761

Dear Judge Schofield:

Pursuant to Rule I.B.1 of Your Honor's Individual Rules and Procedures, we write on behalf of Plaintiff Harrington Global Opportunity Fund, Limited ("Harrington") to respectfully request that the Court compel Merrill to produce data sufficient to show whether orders that Merrill placed, on its own behalf or for clients, were marked visible or hidden to other market participants, such as and including whether they were "iceberg orders." This basic information is lacking from the data provided by Merrill, and it is relevant to any spoofing analysis. Merrill has asserted that Harrington's inquiry for this data is "a new request" to which Merrill need not respond and has improperly refused to assert or specify any other objection or even state whether it is withholding this data. Merrill's claim that this is a "new request" is utterly meritless. Harrington requested in 2022 that Merrill provide "[a]ll Documents and Communications concerning Merrill's trading and order activity in Concordia's shares"—to which Merrill has responded by providing client order and trade data—and its requests specifically instructed Merrill to provide "trading data" with "the following data fields . . . (j) any flags or order type settings that were set on the order (e.g., ***visibility*** . . . )."[1] Ex. A at 5 (emphasis added), Ex. B at 3.

Hidden or non-visible orders are those that traders can have "hidden from other participants than the participant entering it." NASDAQ, *Efficient Execution of Large Orders Directly in Central Order Book* ("NASDAQ, *Efficient Execution*")[2]; *see also* NASDAQ, *Order Types and Modifiers* ("Non-Display[:] Orders are hidden from the marketplace.").[3] "[F]or the NASDAQ in the period 2008-2013 the average volume for hidden orders was 13%," and "these numbers have only risen" since 2013. Martins Lenczewski, *Hidden and Fast Liquidity: Hidden Orders and High-Frequency Trading*, 16 Fin. Inter. Q. 27, 29 (2020).[4] As the Second Circuit has explained, one way in which an order can be hidden is to make it "[a]n iceberg order," which "entails placing a large

---

[1] JOINT STATEMENT:  The parties met and conferred on May 10 by videoconference for an hour but were unable to resolve their dispute regarding Harrington's May 7 request that Merrill produce additional data showing whether each client order was, in Harrington's words, "instructed to be hidden or displayed" when sent to an exchange or other venue.  The parties do not agree on whether this constitutes a new request to which Merrill need not respond.

[2] *Available at* https://www.nasdaq.com/solutions/large-in-scale#:~:text=Non%2Ddisplayed%20Limit%20Orders%20are,Orders%20at%20the%20same%20price (last visited May 16, 2024).

[3] *Available at* https://www.nasdaqtrader.com/content/productsservices/trading/ordertypesg.pdf (last visited May 16, 2024).

[4] *Available at* https://www.econstor.eu/bitstream/10419/266836/1/1100.pdf (last visited May 16, 2024).

order but allowing it to become visible to the market only in incremental portions." *Gamma Traders - I LLC v. Merrill Lynch Commodities, Inc.*, 41 F.4th 71, 75 (2d Cir. 2022).

Harrington has identified at least ***6,000 Merrill orders*** in Concordia during the Relevant Period sent to NASDAQ—a public exchange—that were marked to be hidden from other market participants. *See* Ex. C (red highlight in PDF version of exemplar matched order between Merrill data and NASDAQ data).

This data as to all Merrill orders (wherever routed) is relevant to this case about spoofing. As the Court knows, a spoofer seeks to induce other market participants to react to baiting orders, which "create the illusion of market interest in a security at an artificial price in order to cause other market participants to follow either the selling or buying trend created by the Baiting Orders." Second Amended Complaint ("SAC"), Dkt. 133 ¶ 40. As is obvious from the fact that spoofing is a form of manipulation intended to deceive other market participants, it is relevant to understand which orders were visible or hidden to other market participants, including which were iceberg orders, in assessing whether the data evince an intent to spoof. *See Gamma Traders*, 41 F.4th at 75 (explaining that spoofers can use hidden and visible orders to effectuate their schemes: "'[S]poofing' [is] a fraudulent practice in which the spoofing traders send false supply and demand signals to the market by placing orders to buy or sell that they never intend to execute. . . . The spoofing trader . . . hopes that other traders, who can see the number of orders available in the market, will respond to the perceived uptick in demand for gold by temporarily pushing the actual market price higher. . . . In addition to publicly placing orders she does *not* intend to execute, a spoofing trader can also conceal her actual intention—to trade in the direction opposite her spoofing—by placing 'iceberg' orders.")[5]; NASDAQ, *Efficient Execution* ("Non-displayed orders remain hidden up until execution. By keeping your trading interest confidential, market impact is minimized[.]").

In its correspondence and discussion with Harrington, Merrill has not disputed any of the foregoing. Concerningly, Merrill refused to engage with Harrington at all regarding the relevance or proportionality of the data or the burden involved in producing it, let alone to state whether Merrill was withholding responsive documents. Even after Harrington noted in a meet-and-confer that it would be far more efficient for the parties to discuss any concerns Merrill had on burden, relevance, or other grounds ***before*** seeking the Court's intervention as to this data—rather than for the first time in motion practice before the Court—counsel for Merrill categorically refused to assert, let alone explain, any objections beyond that the inquiry was "a new request." Merrill's refusal to articulate its objections and their bases is not consistent with its discovery obligations. *See Wang v. Shanghai You Garden, Inc.*, 2023 WL 5670772, at *5 (E.D.N.Y. Mar. 31, 2023) (defendants "were required to meet and confer with plaintiff in an effort to . . . at the very least explain the nature and extent of the burden"); *Michael Kors, L.L.C. v. Su Yan Ye*, 2019 WL 1517552, at *3 (S.D.N.Y. Apr. 8, 2019) ("Rule 26(C)(1) requires parties to meet and confer in good faith in an effort to resolve disputes without the need for court action. Similarly, Local Civil Rule 26.4(a) states that 'counsel are expected to cooperate with each other, consistent with the interests of their clients, in all phases of the discovery process.'"). By contrast, at Merrill's request,

---

[5] *Id.* ("Thus, a trader wishing to sell a commodity might attempt to spoof the market by placing many buy orders she does not intend to execute—falsely signaling high demand for the commodity and thus driving up the price—while simultaneously placing sell orders above market price using the iceberg technique to prevent the downward pricing pressure that would otherwise be generated by revealing a large sell order to other traders."). Of course, the same logic holds for spoofs that seek to artificially drive the price downwards.

Harrington provided Merrill the exemplar NASDAQ order even after Merrill made clear it would not investigate this data deficiency. *See* Exs. C, D at 2.

As noted above, Merrill's position that this is a "new request" rather than a deficiency in Merrill's data production is meritless. Nor has Merrill contested the relevance of the data or asserted any burden, let alone a specific and weighty burden, in searching for and producing it. The Court should order Merrill to produce data sufficient to show whether Merrill's orders, including orders for clients, to purchase or sell Concordia during the Relevant Period were visible or hidden, including whether they were iceberg orders.

Respectfully submitted,

*/s/ Gregory J. Dubinsky*
Gregory J. Dubinsky