# HOLWELL SHUSTER & GOLDBERG LLP

*425 Lexington Avenue*
*New York, New York 10017*

*Richard J. Holwell*
*(646) 837-5152 • rholwell@hsgllp.com*

**VIA ECF**                                                                                          May 16, 2024

The Honorable Lorna G. Schofield
United States District Court for the Southern District of New York
500 Pearl Street, New York, NY 10007

    Re:    *Harrington Global Opportunity Fund, Ltd. v. BofA Securities, Inc.*, No. 21-CV-761

Dear Judge Schofield:

    Pursuant to Rules I.B.1, I.B.3, and III.C.3 of Your Honor's Individual Rules and Procedures, we write on behalf of Plaintiff Harrington to respectfully request (1) an extension of the June 10, 2024, fact discovery deadline to 4 weeks after completion of Defendants' and third parties' data and document productions and resolution of the parties' document discovery disputes—by agreement or as determined by the Court—and (2) referral of discovery disputes going forward to Magistrate Judge Cott. Harrington is not seeking to extend discovery a day longer than needed; to facilitate the determinations of whether productions are complete and whether remaining disputes have been resolved, Harrington respectfully requests that the Court set a case management conference for the week of June 10 or June 17.[1]

    **I.**    **Extension of Time to Complete Fact Discovery**

    Harrington is mindful of the Court's admonition that further discovery-related extensions will not be granted absent extraordinary circumstances. Dkt. 226. Harrington makes this request—which ties the fact discovery deadline to the completion of Defendants' data and document productions—so that all parties are incentivized to comply with their obligations, rather than delaying productions in the hope of "running out the clock" on the time needed for depositions. Harrington respectfully submits that this approach will best promote the goal of bringing discovery expeditiously to a close without the need for further extensions. But an extension of the current deadline is necessary—the discovery remaining to be completed does not involve peripheral issues, and instead is fundamental to the claims in this case.

    **Defendants' Trade and Order Data.** With less than a month remaining before the current fact discovery deadline, Defendants still have not produced complete and correct trade and order data.

    *Merrill.* As discussed in Harrington's April 17 and earlier letter motions, Merrill reported for the first time in January that the vast majority of trade and order data it had yet to produce was held by a third party, and revealed on February 28 that its "customers went directly to the marketplace through the third party." Harrington promptly analyzed the data as it was produced and informed Merrill of an initial set of deficiencies in a letter on February 20, as well as additional deficiencies on March 25. Notably, the order ID numbers in Merrill's data were improperly truncated, such that rather than containing the

---

[1] This Court previously extended the deadline for the close of fact discovery (1) on December 18, 2023 (on the parties' joint motion); (2) on February 1, 2024 (on Harrington's motion); and (3) on April 19, 2019 (on Harrington's motion).

JOINT STATEMENT: Harrington seeks (1) an extension of the fact discovery deadline to 4 weeks after Defendants' completion of data and document productions and resolution of outstanding discovery issues, as agreed upon by the parties or determined by Judge Schofield or Magistrate Judge Cott, and (2) referral of discovery disputes in this case to Judge Cott going forward.  The parties met and conferred via Zoom for approximately 1 hour on May 14 on these two topics and on the number of fact witness depositions.  Defendants did not offer any concessions on these two topics. Defendants intend to submit a short response to Harrington's application.

full and accurate order IDs the data reflected erroneous scientific notations cutting off the full numbers. Merrill initially suggested that this was simply how the data were maintained at the third-party vendor and only admitted there was an actual "issue" nearly a month later, on April 22. As Harrington has analyzed the data, it has discovered and raised additional concerns, including with hidden/displayed orders, missing values for pegged orders, and the fact that Merrill's data are seemingly missing 1.4 million account IDs, an issue Merrill has not even agreed to investigate. As of today, Harrington is still waiting for Merrill to produce—as Merrill said it would—the third-party data with the truncated order IDs fixed. And as reflected in today's separate filing, Dkt. 243, Harrington has been forced to move to compel production of the hidden/displayed order information.

**TD.** For the first time TD revealed last Friday that it has no execution timestamps (i.e., the times trades were executed) for its April 26 production of TD Waterhouse data—the overwhelming majority of TD's activity in the United States. After many weeks of careful negotiations, TD and Harrington agreed to a compromise in which Harrington would receive only execution data (i.e., not order data) for purchases in Concordia routed by TD clients through TD Waterhouse. This data is key to the allegations of a cross-border spoofing scheme (in which baiting orders may be sent in Canada and purchases effected in the United States). TD did not disclose that it would not produce any times for these trades—despite lengthy discussions and the instructions in Harrington's RFPs calling for timestamps—and revealed only on May 10 that TD has no timestamps. The lack of timestamps within this data seriously impedes Harrington's ability to analyze spoofing activity. Harrington must now—with just weeks remaining in fact discovery—pursue data containing execution times from third-party brokers to see if it can remedy this serious deficiency. That process will take weeks, even assuming third parties voluntarily comply. In the meantime, Harrington is requesting that TD answer questions relevant to its discharge of its preservation obligations, given IIROC rules that require retention of trade data for seven years. Further, Harrington has identified concerns with TD order data, such as "amend" order events seemingly lacking key information, which Harrington will discuss with TD.

