**Defendants shall respond no later than May 22, 2024.**

So Ordered.

Dated: May 20, 2024
New York, New York

*Lorna G. Schofield*
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

**ALAN M. POLLACK**
PARTNER

DIRECT DIAL: 212-984-7794
EMAIL: apollack@wbny.com

May 16, 2024

**VIA ECF**
The Honorable Lorna G. Schofield
United States District Court for the Southern District of New York
500 Pearl Street, New York, NY 10007

    Re:    *Harrington Global Opportunity Fund, Ltd. v. BofA Securities, Inc.*, No. 21-CV-761

Dear Judge Schofield:

    We write on behalf of Plaintiff Harrington Global Opportunity Fund, Ltd. ("Harrington") to respectfully request that the Court compel Merrill to produce critical compliance documents highly relevant to Merrill's monitoring of customer trading—to the extent they relate to spoofing or Concordia—as required by the Court's January 10 Order (Dkt. 177) and Harrington's Requests for Production ("RFP") 1, 17, and 19. Ex. A. Specifically, these documents include policies, manuals, and/or procedures regarding the adequacy of Merrill's monitoring of customer and proprietary trading during the Relevant Period. Despite multiple written requests and meet-and-confer sessions over the course of months following the Court's January 10 Order, Merrill refuses to produce responsive and highly relevant documents that (i) consist of DEA/DMA policies, manuals, procedures, and/or related documents that relate to direct-market trading access that Merrill offered its customers; and (ii) are specifically referenced—or incorporated by reference—in other responsive, relevant Merrill compliance policies and/or procedures that Merrill has only recently produced. Rather than simply produce the documents as required by the Court's Order and Harrington's RFPs, Merrill is engaging in gamesmanship and obstruction. On the one hand, Merrill is effectively holding these documents ransom by refusing to produce them unless Harrington agrees to Merrill's unilateral and unjustified attempt to limit Harrington's rights.[1] On the other hand, Merrill is taking the untenable position that Harrington is somehow making a "new request," while improperly hiding behind broad general objections to RPF 17, which predated the Court's Order and Merrill's production of relevant documents responsive to that RFP.[2] Indeed, in a recent meet-and-confer on April 26, Merrill flatly *refused to take any position* regarding whether it had *ever* produced documents responsive to RFP 17.

---

[1] JOINT STATEMENT: Harrington seeks to compel Merrill to produce documents responsive to Harrington's request in a March 26, 2024 letter for Merrill DEA/DMA policies, manuals, or procedures that relate to direct-market access that Merrill offers to its customers. The parties met and conferred on this issue via videoconference on April 3, 2024, for over an hour, as well as on April 22 and April 25. Merrill has offered to produce the form agreement it used for direct-market access customers in the U.S. during the Relevant Period, the form agreement it used for direct-market access customers in Canada during the Relevant Period, and the training manual Merrill provided to direct-market access customers in Canada (having been unable to find the 2016 manual for the U.S.) in satisfaction of Harrington's request. Harrington offered to take the materials Merrill proposed without prejudice to Harrington's rights to seek additional documents. The parties were unable to come to an agreement.

[2] JOINT STATEMENT: Harrington seeks to compel Merrill to produce the following 2016 documents referenced in other documents that Merrill produced on April 10, 2024 (specifically, the Algorithms Governance Policy and the Global Electronic Trading Systems Development Policy): (1) "Global Markets Trading Algorithm Controls Standard"; (2) "Market Access Rule – Fixed Income and Global Equities Policy"; (3) "Enterprise Model Risk Management Policy"; (4) all Merrill policies and procedures, other than (2) or (3) above, that are relevant to Merrill's management of "the risks

{1683040.1 }

## I. Merrill's Refusal to Produce DEA/DMA Policies, Manuals, Procedures, and Documents

Although every other Defendant has long since located and produced documents relating to their monitoring of customer trading via their Direct Market Access ("DMA") and Direct Electronic Access ("DEA") "pipes"—through which clients placed orders—Merrill has failed to do so. Harrington needs these documents in order to assess the extent to which Merrill "shirked" its duties to "ensure that the customers' order flow . . . is in compliance with all applicable rules, regulations and laws," and "detect and prevent manipulative or fraudulent trading." Opinion and Order Denying Motion to Dismiss [Dkt. 147] at 16-17.

