# HOLWELL SHUSTER & GOLDBERG LLP

425 Lexington Avenue
New York, New York 10017

*Matthew Gurgel*
*(646) 837-5137 • mgurgel@hsgllp.com*

**VIA ECF**                                                                May 21, 2024

The Honorable Lorna G. Schofield
United States District Court for the Southern District of New York
500 Pearl Street, New York, NY 10007

    Re:    *Harrington Global Opportunity Fund, Ltd. v. BofA Securities, Inc.*, No. 21-CV-761

Dear Judge Schofield:

    We write on behalf of Plaintiff Harrington and respectfully request leave to file this reply in response to Defendants' Opposition, Dkt. 257 ("Opp."), to Harrington's motion to extend the fact discovery deadline and refer discovery disputes to Magistrate Judge Cott, Dkt. 247 ("Mot.").

    As an initial matter, the Motion does not seek an "indefinite" extension of the fact discovery deadline. Opp. at 1. As explained in the Motion, Defendants possess the relevant discovery here, and fixed deadlines have incentivized Defendants to drag out negotiations and delay production in an attempt to run out the clock. For this reason, the Motion keys the fact discovery deadline to 4 weeks after the completion of document production obligations and the resolution of related disputes. But the Motion also requests a conference for the week of June 10 or 17, so that all parties (including Defendants) will have the opportunity to present their arguments on whether discovery is complete. Discovery will continue beyond the 4-week period only if the Court is persuaded that Defendants or their clients from whom Harrington has sought discovery have <u>not</u> satisfied their obligations, an entirely appropriate result.

    Defendants also argue that they have produced "more than 100 million rows of order and trade data and thousands of pages of documents." Opp. at 1. But the relevant question is what Defendants have <u>not</u> produced, and the Motion makes clear that they have done everything possible to delay or withhold key discovery. Harrington has been forced to seek the Court's assistance in part because Defendants have repeatedly taken frivolous discovery positions, as shown by CIBC's flagrant refusal to comply with the Court's March 18 order, *see* Dkt. 210, and Merrill's latest attempt to avoid producing documents obviously relevant to client trading in Concordia, *see* Dkt. 258. Defendants' arguments that Harrington is somehow to blame for their own failure to produce important discovery should be rejected.

    **Trading Data.** Defendants elide key facts relevant to the status of discovery. The Opposition states that "Merrill completed production of its own data in 2023," Opp. at 1 (emphasis added), but as explained in the Motion, Merril disclosed only in 2024 that many of its clients went directly to the market <u>via a third party</u>. After Merrill produced that third-party channel data, Harrington analyzed it and determined that portions were corrupted. Defendants state that "Merrill has reproduced the data to correct the issue," Opp. at 2, but omit that the reproduction occurred only <u>this past Saturday, May 18</u>.

    Merrill's eleventh-hour production does not lessen the need for an extension. The entire dataset in the new production is organized differently. Merrill's original production contained 239 files, with each order group organized as its own mini dataset with individual headers. The new production completely reorganizes the data into 205 files and eliminates that structure; instead, there is one section and header for order events and another for execution events in each file. Harrington is still evaluating

whether Merrill's new production contains deficiencies. For example, Merrill's original production contained approximately 16 million rows of data (excluding headers), and included trade and order data for Concordia in both Canada (CXR) and the United States (CXRX). Merrill's new production contains approximately 11 million rows of data, and does not appear to include trade and order data for Concordia in Canada (CXR). Put simply, notwithstanding Merrill's recent production, Harrington will not be able to simply "slot in" the corrected Order IDs into its prior analysis. Instead, Harrington will have to analyze the restructured dataset, reformat it, evaluate and address with Merrill any deficiencies in the new production, and only then evaluate the data anew for spoofing activity. If anything, Merrill's belated production shows exactly why an extension is necessary.

And of course, Merrill's production does not address the many other open discovery issues discussed in the Motion. As to Merrill, the day after Harrington moved for an extension, Merrill agreed to "look into" the 1.4 million order events missing account IDs, but has not been able to provide a date by when it will have any information. Ex. A at 2.

As to CIBC, the Opposition claims that correspondent clearing transfers about which CIBC has yet to produce information are a "red herring," Opp. at 2, but misstates the basis for Harrington's requests regarding the transfers. Harrington requested documents not because the "clearing transfers" themselves are "spoofs," *id.*, but because they demonstrate that CIBC "did successfully identify" a cross-border spoofing scheme "but allowed [it] to proceed." Dkt. 147 at 16 (Order Denying Motion to Dismiss). Harrington will detail the issue in its forthcoming motion to compel.