**CIBC.** Despite repeated requests, CIBC has yet to produce documents or data concerning its correspondent clearing transfers in Concordia. Weeks have passed since Harrington followed up on April 8 regarding these materials, the parties have met-and-conferred several times, and Harrington has refrained from moving to compel based on CIBC's repeated representations that information (including an affidavit) was forthcoming. But CIBC has produced none of the materials and has repeatedly evaded Harrington's question about whether CIBC could see its client's underlying execution activity at any time during or after a trading day during the Relevant Period. Instead, CIBC has said only that it did not receive that information "as part of the [end-of-day] position transfers," Ex. A at 17-18, or "as part of the position transfer clearing process," *id.* at 14, and that "trade execution data underlying the positions transferred by [the client]" do not "exist" today, *id.* at 5. When asked the question again during a meet and confer today, CIBC's counsel immediately changed the subject and would not discuss it further. *Id.* at 1. A straightforward answer and production of the records that do exist is important, given that this client generated over 2,000 spoofing alerts at CIBC. Harrington expects to move to compel.

**Discovery from Defendants' Clients.** Nearly two months ago, the Court directed Defendants to produce deanonymized client trading data for certain trades. *See* Dkts. 207, 210. Defendants finally began to disclose the deanonymized identities of their clients only last week.[2] After disclosure of the identities, Harrington promptly began serving subpoenas on certain of Defendants' clients on May 9 to obtain evidence related to spoofing. But as explained in Harrington's May 15 letter seeking leave to use

---

[2] CIBC revealed its client identities on May 5, Merrill revealed them on May 8, and TD revealed them on May 10, but delayed in providing the full information requested until May 15.

alternative methods of service, most of the clients Harrington has attempted to serve either are not present or did not answer at their registered addresses. Even setting aside service challenges, it will be at least several weeks before documents are produced by clients and depositions can be conducted. Harrington met and conferred with one client on May 15, who requested two weeks to investigate whether it has responsive materials and indicated it might object to portions of the subpoena. Harrington served this entity within one day of learning its name, but a reasonable extension is needed to give Harrington a meaningful opportunity to obtain discovery from this entity and Defendants' other clients.

**Client Communications.** Communications with or about Defendants' clients are highly relevant in this action alleging Defendants are liable for client spoofing, including on the issue of scienter. Pursuant to today's Order, Dkt. 237, Harrington will promptly submit to Merrill revised proposed search terms. Negotiations are ongoing with TD and CIBC. Once agreement is reached, Defendants will need to search ESI, review documents, and produce responsive materials. Harrington will need to review the documents, and per the Court's Order, "[s]hould review . . . indicate that review of additional custodians' data or different terms would be fruitful and not overly burdensome, Plaintiff may seek leave of the Court to conduct additional review." *Id.* A reasonable amount of time is needed for this process.

**Depositions of Defendant and Third-Party Witnesses.** Once Harrington has received and reviewed the complete document productions of Defendants and their clients, it will need to complete depositions. Because Defendants comprise five different Merrill, TD, and CIBC entities, five of the ten depositions permitted by the Federal Rules will be taken up by Rule 30(b)(6) depositions, and Harrington has informed Defendants that it expects to need more than ten total depositions to depose percipient fact witnesses as well certain clients identified as potentially involved in spoofing. On May 14, the parties met and conferred regarding Harrington's request. It remains to be seen whether Defendants will agree to Harrington's proposal, but Harrington respectfully submits that 4 weeks following completion of data and document productions is the minimum needed to conduct the needed depositions.

Given Defendants' still-ongoing data and document productions, the delay resulting from Defendants' discovery conduct to date—with Merrill refusing even to share contact information needed to serve subpoenas on its clients—and the importance of the remaining discovery to this case, Harrington respectfully submits that it would be counterproductive to simply push the fact discovery deadline out by a set number of weeks. A fact discovery deadline set at 4 weeks after the completion of Defendants' and third parties' data and document productions—whether that date is established by agreement of the parties or a decision of this Court or Magistrate Judge Cott—will ensure that all parties are motivated to complete fact discovery without further delay, so that this case can move forward. In furtherance of that end, Harrington also respectfully requests a case management conference for the week of June 10 or 17.

## II.     Referral of Discovery Disputes to Magistrate Judge Cott

As demonstrated by the examples of ongoing issues set forth above, as well as previous discovery disputes brought to the Court's attention, discovery in this case is both complex and hotly contested. Harrington will continue to endeavor to reach appropriate compromises with Defendants whenever possible, but further disputes are likely, including about several client subpoenas. Harrington respectfully submits that referral of all discovery disputes going forward to Magistrate Judge Cott would be helpful to the parties and would avoid burdening the Court as the parties complete the fact discovery process.

Respectfully submitted,

*/s/ Richard J. Holwell*
Richard J. Holwell