Following Harrington's identification of this deficiency in Merrill's production, the parties met and conferred via videoconference on April 3, 2024 for over an hour. At that time, Merrill asked *Harrington* to provide specific references to Merrill's various offerings related to customer trading. After Harrington subsequently did so,[3] Merrill still failed to produce the required documents, and the parties again met-and-conferred for over an hour (on April 22, 2024), during which Merrill stated its "belief" that it was "unclear" what offerings Harrington was referring to despite Harrington providing the citation to such offerings. In a further attempt to justify its refusal to search for documents relating to Merrill's monitoring of customer trading via its DEA and DMA "pipes," Merrill then went on to take the untenable position that this highly relevant information is somehow not actually responsive to Harrington's RFPs, while failing to address the Court's January 10 Order (Dkt. 177). Indeed, RFPs 1,17, and 19 respectively seek:

- "[a]ll Documents and Communications concerning Merrill's trading and order activity in Concordia's shares on . . . any [] trading venue;"
- "[c]ompliance and procedure manuals including but not limited to Merrill's policies, procedures, and compliance measures in connection with algorithmic trading, . . . and spoofing;" and
- "all electronic communications . . . and all other communications covered under SEC Rule 17a-4 and FINRA rule 4511(c) concerning any of the claims or defenses asserted in this action."

As such, the policies/manuals/procedures (and related documents and communications) regarding the direct access (DEA/DMA) that Merrill provided its clients to trade – to the extent such information relates to spoofing or Concordia – are both highly relevant and directly responsive to Harrington's RFPs, not to mention required by the Court's January 10 Order.

Merrill has taken these positions in an apparent attempt to improperly limit its obligations. Merrill's offered "compromise" to produce (i) *one* form agreement used by DMA customers in each of the U.S. and Canada; and (ii) *one* training manual Merrill provided to customers in Canada regarding a "range of topics" for DMA customers, *is only on the condition that production of same would fully satisfy this request*. While Harrington is entitled to an unconditional production of the documents which Merrill has now identified, and, moreover, all policies, manuals, and procedures (and related documents and communications) regarding Merrill's multiple trading offerings to its customers, Harrington considered this proposal and, in good faith, suggested a counterproposal during the subsequent April 25 meet-and-confer (and as later confirmed via email) that it would accept Merrill's proposal, "[w]ithout prejudice to any other of Harrington's requests for manuals, policies,

---

associated with the use of Algorithms"; (5) "Global Electronic Trading Market Access Policy"; (6) "Global Records Management Policy"; and (7) "Global Compliance Monitoring and Testing Policy." After the parties exchanged correspondence, the parties met and conferred via videoconference on April 26, 2024, for 30 minutes and did not reach any agreement on production of these documents. The parties disagree about whether Harrington is entitled to demand production of these documents at this time. Due to the parties' divergence in positions, negotiations were not fruitful.

[3] Harrington referred Merrill to a document in Merrill's production: MERRILL_03410 (specifically cell AD9).

{1683040.1}  2

and procedures related to customer trading, including without limitation," with the caveat that Harrington reserves the right to request any other documents that may be referred to in the agreement or training manual Merrill is prepared to produce." Via email on May 2, however, Merrill indicated that it would "not accept Harrington's caveat" and instead reiterated that it would only produce "the DMA form agreements and training manual in satisfaction of Harrington's request for 'DEA/DMA policies, manuals, or procedures that relate to direct-market access that Merrill offers its customers.'" (Emphasis added.) In other words, Merrill is improperly refusing to produce plainly relevant documents unless Harrington agrees to give up its right to follow-up on potential further Merrill deficiencies – *i.e.*, responsive documents that may be referenced in the documents Merrill is admittedly withholding. Moreover, Merrill has not said if its search is complete or if any other documents were uncovered (or otherwise referenced in the documents it now withholds).