As to TD, Defendants suggest that TD's failure to produce trade and order data with timestamps—an essential component of standard data—is acceptable because the data belongs to affiliate TD Waterhouse and Harrington purportedly did not request it until this year. Opp. at 2. But Defendants ignore that the SAC specifically alleged spoofing through four broker numbers belonging to TD Waterhouse. Dkt. 133, ¶ 18. As discussed in the Motion, there is no doubt that the data is relevant, discoverable, and was within TD's control, but TD now says the data has been lost, and Harrington must seek it from third parties. Mot. at 2. Defendants' contention that this issue was revealed before May 10 is also misleading. Notwithstanding weeks of negotiations between the parties concerning the TD Waterhouse data TD would produce, TD never informed Harrington that the data would lack of timestamps and did not confirm the unavailability of *any* timestamps until May 10—after Harrington raised the deficiency. *See id.*

**Discovery from Clients.** Defendants' assertions of delay by Harrington are inaccurate. Defendants point to the Court's March 18 order directing CIBC to deanonymize client identities to suggest that Harrington could have obtained Defendants' client identities sooner. Opp. at 2. Incredibly, Defendants ignore that CIBC refused to comply with that order, requiring an additional round of motion practice and a second order on March 21. Dkt. 210. After the second order, Harrington provided the Defendants with the results of Harrington's deanonymization analyses beginning in early April, but as set forth in the Motion, CIBC revealed its deanonymized clients only on May 5, Merrill on May 8, and TD beginning on May 10 (and did not complete revealing its clients until May 15), *see* Mot. at 2. Harrington immediately began serving document subpoenas on certain of those clients. *Id.* The Court has authorized such third-party discovery, Dkt. 199, and Harrington is entitled to discovery into whether those clients were engaged in spoofing and the profit motive for Defendants that their relationships with the clients may have created.

**Communications Regarding Client Trading in Concordia.** Here too, Defendants' attempts to blame Harrington for the status of discovery fall short. Merrill boasts that "[w]ithin days" of receiving a

demand that it search for communications about customer trading, it "agreed to produce communications about customer trading and proposed to search an additional custodian's ESI," and says that when Harrington rejected Merrill's proposal and moved to compel, the Court "rejected plaintiff's overbroad requests and search terms." Opp. at 3. That is an interesting characterization of the Court's order, which, although requiring additional limiters to Harrington's terms, directed the parties to "jointly develop search terms that are based on [Harrington's] proposed terms," not Merrill's. Dkt. 237 at 4. Harrington's decision to move to compel was warranted.

Harrington has now had to move for clarification of the Court's order on search terms based on Merrill's unreasonable interpretation of that order. Dkt. 251. Defendants suggest that Harrington could be negotiating search terms with CIBC and TD, Opp. at 3, but CIBC has taken the same unreasonable position as Merrill (during a meet and confer last Thursday), and the terms Harrington will propose to TD will also be based on the Court's ruling on the clarification motion. Harrington is not delaying.

**Depositions.** Defendants feign outrage that depositions have not commenced, but do not explain why Harrington should have been required to commence depositions when, for example, Merrill only produced full (apparently) uncorrupted trading data last Saturday, numerous other discovery disputes are outstanding, and none of the Defendants has completed production of communications regarding client trading in Concordia. Defendants also attempt to lead the Court astray, claiming that "plaintiff has scheduled *one* deposition of a Merrill witness" and "*no* depositions of CIBC or TD witnesses." Opp. at 3 (emphasis in original). Defendants omit that Merrill has not yet provided a requested deposition date in June for a second witness, Mr. Manzoni. Ex. B at 2. Merrill also has not responded to Harrington's deposition notice for a third witness, Mr. Ahmad, *id.* at 4-5, and CIBC has rejected Harrington's proposed dates for two other witnesses, Mr. Persaud and Mr. Rashid, Ex. C at 2. Defendants' attempt to blame Harrington for an "inexplicable" failure to "schedule" more than one deposition, Opp. at 3—when Defendants have not responded to some of Harrington's proposals and have rejected others—is misleading to say the least.

Moreover, until last Friday, Defendants refused to agree to allow Harrington to take more than 10 depositions in this entire case—including the five Rule 30(b)(6) depositions Harrington must take to cover each of the five Defendants, depositions of percipient fact witnesses from Defendants, and depositions of Defendants' clients identified as potentially engaged in spoofing. Harrington has already noticed 10 depositions, and the fact that more depositions have not been scheduled is partly the result of Defendants' own refusal to agree to a reasonable number and the uncertainty created by Defendants' still ongoing document productions. Negotiations over the appropriate number of fact depositions continue, and Harrington remains hopeful that Defendants will relent and agree to a reasonable number of depositions for a case of this size and complexity, but Harrington will move the Court for relief on the issue if necessary.

\* \* \*

The amount of important discovery left to be completed amply supports Harrington's requests concerning the fact discovery deadline and for referral of discovery disputes going forward to Magistrate Judge Cott. The Motion should be granted.

Respectfully submitted,

*/s/ Matthew Gurgel*
Matthew Gurgel