## II. Merrill's Refusal to Produce Certain Compliance Policies and Procedures

Merrill fares no better with its argument that it need not comply with the Court's January 10 Order because Harrington's request for compliance documents referenced in other documents Merrill has recently produced somehow comprise "a new request" to which Merrill need not respond. To be clear, this is the only objection to producing the documents that Merrill has raised and, worse, Merrill is refusing to even confirm whether it has located but is withholding the requested documents. Merrill's claim that Harrington is making "a new request" is utterly meritless. Harrington's "request" is for Merrill to correct deficiencies in its production and produce those documents responsive to RFP 17 and this Court's January 10 Order.

By way of background, in its March 26, 2024 letter to Merrill, Harrington requested "Merrill's Trading Algorithm Governance Policy and all documents associated therewith" and the "Electronic Systems and Controls Policy" which were referenced in other documents that Merrill produced. At the hour-long April 3, 2024 meet-and-confer, Merrill indicated it would look for these documents. On April 10, 2024, Merrill produced copies of the Algorithms Governance Policy and the Global Electronic Trading Systems Development Policy. A review of these documents made clear that, *on their face, they are to be read in conjunction with other policies/documents which Merrill failed to produce*. (*See* April 23, 2024 letter to Merrill requesting referenced documents, Ex. B, at ¶¶ 2-5).

Following this lengthy saga, the parties held another meet and confer on April 26, 2024, during which Merrill largely repeated its rote "response" that Merrill's "objections" to Harrington's RFP No. 17 obviate Merrill's obligation to produce documents – this despite (i) the Court's January 10 Order to produce the types of documents at issues to the extent they relate to "spoofing or Concordia", (ii) Merrill's written statement of April 26, 2024 that "Merrill does not dispute its obligation to search for documents describing the parameters of its spoofing surveillance system in 2016"; (iii) Merrill's December 4, 2023 email agreement that "[t]he Merrill Defendants will produce . . . [u]ser manuals for trading surveillance systems in place, if any, during the Relevant Period designed to detect potential spoofing activity or excessive cancellation activity by Merrill customers"; and (iv) Merrill's recent production of companion documents. When asked whether Merrill has ever produced *any* documents responsive to RFP 17, Merrill refused to say.

* * *

Merrill's positions have resulted in continuing delays and burdens to both Harrington and, more so, now this Court. Harrington respectfully requests that the Court direct Merrill to fully comply with its January 10 Order, including production of (i) DEA/DMA-related policies, manuals, procedures, and related documents and communications; and (ii) those compliance-related documents referenced in Merrill's Algorithms Governance Policy (MERRILL_03917-20) and Global Electronic Trading Systems Development Policy (MERRILL_03945).

{1683040.1}                                    3

Respectfully submitted,

WARSHAW BURSTEIN LLP

By: /s/ *Alan M. Pollack*
Alan M. Pollack
Felicia S. Ennis
Thomas Filardo
Leron Thumim
Matthew A. Marcucci
575 Lexington Avenue, 7th Floor
New York, New York 10022
Tel.: (212) 984-7700
apollack@wbny.com
fennis@wbny.com
tfilardo@wbny.com
lthumim@wbny.com
mmarcucci@wbny.com

HOLWELL SHUSTER & GOLDBERG LLP
RICHARD J. HOLWELL
GREGORY DUBINSKY
ANDREW C. INDORF
ADITI SHAH
425 LEXINGTON AVENUE
NEW YORK, NY 10017
TEL.: (646) 837-5151
RHOLWELL@HSGLLP.COM
GDUBINSKY@HSGLLP.COM
AINDORF@HSGLLP.COM
ASHAH@HSGLLP.COM

CHRISTIAN ATTAR
James Wes Christian
Ardalan Attar
2302 Fannin, Suite 205
Houston, Texas 77002
Tel.: (713) 659-7617
jchristian@christianattarlaw.com
aattar@christianattarlaw.com

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HARRINGTON GLOBAL OPPORTUNITY FUND, LIMITED, <br><br> Plaintiff, <br><br> v. <br><br> CIBC WORLD MARKETS CORP., *et al.*, <br><br> Defendants. | Civil Action No.: 1:21-cv-00761-LGS <br><br> Hon. Lorna G. Schofield |

**MERRILL DEFENDANTS' OBJECTIONS AND RESPONSES
TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION (NOS. 1-23)**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendants BofA Securities, Inc. ("Merrill-US") and Merrill Lynch Canada Inc. ("Merrill-Canada") (collectively, "Merrill Defendants") hereby object and respond to Plaintiff's First Request for Production of Documents to Merrill Defendants as follows:

**GENERAL OBJECTIONS**

Merrill Defendants object to the Instructions to the extent they attempt to impose obligations beyond those provided under Rules 26 and 34 of the Federal Rules of Civil Procedure, the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, any protocol governing the production of documents or information in this action, the orders of this Court, and any agreement of the parties about document production. Merrill Defendants will not follow such "instructions" from Plaintiff but will comply with the law.

Merrill Defendants object that the definition of "You" and "Your" is overbroad because it includes, inter alia, parents and affiliates that have nothing to do with securities trading. Merrill

Defendants further object to Plaintiffs' implication that the conduct of these distinct corporate entities was linked, or worse yet that they are one company, without justification. Merrill Defendants will interpret these words to apply solely to Merrill-US and Merrill-Canada, and their respective officers and employees.

## REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

**REQUEST FOR PRODUCTION NO. 1:**

All Documents and Communications concerning Merrill's trading and order activity in Concordia's shares on U.S. and Canadian exchanges, alternative trading systems and any other trading venue, including but not limited to:

(a) parent orders;

(b) child order messages (including creation, cancellations, updates, modification and any other relevant updates); and

(c) execution and any other transaction data in Concordia's shares.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Merrill Defendants object to this Request as overbroad, unduly burdensome, and seeking information that is not relevant to the parties' claims or defenses. Merrill Defendants further object to this Request as vague and ambiguous for its use of the term "Merrill's trading and order activity." Merrill Defendants will interpret "Merrill's trading and order activity" to mean trades and orders placed for the principal accounts of either Merrill Defendant. Merrill Defendants further object to this Request as vague and ambiguous for its use of the terms "alternative trading systems" and "any other trading venue." Merrill Defendants will interpret both terms to mean what is defined in Regulation ATS [17 CFR § 242.300].

Without waiving the foregoing objections, Merrill Defendants will produce documents sufficient to show trades in and orders for Concordia common stock placed for the principal

accounts of either Merrill Defendant from January 27, 2016 to November 15, 2016 (the "Relevant Period").

**REQUEST FOR PRODUCTION NO. 2:**

A cross-reference file identifying all parties and counterparties to all trades and orders identified by Request 1, including account number, full name, address, and type of account—with the type of account specifying whether it is a cash, margin, DVP/RVP, firm trading, firm operations, firm control, and/or error account.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Merrill Defendants object to this Request as overbroad and seeking information that is not relevant to the parties' claims or defenses. Merrill Defendants further object that this Request seeks information not in Merrill Defendants' possession, custody, or control to the extent it seeks the identities of "counterparties" to trades made on exchanges by either Merrill Defendant. Merrill Defendants state that in such circumstances, the exchange is its nominal counterparty on all such trades and the actual counterparty is known only to the exchange.

Without waiving the foregoing objections, Merrill Defendants will produce documents sufficient to show the beneficial owner or other party with authority to cause the submission of orders and execution of trades to be identified in response to Request for Production No. 1, and related account type(s) and, if available, counterparty information for such orders and trades.

**REQUEST FOR PRODUCTION NO. 3:**

Documents and Communications sufficient to identify the parties, counterparties, trading strategies and/or portfolio managers responsible for Merrill's trading and order activity in Concordia's shares on U.S. and Canadian exchanges, alternative trading systems and any other trading venue, including but not limited to parent orders, child order messages (including

3

either Merrill Defendant during the Relevant Period that Merrill Defendants locate after a reasonable search.

**REQUEST FOR PRODUCTION NO. 16:**

All Documents and Communications sufficient to identify the goals and purpose of the algorithms and underlying code responsive to Requests 14 and 15.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Merrill Defendants object to this Request as overbroad, unduly burdensome, and seeking information that is not relevant to the parties' claims or defenses.  Merrill Defendants further object to this Request as vague and ambiguous for its use of the phrase "goals … of algorithms and underlying code."

Without waiving the foregoing objections, Merrill Defendants will produce any non-privileged documents discussing or referring to the purposes of the trading algorithms that Merrill Defendants used for trades in and orders for Concordia common stock placed for the principal accounts of either Merrill Defendant during the Relevant Period that Merrill Defendants locate after a reasonable search.

**REQUEST FOR PRODUCTION NO. 17:**

Compliance and procedure manuals including but not limited to Merrill's policies, procedures, and compliance measures in connection with algorithmic trading, short selling, and spoofing.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Merrill Defendants object to this Request as overbroad, unduly burdensome, and seeking information that is not relevant to the parties' claims or defenses.  The Request appears to seek all "compliance and procedure manuals" of any entity in the world.

13

**REQUEST FOR PRODUCTION NO. 18:**

All Regulatory communications and regulatory review reports that reference any portion of the Relevant Period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Merrill Defendants object to this Request as overbroad, unduly burdensome, and seeking information that is not relevant to the parties' claims or defenses. The Request appears to seek all "Regulatory communications and regulatory review reports" issued by or directed to any entity in the world, on any subject. Merrill Defendants further object to this Request as vague and ambiguous for its use of the term "Regulatory communications." Merrill Defendants further object that this Request is not proportional to the needs of the case.

**REQUEST FOR PRODUCTION NO. 19:**

To the extent not already produced, all electronic communications including email, mobile communications, text messaging, instant messaging, and all other communications covered under SEC Rule 17a-4 and FINRA rule 4511(c) concerning any of the claims or defenses asserted in this action.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

Merrill Defendants object to this Request as not compliant with Rule 34(b)(1)(A), which requires a Request to "describe with reasonable particularity" the documents sought. Merrill Defendants further object to this Request as overbroad and unduly burdensome.

**REQUEST FOR PRODUCTION NO. 20:**

To the extent not already produced, all Documents and Communications relied on, reviewed, or considered by Merrill in responding to these Interrogatories or preparing Merrill's April 11, 2022 Rule 26(a) Disclosures.

14

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

Merrill Defendants object to this Request as vague and ambiguous for its use of the phrase "offer as evidence at any time."

Without waiving the foregoing objection, Merrill Defendants will produce any documents that Merrill Defendants currently intend to present as evidence at trial.

| | |
|---|---|
| Dated: June 6, 2022 | O'MELVENY & MYERS LLP |
| | /s/ *Abby F. Rudzin* |
| | Abby F. Rudzin |
| | William J. Martin |
| | Seven Times Square |
| | New York, NY 10026 |
| | Telephone: (212) 326-2000 |
| | arudzin@omm.com |
| | wmartin@omm.com |
| | *Attorneys for BofA Securities, Inc. and Merrill Lynch Canada Inc.* |

# EXHIBIT B



**ALAN M. POLLACK**
PARTNER

DIRECT DIAL: 212-984-7794
EMAIL: apollack@wbny.com

WARSHAW BURSTEIN, LLP
575 Lexington Avenue
New York, NY 10022
(212) 984-7700
www.wbny.com

April 23, 2024

**BY EMAIL**
Abby F. Rudzin. Esq.
O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY 10036
arudzin@omm.com

    Re:    *Harrington Global Opportunity Fund, Ltd. v. BofA Securities, Inc.*, No. 21-CV-761

Dear Abby:

    On behalf of Plaintiff Harrington Global Opportunity Fund, Ltd. ("Harrington"), I write to address certain deficiencies Harrington has identified in Merrill's recent productions of compliance-related documents (in response to prior deficiencies raised). Deficiencies in these supplemental productions further exemplify the inadequacy of Merrill's productions and underlying search criteria, and further demonstrate Merrill's continued failure to conduct discovery in good faith.

    First, Merrill produced an "Algorithms Governance Policy," which, on its face, makes clear that it is only one part of Merrill's risk management system pertaining to algorithms. *See, e.g.,* MERRILL_03917-3920. Such policy expressly provides:

> The Policy describes how the Firm manages the risks associated with the use of Algorithms through an integrated set of controls and processes. The management of these risks includes three components:
> - The Algorithms Governance Policy;
> - The Global Markets Trading Algorithm Controls Standard (the "Controls Standard"); and
> - All other relevant Firm policies and procedures, including but not limited to Market Access Rule – Fixed Income and Global Equities Policy and Enterprise Model Risk Management Policy.

*Id.* (emphasis added).

**Warshaw Burstein, LLP**

Abby F. Rudzin, Esq.<br>
April 23, 2024<br>
Page 2 of 3

Of course, just as the Algorithms Governance Policy is directly responsive to Harrington's Request for Production No. 17, so too are its components, which components Merrill has utterly failed to produce; namely, (i) the "Global Markets Trading Algorithm Controls Standard;" (ii) "all other relevant Firm policies and procedures;"(iii) the "Market Access Rule – Fixed Income and Global Equities Policy;" and (iv) the "Enterprise Model Risk Management Policy." Such components must be produced immediately,

Second, in response to Harrington's Request for Production No. 17, Merrill produced a Global Electronic Trading Systems Development Policy, which explicitly states that it "extends the Global Electronic Trading Market Access Policy" and, in any event, "must be read in conjunction with" the "Global Electronic Trading Market Access Policy." *See* MERRILL_03945. Merril has nonetheless failed to produce its Global Electronic Trading Market Access Policy; such policy must be produced immediately.

Third, at MERRILL_03918, the Algorithms Governance Policy references a policy entitled "Global Records Management Policy," and, at MERRILL_03919, the Algorithms Governance Policy references a policy entitles "Global Compliance Monitoring and Testing Policy." Despite these references in a clearly responsive document and despite that, on their own, their titles indicate that these documents are clearly responsive to Harrington's Request for Production No. 17, Merrill has, yet again, failed to produce these documents. Merrill must immediately produce its Global Records Management Policy and its Global Compliance Monitoring and Testing Policy.

Fourth, three of the spoofing-related procedures Merrill produced in response to Harrington's Request for Production No. 17 refer to "FINRA's cross-market equities supervision Report Card," which Trading Supervisors are obligated to review on a monthly basis. *See* MERRILL_02433, 2434, and 2435. The Report Card:

> indicates transactions where FINRA suspects potential spoofing or layering by the Firm or entities to which the Firm is providing market access. The Report Card provides a summary of the identified market activity, detailed information about the exceptions, and trends in such trading over the preceding six months. The Report Card does not reflect conclusions that violations occurred; rather it indicates potential problems that need to be reviewed.

*Id.* Merrill has not produced any FINRA Report Cards. Merrill must immediately produce all FINRA Report Cards during the Relevant Period.

*   *   *

{1675945.2 }

**Warshaw Burstein, LLP**

  Fact discovery is currently set to close in just over one month's time.  Unfortunately, it is apparent that Merrill's production deficiencies have only intensified.  We expect Merrill to immediately confirm that it will produce the documents set forth in this letter and to provide the date by which such production is expected.  To the extent Merrill refuses to do so, we can meet and confer on this topic during our already-scheduled meet and confer on Wednesday, April 24, 2024 at 5:30 p.m.

  Harrington reserves all rights.

               Sincerely,

               /s/ *Alan M. Pollack*
               Alan M. Pollack

cc:  William J. Martin, Esq (*via email*)

{1675945.2 }