Defendant shall respond by **May 28, 2024**.

So Ordered.

Dated: May 23, 2024
New York, New York



WARSHAW BURSTEIN, LLP
575 Lexington Avenue
New York, NY 10022
(212) 984-7700
www.wbny.com

**ALAN M. POLLACK**
PARTNER

DIRECT DIAL: 212-984-7794
EMAIL: apollack@wbny.com

LORNA G. SCHOFIELD
**UNITED STATES DISTRICT JUDGE**

May 21, 2024

<u>**VIA ECF**</u>
The Honorable Lorna G. Schofield
United States District Court for the Southern District of New York
500 Pearl Street, New York, NY 10007

    Re:   *<u>Harrington Global Opportunity Fund, Ltd. v. BofA Securities, Inc.</u>*, No. 21-CV-761

Dear Judge Schofield:

    We write on behalf of Plaintiff Harrington Global Opportunity Fund, Ltd. ("Harrington") to respectfully request that the Court compel Merrill to produce documents relevant to Merrill's monitoring of customer trading for which Merrill has improperly asserted the bank examination privilege—even though Merrill has never produced a privilege log and has failed to provide confirmation that it has contacted the regulator, much less that the regulator is asserting privilege.[1]

    Harrington's ability to understand the compliance program through which Merrill monitored customer trading is complicated by the fact that, during the Relevant Period, Merrill made significant changes to its trade surveillance system. These changes appear to be a result of an assessment of the deficiencies in its compliance program that Merrill undertook pursuant to a 2014 FX Consent Order (the "Consent Order") in which the OCC found that Merrill "had deficiencies in its internal controls" and that Merrill's "transaction monitoring and communication surveillance lacked an adequate analysis of risk-behavior related to" trading. *See* Consent Order, at 5, *available a*t www.occ.treas.gov/news-issuances/news-releases/2014/nr-occ-2014-157a.pdf. While the OCC's examination that resulted in the Consent Order concerned foreign exchange trading, the Consent Order required Merrill to remedy the same deficiencies as they related to other trading activities. Indeed, Article IX of the Consent Order required Merrill to submit a "written plan to ensure

---

[1] JOINT STATEMENT: Harrington seeks to compel Merrill to produce versions of Merrill's "Proactive Application of Remedial Measures Plan." Merrill has informed Harrington that it designated these documents as "Confidential Supervisory Information" before submitting them to the Office of the Comptroller of the Currency ("OCC"), meaning that Merrill believes they are protected by the bank examination privilege. The parties are at an impasse as to whether Merrill may produce such documents without a court order after notice to the OCC.

    The parties met and conferred via videoconference for over an hour on April 22 during which these matters were discussed and the parties also discussed these matters during various other meet-and-confers, including on April 3 and April 25. The parties also exchanged correspondence, but were unable to come to an agreement.

    Note: Harrington disagrees with the scope of this joint statement as Harrington seeks production not only of the "Proactive Application of Remedial Measures Plan," but also documents relating thereto, as specifically set forth in this letter. *See also* Ex. A, the parties' email correspondence concerning Harrington's requests, together with the attachment thereto, Harrington's March 26, 2024 letter.

{1684107.4 }

Warshaw Burstein, LLP

that the Bank proactively uses a risk-based approach to apply Employee market conduct remedial measures in this Order *to other wholesale trading in which the Bank acts as principal and other benchmark activities*."  Consent Order, Article IX, at 17-18 (emphasis added).  The Consent Order defined such written plan as the "Proactive Application of Remedial Measures Plan."  *Id.*

Numerous documents produced by Merrill in late February make it clear that the "Proactive Application of Remedial Measures Plan" that Merrill drafted is highly relevant to Harrington's claims.  For example, MERRILL_03415 states that Merrill " REDACTED ," and that Merrill's compliance department " REDACTED REDACTED "  As another example, MERRILL_3410 states that, REDACTED REDACTED " MERRILL_3410 continues: REDACTED REDACTED " (Emphasis added.)

These documents demonstrate the import and relevance of the "Proactive Application of Remedial Measures Plan."  Documents relating to the plan may reveal both (i) the flaws in the spoofing monitoring system(s) that Merrill had in place for most of the Relevant Period, and (ii) the changes Merrill made to those systems during the Relevant Period.

On March 26, Harrington sent a deficiency letter to Merrill seeking production of (i) the "Proactive Application of Remedial Measures Plan," and documents concerning same, including (ii) all documents relating to the " REDACTED " referenced in MERRILL_03415, including all documents reflecting that " REDACTED "; (iii) as referenced in MERRILL_03410, all documents showing that " REDACTED ," as well as all documents evidencing that " REDACTED "; and (iv) the " REDACTED ," both of which are referenced in MERRILL_03410.

These documents (i) relate to the adequacy of Merrill's compliance program as it relates to spoofing, (ii) are responsive to Harrington's Requests for Production ("RFPs") 1, 17, and 19, Ex. B, and (iii) were plainly covered by this Court's January 10 Order (Dkt. 177) ordering Merrill to produce documents regarding the adequacy of Merrill's compliance program to the extent they relate to spoofing.  During an April 3 meet-and-confer, Merrill indicated it would search for these documents.  At a subsequent April 22 meet-and-confer, Merrill provided the update that it was still looking, but that it expected to assert the bank examination privilege.  Not having disputed the relevance of these documents, on May 7, Merrill improperly asserted the bank examination privilege in an attempt to shield the documents from production.

Merrill's assertion that the "Proactive Application of Remedial Measures Plan" and related documents are confidential supervisory information under 12 U.S.C. § 1828(x) is untenable for several reasons.

*First*, 12 U.S.C. § 1828(x) does not create a privilege but merely provides that submitting privileged material to a banking agency like the OCC does not constitute a waiver of such privilege.

## Warshaw Burstein, LLP

*Second*, the privilege which is "narrow in scope . . . belongs to the regulatory authority and not to the banks that it regulates." *Sharkey v. J.P. Morgan Chase & Co.*, No. 10 Civ. 3824, 2013 WL 2254553, at *1 (S.D.N.Y. May 22, 2013) (citation omitted). Here, the privilege belongs to the OCC, not Merrill, and Merrill "cannot assert this privilege." *MASTR Adjustable Rate Mortgages Tr. 2006-OA2 v. UBS Real Est. Sec. Inc.*, No. 12 CIV. 7322 HB JCF, 2013 WL 5437354, at *1 (S.D.N.Y. Sept. 27, 2013). Merrill has not so much as confirmed that it contacted the OCC, much less that the OCC has responded by asserting privilege.

*Third*, the bank examination privilege is a qualified privilege that protects only "'opinions and recommendations but does not protect factual materials.'" *Id.* (quoting *United Western Bank v. Office of Thrift Supervision*, 853 F.Supp.2d 12, 16 (D.D.C.2012)). The Proactive Application of Remedial Measures Plan is *not* an OCC opinion or recommendation; rather, *it is a Merrill-drafted plan*. Moreover, documents detailing the changes Merrill made to its trade surveillance system(s) are *factual materials*. Even to the extent that Merrill's communications with the OCC regarding the plan may be privileged, "internal communications" about the plan fall "outside [the bank examination privilege's] narrow scope should not be deemed privileged." *In re Wilmington Tr. Sec. Litig.*, No. CV 10-990-SLR-SRF, 2016 WL 9753979, at *7 (D. Del. Aug. 16, 2016), *report and rec adopted*, 2016 WL 9711195 (D. Del. Sept. 12, 2016).

*Finally*, Merrill's assertion of the privilege (which is not Merrill's to assert) to cover all documents relating to the Proactive Application of Remedial Measures Plan is staggeringly overbroad. Indeed, even where the OCC asserts the privilege, it must do so by reference to specific documents. *See Wultz v. Bank of China Ltd.*, 291 F.R.D. 42, 46 (S.D.N.Y. 2013).

<div align="center">*     *     *</div>

Accordingly, Harrington requests an order compelling Merrill to search for and produce (i) the "Proactive Application of Remedial Measures Plan," drafts thereof, and documents concerning same,[2] including (ii) all documents relating to the " REDACTED " referenced in MERRILL_03415, including all documents reflecting that " REDACTED "; (iii) as referenced in MERRILL_03410, all documents showing that " REDACTED ," as well as all documents evidencing that " REDACTED "; and (iv) the " REDACTED ," both of which are referenced in MERRILL_03410.

---

[2] We also note that Harrington has no way of knowing precisely which documents Merrill is refusing to produce because Merrill has never produced any privilege log. Although on March 1, Merrill represented to the Court that it had "substantially completed [its] document production in this action and [has] complied with this Court's January 10, 2024 Order," [Doc. 197], Merrill's failure to produce a log renders this representation false. *See Coker v. Goldberg & Assocs. P.C.*, No. 21 Civ. 1803, 2024 WL 263121, at *4 (S.D.N.Y. Jan. 24, 2024) ("A party has not completed all discovery if it has withheld responsive documents on privilege grounds but has failed to produce a privilege log."). A party's assertion of privilege despite failing to produce a privilege log is generally sanctionable. *See, e.g., e.g., SEC v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 157 (S.D.N.Y. 2014) ("[T]he SEC's unjustified failure to serve indices of privileged documents in a timely and proper manner operates as a waiver of any applicable privilege"); *FB Hemisphere Ass'ns, LLC v. Republique Du Congo*, No. 1 Civ. 8700, 2005 WL 545218, at *6 (S.D.N.Y. Mar. 8, 2005) (collecting cases). Although the privilege is not Merrill's to waive, this Court has discretion to otherwise address Merrill's failure to comply with both the Federal Rules and the Local Rules.

Warshaw Burstein, LLP

Respectfully submitted,

WARSHAW BURSTEIN LLP

By:  /s/ *Alan M. Pollack*
Alan M. Pollack
Felicia S. Ennis
Thomas Filardo
Leron Thumim
Meghan Hallinan
575 Lexington Avenue, 7th Floor
New York, New York 10022
Tel.: (212) 984-7700
apollack@wbny.com
fennis@wbny.com
tfilardo@wbny.com
lthumim@wbny.com
mhallinan@wbny.com

HOLWELL SHUSTER & GOLDBERG LLP
RICHARD J. HOLWELL
GREGORY DUBINSKY
ANDREW C. INDORF
ADITI SHAH
425 LEXINGTON AVENUE
NEW YORK, NY 10017
TEL.: (646) 837-5151
RHOLWELL@HSGLLP.COM
GDUBINSKY@HSGLLP.COM
MGURGEL@HSGLLP.COM AINDORF@HSGLLP.COM
ASHAH@HSGLLP.COM

CHRISTIAN ATTAR
James Wes Christian
Ardalan Attar
2302 Fannin, Suite 205
Houston, Texas 77002
Tel.: (713) 659-7617
jchristian@christianattarlaw.com
aattar@christianattarlaw.com

# EXHIBIT A

| | |
|---|---|
| **From:** | Hallinan, Meghan |
| **To:** | Martin, Bill; Filardo, Thomas |
| **Cc:** | Rudzin, Abby F.; Day, Kevin; jchristian@christianattarlaw.com; Ardalan Attar; Harrington Securities; Harrington |
| **Subject:** | RE: Harrington |
| **Date:** | Tuesday, May 21, 2024 8:09:00 PM |
| **Attachments:** | 3-26-24 Ltr. to A. Rudzin.pdf |

Bill,

Your email is not well taken and appears to be yet another entry in an ongoing pattern in which Merrill has repeatedly shifted positions, contradicted prior representations, and flagrantly mischaracterized our discovery requests.  This pattern has caused Harrington substantial prejudice, and put us in a position in which—just weeks before the close of fact discovery—we still lack important documents concerning Merrill's compliance policies and procedures.  With regards to this specific dispute, from their genesis on March 26, and over the course of the multiple meet-and-confers, memorializations thereof, and follow-up correspondence as set forth below, it has been crystal clear that the deficiencies Harrington identified have been far broader than Merrill's failure to produce "versions of" the Proactive Application of Remedial Measures Plan.

Our March 26 letter is attached hereto with the relevant passages highlighted.  This letter unambiguously describes the _same exact_ documents contained in our joint statement of yesterday. Indeed, these documents are what Harrington referred to in its March 26 letter as "Compliance Deficiency Nos. 8-10."  The Proactive Application of Remedial Measures Plan was separately referred to as "Compliance Deficiency No. 7."

Moreover, our correspondence over the past two months flatly disproves your suggestion that Harrington did not indicate the scope of its motion to compel until yesterday.   Please refer to the email thread below, highlighted in green, and the following timeline to refresh your memory.

- Harrington's March 26, 2024 letter identified Compliance Deficiency Nos. 7-10, which explicitly refers to "all documents relating to" the Proactive Application of Remedial Measures Plan.
- The parties met and conferred on April 3, 3024, during which Abby Rudzin indicated that Merrill would conduct a reasonable search for these documents and produce them if they referred to spoofing or the monitoring of alerts generally.
- Between April 3 and April 18, 2024, you provided no update on the results of your investigation and made no indication that you might assert any kind of privilege.
- Leron Thumim's April 18, 2024 email memorializing the April 3, 2024 meet-and-confer noted that, in addition to your agreement to conduct a reasonable search for the Proactive Application of Remedial Measures Plan, you agreed, with respect to "_Compliance Deficiency Nos. 8-10 (additional documents related to the 2014 FX Consent Order)_," to conduct "a reasonable search for the _requested items relating to_ the FX Consent Order and will produce if they refer to the monitoring of alerts."  (Emphasis added.)
- At our request, the parties met and conferred again on April 22, 2024, during which you indicated that Merrill was still searching for the documents requested in Compliance Deficiency Nos. 7-10 but that they would likely fall within the bank examination privilege.

Thomas Filardo's April 23, 2024 email memorializing the April 22, 2024 meet-and-confer noted that, with respect to "*Compliance Deficiency Nos. 7-10* – Merrill's position is that it is looking for the *requested documents* but that *they* will likely fall under the bank examination privilege."  (Emphasis added.)

- The parties met and conferred on this issue again on April 25, 2024, and Merrill represented that it had no update on its search for the documents.
- Thomas Filardo's May 1, 2024 email asked for confirmation as to whether Merrill would be producing, among other things, "*documents* responsive to *Merrill Compliance Deficiency Nos. 7-10, as set forth in Harrington's letter to you of March 26, 2024*."  (Emphasis added.)
- Abby Rudzin's May 3, 2024 email indicated that with respect to the requested "***documents relating to*** the FX Consent Order:  *We have been consulting with the law firm that handled this matter*, and we believe that Merrill will take the position that the documents are covered by the bank examination privilege."  (Emphasis added.)
- Your May 7, 2024 email indicated that Merrill was "able to review versions from the Relevant Period of the 'Proactive Application of Remedial Measures Plan' described in ***your requests concerning*** the FX Consent Order."  (Emphasis added.)
- Your May 10, 2024 email, responding to Thomas Filardo's May 8, 2024 email arguing that Merrill's "assertion that ***documents concerning the*** *Proactive Application of Remedial Measures Plan* are confidential supervisory information . . . is untenable (emphasis added)," took the position that Merrill "already informed [Harrington] that the Bank is taking the position that the Proactive Application of Remedial Measures Plan is covered by the bank examination privilege."  (Emphasis added.)

Nowhere in the above correspondence or during the parties' meet-and-confers did Harrington <u>ever</u> suggest that it was seeking only "versions of"—as opposed to all relevant documents related to—the Proactive Application of Remedial Measures Plan, and Merrill never conveyed that it understood differently; in fact, it is obvious that Merrill understood the ask to be broader than a single document.  As the parties have been discussing this issue for two months—and have already met and conferred on these topics multiple times throughout April 2024—Harrington does not believe there is anything further to meet and confer about.  Merrill has taken a clear position that it will not produce the documents—and now, for the very first time—you are suggesting that Merrill may seek to <u>claw back</u> the very documents Harrington cited ***nearly two months ago***, in Harrington's March 26 letter.

Given the time constraints in the current discovery schedule, Merrill's disingenuous attempt to unilaterally narrow the scope of Harrington's requests and motion to compel, and the *actual* facts here, Harrington will proceed with filing its motion to compel.



Meghan Hallinan  ·  Associate
Warshaw Burstein, LLP
575 Lexington Avenue  ·  New York, NY 10022  ·  [www.wbny.com](http://www.wbny.com)
Direct:  212-984-7734  ·  Fax:  212-972-9150
E-Mail:  [mhallinan@wbny.com](mailto:mhallinan@wbny.com)

**From:** Martin, Bill <wmartin@omm.com>
**Sent:** Tuesday, May 21, 2024 11:15 AM
**To:** Hallinan, Meghan <MHallinan@wbny.com>; Filardo, Thomas <TFilardo@wbny.com>
**Cc:** Rudzin, Abby F. <arudzin@omm.com>; Day, Kevin <kday@omm.com>;
jchristian@christianattarlaw.com; Ardalan Attar <aattar@christianattarlaw.com>; Harrington
Securities <HarringtonSecurities@hsgllp.com>; Harrington <Harrington@wbny.com>
**Subject:** RE: Harrington

Meghan, it appears that you have proposed two edits to Joint Statement 1.  We can accept
the first edit, but not the second because it is incorrect.  The language below is acceptable
to Merrill as to Joint Statement 1:

> Harrington seeks to compel Merrill to provide information regarding the process
> through which Merrill searched for and produced (i) what Harrington refers to as
> "exception reports, alerts, escalation reports, daily/monthly reports," and other
> documents indicating any trading in Concordia that Merrill flagged as potential
> spoofing or spoofing-like behavior by Merrill or Merrill's customers (the "alert
> documents"); and (ii) the parameters that Merrill's trade surveillance system(s) used
> to trigger alerts or exception reports addressed by the alert documents.  To the
> extent that any of these documents were once in Merrill's possession but have since
> been destroyed, Harrington also seeks to compel Merrill to provide information
> regarding when and why any such documents were destroyed.  Merrill states that it
> has conducted a reasonable search for both categories of documents and produced
> such documents.  Merrill has also noted Harrington's 30(b)(6) deposition topic
> regarding Merrill's document collection efforts and offered to prepare a witness on
> that topic and include document preservation efforts.
>
> The parties met and conferred via videoconference for over an hour on April 22
> during which both of these matters were discussed and the parties also discussed
> these matters during various other meet-and-confers, including on January 8, April
> 3, and April 25.  The parties also exchanged correspondence, but were unable to
> come to an agreement.

Your draft Joint Statement 2 below significantly expands what we understood to be the
scope of documents you were seeking.  As reflected in my email of May 7, we had
understood Harrington to be seeking versions of the "Proactive Application of Remedial
Measures Plan" from the Relevant Period.  You did not state that the scope of documents
that Harrington would seek in a motion to compel is much broader until yesterday.  We
need time to consult with our client and the law firm that handled the FX Consent Order for
Merrill about these additional documents, as well as whether Merrill may need to claw back
inadvertently produced bank examination material in the two documents you cite below.
 We should be able to meet and confer with you on Thursday on this topic.  Are you
available at 10 am that day?

William J. Martin
O: +1-212-728-5942
C: +1-917-582-2461
wmartin@omm.com

---

**From:** Hallinan, Meghan <MHallinan@wbny.com>
**Sent:** Monday, May 20, 2024 8:13 PM
**To:** Martin, Bill <wmartin@omm.com>; Filardo, Thomas <TFilardo@wbny.com>
**Cc:** Rudzin, Abby F. <arudzin@omm.com>; Day, Kevin <kday@omm.com>;
jchristian@christianattarlaw.com; Ardalan Attar <aattar@christianattarlaw.com>; Harrington
Securities <HarringtonSecurities@hsgllp.com>; Harrington <Harrington@wbny.com>
**Subject:** RE: Harrington

[EXTERNAL MESSAGE]

Bill,

Following up to see if you had any proposed edits to either of the joint statements below.

Thanks,



Meghan Hallinan  ·  Associate
Warshaw Burstein, LLP
575 Lexington Avenue  ·  New York, NY 10022  ·  www.wbny.com
Direct:  212-984-7734  ·  Fax:  212-972-9150
E-Mail:  mhallinan@wbny.com

---

**From:** Hallinan, Meghan
**Sent:** Monday, May 20, 2024 12:00 PM
**To:** Martin, Bill <wmartin@omm.com>; Filardo, Thomas <tfilardo@wbny.com>
**Cc:** Rudzin, Abby F. <arudzin@omm.com>; Day, Kevin <kday@omm.com>;
jchristian@christianattarlaw.com; Ardalan Attar <aattar@christianattarlaw.com>; Harrington
Securities <HarringtonSecurities@hsgllp.com>; Harrington <Harrington@wbny.com>
**Subject:** RE: Harrington

Bill,

As a matter of formatting, we are dividing the joint statement into two.  Former paragraph "First"
will be its own joint statement as will be former paragraph "Second."

In terms of substance, we have the following comments to correct inaccuracies/provide clarification:

<u>Joint Statement 1</u>

Harrington seeks to compel Merrill to provide information regarding the process through which Merrill searched for and produced (i) what Harrington refers to as "exception reports, alerts, escalation reports, daily/monthly reports," and other documents indicating any trading in Concordia that Merrill flagged as potential spoofing or spoofing-like behavior by Merrill or Merrill's customers (the "alert documents"); and (ii) the parameters that Merrill's trade surveillance system(s) used to trigger alerts or exception reports addressed by the alert documents.  To the extent that any of these documents were once in Merrill's possession but have since been destroyed, Harrington also seeks to compel Merrill to provide information regarding when and why any such documents were destroyed.  Merrill states that it has conducted a reasonable search for both categories of documents and produced such documents it found but has not provided Harrington with information regarding Merrill's search.  Merrill has also noted Harrington's 30(b)(6) deposition topic regarding Merrill's document collection efforts and offered to prepare a witness on that topic and include document preservation efforts.

The parties met and conferred via videoconference for over an hour on April 22 during which both of these matters were discussed and the parties also discussed these matters during various other meet-and-confers, including on January 8, April 3, and April 25.  The parties also exchanged correspondence, but were unable to come to an agreement.

<u>Joint Statement 2</u>

Harrington seeks to compel Merrill to produce versions of Merrill's "Proactive Application of Remedial Measures Plan" and documents concerning same, including (i) all documents relating to the "REDACTED" referenced in MERRILL_03415, including all documents reflecting that



"REDACTED"; (ii) as referenced in MERRILL_03410, all documents showing that "REDACTED," as well as all documents evidencing that "REDACTED"; and (iii) the "REDACTED," both of which are referenced in MERRILL_03410.  Merrill has informed Harrington that it designated these documents as "Confidential Supervisory Information" before submitting them to the Office of the Comptroller of the Currency ("OCC"), meaning that Merrill believes that they are protected by the bank examination privilege.  The parties are at an impasse as to whether Merrill may produce such documents without a court order after notice to the OCC.

The parties met and conferred via videoconference for over an hour on April 22 during which these matters were discussed and the parties also discussed these matters during various other meet-and-confers, including on April 3 and April 25.  The parties also exchanged correspondence, but were unable to come to an agreement.

Thanks,

Meghan Hallinan · Associate



Warshaw Burstein, LLP
575 Lexington Avenue · New York, NY 10022 · www.wbny.com
Direct: 212-984-7734 · Fax: 212-972-9150
E-Mail: mhallinan@wbny.com

---

**From:** Martin, Bill <wmartin@omm.com>
**Sent:** Sunday, May 19, 2024 7:12 PM
**To:** Hallinan, Meghan <MHallinan@wbny.com>; Filardo, Thomas <TFilardo@wbny.com>
**Cc:** Rudzin, Abby F. <arudzin@omm.com>; Day, Kevin <kday@omm.com>;
jchristian@christianattarlaw.com; Ardalan Attar <aattar@christianattarlaw.com>; Harrington
Securities <HarringtonSecurities@hsgllp.com>; Harrington <Harrington@wbny.com>
**Subject:** RE: Harrington

Meghan, we propose edits to the draft Joint Statement you sent, as reflected below.

Joint Statement

First, Harrington seeks to compel Merrill to provide information regarding the process through
which Merrill searched for and produced (i) what Harrington refers to as "exception reports, alerts,
escalation reports, daily/monthly reports," and other documents indicating any trading in Concordia
that Merrill flagged as potential spoofing or spoofing-like behavior by Merrill or Merrill's customers
(the "alert documents"); and (ii) the parameters that Merrill's trade surveillance system(s) used to
trigger alerts or exception reports addressed by the alert documents. Harrington also seeks to
compel Merrill to provide information regarding when and why any such documents were
destroyed. Merrill states that it has conducted a reasonable search for both categories of
documents and produced such documents. Merrill has also noted Harrington's 30(b)(6) deposition
topic regarding Merrill's document collection efforts and offered to prepare a witness on that topic
and include document preservation efforts.

Second, Harrington seeks to compel Merrill to produce versions of Merrill's "Proactive Application of
Remedial Measures Plan." Merrill has informed Harrington that it designated these documents as
"Confidential Supervisory Information" before submitting them to the Office of the Comptroller of
the Currency ("OCC"), meaning that Merrill believes that they are protected by the bank examination
privilege. The parties are at an impasse as to whether Merrill may produce such documents without
a court order after notice to the OCC.

The parties met and conferred via videoconference for over an hour on April 22 during which both of
these issues were discussed and the parties also discussed one or both of these issues during various
other meet-and-confers, including on January 8, April 3, and April 25. The parties also exchanged
correspondence, but were unable to come to an agreement.

William J. Martin
O: +1-212-728-5942
C: +1-917-582-2461
wmartin@omm.com

---

**From:** Hallinan, Meghan <MHallinan@wbny.com>
**Sent:** Thursday, May 16, 2024 2:14 PM
**To:** Martin, Bill <wmartin@omm.com>; Filardo, Thomas <TFilardo@wbny.com>
**Cc:** Rudzin, Abby F. <arudzin@omm.com>; Day, Kevin <kday@omm.com>; jchristian@christianattarlaw.com; Ardalan Attar <aattar@christianattarlaw.com>; Harrington Securities <HarringtonSecurities@hsgllp.com>; Harrington <Harrington@wbny.com>
**Subject:** RE: Harrington

[EXTERNAL MESSAGE]

Bill,

We've prepared the below joint statement that addresses both (i) documents concerning the Proactive Application of Remedial Measures Plan and (ii) Harrington's requests for information regarding Merrill's "reasonable searches."  We would appreciate your prompt response with any proposed line edits you may have.

Joint Statement

     *First*, Harrington seeks to compel Merrill to provide information regarding the process through which it conducted its search for (i) exception reports, alerts, escalation reports, daily/monthly reports, and other documents indicating the trading in Concordia that Merrill flagged as potential spoofing or spoofing-like behavior by Merrill or Merrill's customers (the "alert documents"); and (ii) the parameters that Merrill's trade surveillance system(s) used to trigger alerts or exception reports addressed by the alert documents.  To the extent that Merrill has determined that any of these documents were once in its possession and have since been destroyed, Harrington seeks to compel Merrill to provide information regarding when and why the documents were destroyed.  Merrill believes that it has conducted a reasonable search for these documents, and it need not provide Harrington with information regarding the steps it took to search for these documents or the results of its investigation.  Merrill has offered to let Harrington use one of its depositions on a document preservation custodian.

     *Second*, Harrington has requested that Merrill produce documents concerning the "Proactive Application of Remedial Measures Plan."  Merrill has asserted these documents are covered by the bank examination privilege.  Harrington asserted that it is the regulator's privilege and asked Merrill to provide authority supporting its position.  Merrill provided no authority and has not confirmed for Harrington that it contacted a regulator (or provided a date of such contact), or that a regulator has asserted such privilege.

       The parties met and conferred via videoconference for over an hour on April 22 during which both of these issues were discussed and the parties also discussed one or both of these issues during various other meet-and-confers, including on October 18, January 8, April 3, and April 25. The parties also exchanged correspondence, but were unable to come to an agreement.

Thanks,



Meghan Hallinan  ·  Associate
Warshaw Burstein, LLP
575 Lexington Avenue  ·  New York, NY 10022  ·  www.wbny.com
Direct:  212-984-7734  ·  Fax:  212-972-9150
E-Mail:  mhallinan@wbny.com

---

**From:** Martin, Bill <wmartin@omm.com>
**Sent:** Friday, May 10, 2024 10:41 PM
**To:** Filardo, Thomas <TFilardo@wbny.com>
**Cc:** Rudzin, Abby F. <arudzin@omm.com>; Day, Kevin <kday@omm.com>;
jchristian@christianattarlaw.com; Ardalan Attar <aattar@christianattarlaw.com>; Harrington
Securities <HarringtonSecurities@hsgllp.com>; Harrington <Harrington@wbny.com>
**Subject:** RE: Harrington

Tom, the documents marked with the Bates numbers MERRILL_02420 – MERRILL_02432
and MERRILL_02437 do not apply to cash equities, and therefore we will not search for
documents about them.  ==We have already informed you that the Bank is taking the position
that the Proactive Application of Remedial Measures Plan is covered by the bank
examination privilege.==

William J. Martin
O: +1-212-728-5942
C: +1-917-582-2461
wmartin@omm.com

---

**From:** Filardo, Thomas <TFilardo@wbny.com>
**Sent:** Thursday, May 9, 2024 8:47 PM
**To:** Filardo, Thomas <TFilardo@wbny.com>
**Cc:** Martin, Bill <wmartin@omm.com>; Rudzin, Abby F. <arudzin@omm.com>; Day, Kevin
<kday@omm.com>; jchristian@christianattarlaw.com; Ardalan Attar
<aattar@christianattarlaw.com>; Harrington Securities <HarringtonSecurities@hsgllp.com>;
Harrington <Harrington@wbny.com>
**Subject:** Re: Harrington

[EXTERNAL MESSAGE]

Bill:  following up. Please respond promptly.
Thank you.

Sent from my iPhone

On May 8, 2024, at 7:55 PM, Filardo, Thomas <tfilardo@wbny.com> wrote:

Bill,

Thank you for acknowledging that "Merrill created daily reports that were provided to Trading Supervisors pursuant to the Written Supervisory Procedure titled 'Spoofing and Layering Exception Report Review'" and for your indication that Merrill "conducted a reasonable search for any of those reports mentioning Concordia and did not locate any from the Relevant Period." However, for the reasons discussed below, this is still insufficient to comply with Merrill's discovery obligations.

To begin with, these daily reports were encompassed by Harrington's request that Merrill produce daily reports as set forth in point "Fifth" of my May 1 email below (as well as being encompassed by multiple prior requests over the past seven months). See also MERRILL_02433 – MERRILL_2436 (attached with added highlighting). But Harrington has also requested the "daily reports" referenced in what we now deduce (given your below email) are (i) Written Supervisory Procedures titled "Spoofing" (see MERRILL_02420 – MERRILL_02432 (attached with added highlighting)); and (ii) Written Supervisory Procedures titled "Spoofing and Layering Review" (see MERRILL_02437 (attached with added highlighting)).

While Merrill has stated its position that MERRILL_02420 does not pertain to "cash equities trading," Merrill has not taken the same position with respect to the remaining Written Supervisory Procedures titled "Spoofing" that were produced (i.e., MERRILL_02421 – MERRILL_02432) or the Written Supervisory Procedures titled "Spoofing and Layering Review" that were produced (i.e., MERRILL_02437).

On their face, *all* of the daily reports—whether for "Spoofing and Layering Exception Report Review," "Spoofing," or "Spoofing and Layering Review"—serve the same function in connection with *Merrill's spoofing surveillance system during the Relevant Period*: to bring potentially manipulative trading activity to the attention of a supervisor so that it can be assessed and, if it is indeed manipulative, stopped. We also note that both the "Spoofing and Layering Exception Report Review" and "Spoofing" procedures REDACTED .

But Merrill has only represented that it performed a "reasonable search" for reports pertaining to the "Spoofing and Layering Exception Report Review" procedures.  Has Merrill searched for reports referenced in the "Spoofing" and "Spoofing and Layering Review" procedures?  If not, Harrington renews its request that Merrill search for and produce these documents.  Further, as we have repeatedly explained, Merrill's obligations to meet-and-confer with Harrington in good faith to outline the parameters of the search for ESI require more than a bald assertion that Merrill has conducted a reasonable search.  Merrill must share additional information regarding *how* it conducted its search so that Harrington can assess the extent to which it agrees it is reasonable, or more must be done.

We also note that earlier today Merrill produced MERRILL_04482, consisting of a spreadsheet, which your cover letter indicates contains REDACTED. In such document Column I, REDACTED"  Has Merrill also searched for REDACTED?  If not, Harrington renews its request that Merrill search for and produce these documents.  If so, Harrington requests that Merrill provide more information regarding how it conducted its search.



Finally, your assertion that documents concerning the Proactive Application of Remedial Measures Plan are confidential supervisory information under 12 U.S.C. § 1828(x) is untenable.  As we have already explained multiple times over the past seven months, that is not how the bank examination privilege works.  12 U.S.C. § 1828(x) does *not* create a privilege but merely provides that submitting privileged material to a banking agency like the OCC does not constitute a waiver of such privilege.  Moreover, the privilege belongs *to the regulator* (the OCC here), *not* Merrill.  See MASTR Adjustable Rate Mortgages Tr. 2006-OA2 v. UBS Real Est. Sec. Inc., No. 12 CIV. 7322 HB JCF, 2013 WL 5437354, at *1 (S.D.N.Y. Sept. 27, 2013) (bank examination privilege "is narrow in scope and belongs to the regulatory authority and not the banks that it regulates").  Merrill has no basis whatsoever to invoke the privilege without first indicating that it contacted the OCC, and the OCC has then responded to assert the privilege.  In any event, the bank examination privilege is a qualified privilege that protects only "opinions and recommendations but does not protect factual materials."  Id.  The Proactive Application of Remedial Measures Plan is not an OCC opinion or recommendation.  Please, either promptly produce the requested documents or promptly provide any authority you have to support your argument that

designating materials as confidential under 12 U.S.C. § 1828(x) creates a privilege that Merrill can assert at this time to avoid disclosure.

Harrington reserves all rights with respect to the above.

Best,
Tom

<image001.jpg>

Thomas Filardo · Partner
Warshaw Burstein, LLP
575 Lexington Avenue · New York, NY 10022 ·
www.wbny.com
Direct Telephone: 212-984-7806 · Facsimile: 212-972-9150
E-Mail: tfilardo@wbny.com

---

**From:** Martin, Bill <wmartin@omm.com>
**Sent:** Tuesday, May 7, 2024 10:52 AM
**To:** Rudzin, Abby F. <arudzin@omm.com>; Filardo, Thomas <TFilardo@wbny.com>;
Day, Kevin <kday@omm.com>
**Cc:** jchristian@christianattarlaw.com; Ardalan Attar <aattar@christianattarlaw.com>;
Harrington Securities <HarringtonSecurities@hsgllp.com>; Harrington
<Harrington@wbny.com>
**Subject:** RE: Harrington

Tom,

In locating the records described below concerning the ▓▓▓ REDACTED ▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ We have conducted a reasonable search for any of
those reports mentioning Concordia and did not locate any from the Relevant
Period.

We have also been able to review versions from the Relevant Period of the
"Proactive Application of Remedial Measures Plan" described in your requests
concerning the FX Consent Order.  These documents are confidential
supervisory information submitted under 12 U.S.C. § 1828(x), and they were
designated as such before submission to the OCC.

William J. Martin
O: +1-212-728-5942
C: +1-917-582-2461
wmartin@omm.com

---

**From:** Rudzin, Abby F. <arudzin@omm.com>

**Sent:** Friday, May 3, 2024 10:29 AM
**To:** Filardo, Thomas <TFilardo@wbny.com>; Martin, Bill <wmartin@omm.com>; Day,
Kevin <kday@omm.com>
**Cc:** jchristian@christianattarlaw.com; Ardalan Attar <aattar@christianattarlaw.com>;
Harrington Securities <HarringtonSecurities@hsgllp.com>; Harrington
<Harrington@wbny.com>
**Subject:** RE: Harrington

Tom, we disagree with much of what you say, but find this kind of petty, argumentative
correspondence unhelpful.  Here is where we are on your specific requests:

1.        Exception reports:  It appears that the parties have been confusing the
nomenclature of alerts, exception reports, and escalation reports.  We are producing to
you the exception reports (a/k/a alerts) for potential spoofing in CXR we were able to
locate.  It has taken us longer to process and prepare the production due to some
technical issues on our end, but you should have them today.  For CXRX, we previously
produced to you the exception report we were able to locate; it was not an escalation
report.  Merrill does not have "escalation reports" different from exception reports.

2.        REDACTED:  We have been able to able to locate a REDACTED ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████  We should be able to produce a spreadsheet reflecting the relevant
records next week.

3.        Requested documents relating to the FX Consent Order:  We have been
consulting with the law firm that handled this matter, and we believe that Merrill will
take the position that the documents are covered by the bank examination privilege.

4.        We offered to look into the daily reports referenced in MERRILL_02420 in
order to avoid a dispute.  Unless and until Harrington can show how any other daily
reports fall within what Merrill has agreed to or been ordered to produce, we are not
looking for any more.

---

**From:** Filardo, Thomas <TFilardo@wbny.com>
**Sent:** Wednesday, May 1, 2024 5:16 PM
**To:** Rudzin, Abby F. <arudzin@omm.com>; Martin, Bill <wmartin@omm.com>; Day,
Kevin <kday@omm.com>
**Cc:** jchristian@christianattarlaw.com; Ardalan Attar <aattar@christianattarlaw.com>;
Harrington Securities <HarringtonSecurities@hsgllp.com>; Harrington
<Harrington@wbny.com>
**Subject:** RE: Harrington

[EXTERNAL MESSAGE]

Abby,

The Court's requirement for a joint statement assumes a good faith exchange (after good faith attempts to resolve a discovery dispute).  Where Harrington has drafted joint statements and Merrill merely objects at a high level, rather than editing the proposed language or proposing alternative language, Merrill is not providing a good faith, substantive response.  Instead, Merrill is standing in the way of the Court-ordered process.

We note that during the April 22, 2024 meet-and confer your colleague, Bill Martin, repeatedly stated that Merrill would not search for or produce first-level alerts (which, according to the documents Merrill produced, are also referred to as "exception reports").  We also note that in an April 10, 2024 email, you yourself stated that "Harrington has never served requests seeking 'exception reports' or 'alerts,' Merrill has never agreed to look for or produce such documents."  Your below email of Friday evening now refers to an "alert" Merrill produced "for CXRX" and states that Merrill "ha[s] also searched [sic] and located spoofing alerts for CXR and will be producing what we found early next week."

First, to be clear, however, consistent with the Court's January 10, 2024 Order [Doc. No. 177], Harrington is entitled to compliance-related documents to the extent they relate to "spoofing or Concordia" (emphasis added).  Accordingly, Harrington is entitled to not just spoofing alerts, but all alerts and related documents concerning Concordia trading during the Relevant Period.  Indeed, this is precisely what CIBC has produced, and we cannot understand why Merrill has failed to do the same.

Second, it is now late Wednesday afternoon and we have not received the production Merrill promised would be made early this week.  When will Merrill make its production?

Third, we cannot understand why Merrill has taken until May of 2024 to produce such documents, particularly given the above Court Order and Merrill's representation, on December 4, 2023, that it would produce "[e]xception reports generated during the Relevant Period that address potential spoofing activity or excessive cancellation activity in Concordia stock by Merrill customers."  Merrill's unexplained and unjustified delay (and changes of position) has severely prejudiced Harrington.

Fourth, in addition to the "spoofing alerts" referenced in your below email, please advise if Merrill's production will include documents in the following categories where, based on our meet-and-confers dating back to the *beginning of April*, Merrill agreed to conduct a further search and produce:

1. escalation reports;
2. documents relating to Merrill's required monthly compliance reviews (as, for example purposes only, referenced in MERRILL-02433), particularly



   " );
3. <mark>documents responsive to Merrill Compliance Deficiency Nos. 7 through 10, as set forth in Harrington's letter to you of March 26, 2024.</mark>

Please either confirm (i) that the documents described in a-c above will be included in Merrill's production and/or (ii) whether Merrill's search for these items is complete.  To the extent Merrill's search is not complete, please advise when such search will be completed.  These demands and Merrill's "search" have both been outstanding for far too long.

Fifth, with respect to the "daily reports" repeatedly referenced in Merrill production, during the April 25, 2024 meet-and-confer, Bill Martin stated that Merrill only looked into the "daily report" referenced in MERRILL_ 02420, and stated that neither that document nor the daily report referenced in it pertained to cash equities trading.  With respect to the daily reports, Harrington cited MERRILL_02420 as a mere example of a Merrill policy that referenced daily reports.  Indeed, our March 26, 2024 letter to you provided that "Merrill's own production repeatedly refers to daily reports" and that, "**[f]or example**, the document with the Bates number Merrill_02420 refers to ▮REDACTED▮ ▮▮ .'" (emphasis added)  The letter went on to indicate that we were "unable to identify any daily reports in Merrill's production."  Our letter was clear that Merrill_02420 was only a representative example of the spoofing-related policies produced by Merrill and that Harrington was requesting all relevant daily reports, not just those referenced in that specific policy.

Setting aside the ridiculousness of only inquiring into MERRILL_02420, and that Mr. Martin would not indicate which of the other policies Merrill produced *are* applicable to cash equities trading, we now explicitly note that each of the following documents reference ▮REDACTED▮ ▮▮

1. MERRILL_02421-2422
2. MERRILL_02423-2424
3. MERRILL_02425
4. MERRILL_02426
5. MERRILL_02427-2428
6. MERRILL_02429-2430
7. MERRILL_02431-2432
8. MERRILL_02433
9. MERRILL_02434
10. MERRILL_02435-2436
11. MERRILL_02437

To be even more abundantly clear than we already have been, Harrington requests *all* daily reports related to spoofing during the relevant period, including those referenced in the above-listed documents.  Please promptly advise whether Merrill will produce these documents.



Thomas Filardo  ·  Partner
Warshaw Burstein, LLP
575 Lexington Avenue  ·  New York, NY 10022  ·
www.wbny.com
Direct Telephone:  212-984-7806  ·  Facsimile:  212-972-9150
E-Mail:  tfilardo@wbny.com

---

**From:** Rudzin, Abby F. <arudzin@omm.com>
**Sent:** Friday, April 26, 2024 7:15 PM
**To:** Filardo, Thomas <TFilardo@wbny.com>; Martin, Bill <wmartin@omm.com>; Day, Kevin <kday@omm.com>
**Cc:** jchristian@christianattarlaw.com; Ardalan Attar <aattar@christianattarlaw.com>; Harrington Securities <HarringtonSecurities@hsgllp.com>; Harrington <Harrington@wbny.com>; Matthew Gurgel <mgurgel@hsgllp.com>; Andrew C. Indorf <aindorf@hsgllp.com>; Gregory J. Dubinsky <gdubinsky@hsgllp.com>
**Subject:** RE: Harrington

Tom – your email stating that your first two drafts of a joint statement "hav[e] gone unanswered" is inaccurate.  We responded to your first draft and explained why it was unacceptable.  You sent a second draft that did little to cure the problems we had previously identified.  This draft is different, being sent for the first time at 2:49 p.m. on Friday, so, as usual, your demand for a response tonight is unreasonable.

On the substance, your proposed statement is also, once again, simply false.  Merrill does not dispute its obligation to search for documents describing the parameters of its spoofing surveillance system in 2016.  We have told you repeatedly that we have conducted a reasonable search and do not have such documents.  As for alerts, we have produced one that we located for CXRX.  We have also searched and located spoofing alerts for CXR and will be producing what we found early next week.  Perhaps wait until we make our production before preparing yet another inaccurate joint statement.

Have a good weekend.

---

**From:** Filardo, Thomas <TFilardo@wbny.com>
**Sent:** Friday, April 26, 2024 2:49 PM
**To:** Martin, Bill <wmartin@omm.com>; Rudzin, Abby F. <arudzin@omm.com>; Day, Kevin <kday@omm.com>
**Cc:** jchristian@christianattarlaw.com; Ardalan Attar <aattar@christianattarlaw.com>; Harrington Securities <HarringtonSecurities@hsgllp.com>; Harrington <Harrington@wbny.com>; Matthew Gurgel <mgurgel@hsgllp.com>; Andrew C. Indorf <aindorf@hsgllp.com>; Gregory J. Dubinsky <gdubinsky@hsgllp.com>
**Subject:** RE: Harrington

[EXTERNAL MESSAGE]

By midnight tonight, please provide any edits you may have to the following joint statement.  We note that this is the third request, the first two having gone unanswered, on a proposed joint statement.

Joint Statement:   Harrington raised what it believes are deficiencies in Merrill's productions and has set forth the basis of its belief in, among other things, a March 26, 2024 letter, a subsequent April 3, 2024 meet-and-confer video conference at which the parties conferred for over one hour, an April 18, 2024 email, an April 22, 2024 meet-and-confer video conference at which the parties conferred for over one hour, and an April 23, 2024 email.  Merrill disagrees with Harrington's assertion that Merrill is under an obligation to search for and produce first-level alerts relating to trading in Concordia and documents that set forth the parameters used to trigger any such alerts.

---

**From:** Filardo, Thomas
**Sent:** Thursday, April 25, 2024 1:34 PM
**To:** wmartin@omm.com; arudzin@omm.com; kday@omm.com
**Cc:** jchristian@christianattarlaw.com; Ardalan Attar <aattar@christianattarlaw.com>;

Harrington Securities <HarringtonSecurities@hsgllp.com>; Harrington
<Harrington@wbny.com>; Matthew Gurgel <mgurgel@hsgllp.com>; Andrew C. Indorf
<aindorf@hsgllp.com>; Gregory J. Dubinsky <gdubinsky@hsgllp.com>
**Subject:** RE: Harrington

Bill,

We took copious notes during the call; it's a shame that you are now engaging in
revisionist history.  In any event, here is where we are:

1.  We reached an impasse during our call on Monday with respect to Merrill
    searching for and producing first-level alerts and the parameters used to trigger
    such alerts.  Neither Abby's email below nor your email below contend
    otherwise.
2.  With respect to daily reports and monthly reviews and evidence of compliance
    (see March 26, 2024 letter at pages 2-3), you now say you are willing to revisit
    this long-standing request during today's meet and confer.
3.  With respect to "documents that show how Merrill monitored customer trading
    to ensure its customers were not engaged in spoofing," you do not think it is
    "appropriate to expect {Merrill] to conduct such a broad and undefined search
    at this stage of fact discovery".  This statement is contradicted by your
    December 4, 2023 email (attached) in which you agreed:
    1.  "The Merrill Defendants will produce any of the following nonprivileged
        documents they locate after conducting a reasonable search:
        1.  Exception reports generated during the Relevant Period that
            address potential spoofing activity or excessive cancellation activity
            in Concordia stock by Merrill customers;
        2.  If such exception reports exist, policies and supervisory procedures
            concerning such exception reports during the Relevant Period; and
        3.  User manuals for trading surveillance systems in place, if any,
            during the Relevant Period designed to detect potential spoofing
            activity or excessive cancellation activity by Merrill customers."
    Apart from one report of an alert (MERRILL_03050), ▇▇▇▇▇REDACTED▇▇▇▇▇,
    we have no record of Merrill having produced any of these documents.  If you
    nonetheless believe ALL such documents you specified in your December 4
    email were searched for and produced, please say so, and identify same.
4.  Although you say that Merrill has conducted an investigation into the feasibility
    of collecting "algorithms," we are concerned this "investigation" was overly
    restrictive.  Harrington has always been seeking information regarding Merrill's
    compliance systems(s) and procedures, including the process through which
    alerts were generated – whether parameters used by the trade surveillance
    system or some other compliance/monitoring algorithm.  Merril must produce
    documents sufficient to understand the compliance measures Merrill took to
    monitor its customers' trading.  Is Merrill refusing to produce such critical
    compliance information?

[image001.jpg]    Thomas Filardo · Partner
Warshaw Burstein, LLP
575 Lexington Avenue · New York, NY 10022 ·
www.wbny.com
Direct Telephone: 212-984-7806 · Facsimile: 212-972-9150
E-Mail: tfilardo@wbny.com

---

**From:** Martin, Bill <wmartin@omm.com>
**Sent:** Thursday, April 25, 2024 9:46 AM
**To:** Filardo, Thomas <TFilardo@wbny.com>; Rudzin, Abby F. <arudzin@omm.com>;
Day, Kevin <kday@omm.com>; Matthew Gurgel <mgurgel@hsgllp.com>; Andrew C.
Indorf <aindorf@hsgllp.com>; Gregory J. Dubinsky <gdubinsky@hsgllp.com>;
jchristian@christianattarlaw.com; Ardalan Attar <aattar@christianattarlaw.com>; Aditi
Shah <AShah@hsgllp.com>; Harrington <Harrington@wbny.com>
**Subject:** RE: Harrington

Tom, I'm only responding to your 4:17 pm yesterday email to address
inaccuracies in your assertions concerning our last meet and confer:

1.  You state below that I had indicated that Merrill has not found a
    "simple way" to obtain algorithms monitoring trading and that Merrill will
    not produce such documents.  What we told you on Monday was that
    we had done what we said we would do during our April 3 meet and
    confer on this topic.  We conducted a reasonable investigation into
    whether it was feasible for Merrill to collect such algorithms to monitor
    trading in use in 2016.  There does not appear to be one, and we have
    not been able to locate any such algorithms.  Merrill will not produce
    such documents because there is nothing to produce.

2.  You state below that I had indicated that Merrill will not search for
    "documents that show how Merrill monitored customer trading to
    ensure its customers were not engaged in spoofing."  Your recap
    below shows that this is false.  Where Harington has made specific
    requests for documents, we have considered them.  For example, you
    acknowledge that "[Merrill] represented that [Merrill] do[es] not believe
    Merrill has a specific document concerning this issue but that you
    would investigate whether there are any documents concerning
    parameters for triggering alerts related to spoofing."  It is not
    appropriate to expect us to conduct such a broad and undefined
    search at this stage of fact discovery and to repeat our refusals of your
    overbroad requests while failing to mention what we've agreed to do.

3.  You state below that I had indicated that Merrill will not search for the
    daily and monthly reports referenced in Merrill's documents.  You did
    not specify what daily or monthly reports you meant during the meet
    and confer, and Leron's April 18 also did not say what daily or monthly

reports he was referring to.  Are you referring only to what you have characterized as daily reports and monthly reports as described on page 2 of the March 26 letter?  If so, we can discuss that during our meet and confer.  That will also affect how we will edit the draft joint statement below.

William J. Martin
O: +1-212-728-5942
C: +1-917-582-2461
wmartin@omm.com

**From:** Filardo, Thomas <TFilardo@wbny.com>
**Sent:** Wednesday, April 24, 2024 4:17 PM
**To:** Rudzin, Abby F. <arudzin@omm.com>; Martin, Bill <wmartin@omm.com>; Day, Kevin <kday@omm.com>; Matthew Gurgel <mgurgel@hsgllp.com>; Andrew C. Indorf <aindorf@hsgllp.com>; Gregory J. Dubinsky <gdubinsky@hsgllp.com>; jchristian@christianattarlaw.com; Ardalan Attar <aattar@christianattarlaw.com>; Aditi Shah <AShah@hsgllp.com>; Harrington <Harrington@wbny.com>
**Subject:** RE: Harrington

[EXTERNAL MESSAGE]

Hi Abby,

While we appreciate that you did not participate in Monday's Meet & Confer, your colleagues, Bill Martin and Kevin Day, did participate.  Contrary to your statements below, during the Meet & Confer, Bill clearly indicated – and then re-confirmed in no uncertain terms – that Merrill:

1. has not found a "simple way" to obtain algorithms monitoring trading and that Merrill will not produce such documents; ; [We told you on Monday that we had done what we said we would do during on April 3 meet and confer on this topic. We conducted a reasonable investigation into whether it was feasible for Merrill to collect such algorithms to monitor trading in use in 2016.  There does not appear to be one, and we have not been able to locate any such algorithms. Merrill will not produce such documents because there is nothing to produce.]

2. will not search for "documents that show how Merrill monitored customer trading to ensure its customers were not engaged in spoofing;" and [Your recap below shows that this is false.  Where Harington has made specific request for documents, we have considered them.  For example, you admit that "[Merrill] represented that [Merrill] do[es] not believe Merrill has a specific document concerning this issue but that you would investigate whether there are any documents concerning parameters for triggering alerts related to spoofing.   It is not appropriate to expect us to conduct such a broad and undefined search at this stage of fact discovery and to repeat our refusals of your overbroad requests

while failing to mention what we've agreed to do.]

3. will not search for the daily and monthly reports referenced in Merrill's documents (while there was no confusion or lack of understanding expressed by Bill on Monday, we nonetheless refer to Harrington's letter to you of March 26, 2024; specifically, page 2, referencing for exemplary purposes MERRILL_02420



( REDACTED ) and MERRILL_02433 ( REDACTED ). [You did not specify what daily or monthly reports you meant during the meet and confer, and Leron's April 18 also did not say what daily or monthly reports he was referring to. If you are referring only to the daily and monthly reports that you have described on page 2 of the March 26 letter, we can discuss that during our meet and confer tomorrow. That will also affect how we will edit the draft joint statement below.]

To the extent Merrill has changed its position(s) since Monday, please advise immediately. Otherwise, we have adjusted the joint statement in an attempt to minimize the amount of argument while summarizing the parties' positions:

Joint Statement:   Harrington raised what it believes it has identified as deficiencies in Merrill's productions and has done so by means of a March 26, 2024 letter, a subsequent April 3, 2024 meet-and-confer video conference at which the parties conferred for over one hour, an April 18, 2024 email, an April 22, 2024 meet-and-confer video conference at which the parties conferred for over one hour, and an April 23, 2024 email. Merrill disagrees that the items identified by Harrington constitute deficiencies. The matters at issue are whether Merrill must search for and produce (i) first-level alerts related to spoofing in Concordia; (ii) daily and monthly reports sent to supervisors referenced in Merrill's compliance-related documents; (iii) documents that show how Merrill monitored customer trading to ensure its customers were not engaged in spoofing; and (iv) compliance and monitoring algorithms – including parameters, heuristics, and other guidance – used by Merrill during the Relevant Period.

Please let us know if you are signed off or if you have further comments by 9am tomorrow.

Thanks,
Tom

&lt;image001.jpg&gt;

Thomas Filardo  ·  Partner
Warshaw Burstein, LLP
575 Lexington Avenue  ·  New York, NY 10022  ·
www.wbny.com
Direct Telephone: 212-984-7806  ·  Facsimile: 212-972-9150

E-Mail:  tfilardo@wbny.com

---

**From:** Rudzin, Abby F. <arudzin@omm.com>
**Sent:** Wednesday, April 24, 2024 9:55 AM
**To:** Filardo, Thomas <TFilardo@wbny.com>; Martin, Bill <wmartin@omm.com>
**Cc:** jchristian@christianattarlaw.com; Ardalan Attar <aattar@christianattarlaw.com>;
Gregory J. Dubinsky <gdubinsky@hsgllp.com>; Matthew Gurgel
<mgurgel@hsgllp.com>; Andrew C. Indorf <aindorf@hsgllp.com>; Aditi Shah
<AShah@hsgllp.com>; Harrington <Harrington@wbny.com>; Day, Kevin
<kday@omm.com>
**Subject:** RE: Harrington

Hi Tom.  I can't speak to the accuracy of your description of the meet and
confer because I was not on the call, but we do not agree to your joint
statement.  Merrill will never agree that Harrington identified "deficiencies" in
Merrill's production.  Merrill also will not agree that it has "refused to search
for … compliance and monitoring algorithms."  We've told you that we
looked and didn't find any.  The same goes for "documents that show how
Merrill monitored customer trading to ensure its customers were not
engaged in spoofing."  We have, in fact, produced policies about such
monitoring.  As for "daily and monthly reports sent to supervisors referenced
in Merrill's compliance-related documents," please be more specific – we
can't agree that we've "refused to search for and produce such documents"
without knowing precisely what you are talking about.

If Harrington is moving to compel 4 different things, the joint statement
obviously needs to be more than a single sentence.

---

**From:** Filardo, Thomas <TFilardo@wbny.com>
**Sent:** Tuesday, April 23, 2024 6:50 PM
**To:** Martin, Bill <wmartin@omm.com>; Rudzin, Abby F. <arudzin@omm.com>
**Cc:** jchristian@christianattarlaw.com; Ardalan Attar <aattar@christianattarlaw.com>;
Gregory J. Dubinsky <gdubinsky@hsgllp.com>; Matthew Gurgel
<mgurgel@hsgllp.com>; Andrew C. Indorf <aindorf@hsgllp.com>; Aditi Shah
<AShah@hsgllp.com>; Harrington <Harrington@wbny.com>
**Subject:** FW: Harrington

[EXTERNAL MESSAGE]

Bill and Abby,

I write to memorialize our meet-and-confer of yesterday, April 22, 2024.  Please also see the attached letter setting forth still yet additional deficiencies associated with Merrill's supplemental production.

With respect to Merrill's request seeking deanonymization of customer information, you indicated that Merrill was "very close" to a proposal, but Merrill would only agree to Harrington's request on the condition that this satisfies Harrington's requests—including all requests that could arise in the future—to deanonymize customer information.  We expressed our concerns with that condition but agreed to consider it.  We note that you also indicated that responding to Harrington's deanonymization request was "burdensome" for Merrill, but did not substantiate that statement other than to say that the issue involves "client sensitivities," and you were unable to say how quickly Merrill will produce deanonymized information if the parties are able to reach an agreement.  As you could not confirm whether you'd have a proposal by today, we scheduled a follow-up meet-and-confer for 3:00 p.m. on Wednesday, April 24.  At your request of earlier today, we have agreed to reschedule this meet and confer for tomorrow at 5:30 p.m.

With respect to Merrill's compliance-related documents, we first discussed Merrill's central repository, alerts, and reports.  Despite Harrington's prior correspondence on this issue clearly indicating that its requests encompassed first-level alerts and daily/monthly reports, and the parties' extensive discussion of the same at the parties' April 3, 2024 meet-and-confer, you indicated yesterday that you believe Merrill has no obligation to produce first-level alerts as they relate to spoofing or any of the daily or monthly reports referenced in Merrill's documents.  Merrill's position is that alerts are not responsive to Harrington's Requests for Production and that you only agreed to conduct a reasonable search for "escalation reports."  Harrington indisputably discussed alerts in its March 26, 2024 letter and at the April 3, 2024 meet-and-confer, where Merrill never made a distinction between alerts, daily/monthly reports, and escalation reports.  Merrill refuses to search for and produce any alerts or daily and/or monthly reports.  We are therefore at an impasse.

You also indicated that Merrill is pursuing additional avenues for escalation reports but could not provide any date by which you could update Harrington on this matter.  We informed you that, in the event Merrill had no update on this by our meet and confer on Wednesday, April 24, we would ask the Court to intervene on this issue as well.

We requested basic documents concerning the functioning of Merrill's compliance system including documents concerning the criteria for triggering alerts.  While you believe that this request is not responsive to Request for Production 17, you represented that you do not believe Merrill has a specific document concerning this issue but that you would investigate whether there are any documents concerning parameters for triggering alerts related to spoofing.  We informed you that, in the event Merrill had no update on this by our meet and confer on Wednesday, April 24,

we would ask the Court to intervene on this issue as well.

You indicated that you ran "SMARTs" as a search term – only in conjunction with "Concordia" and its ticker symbols – and returned no hits. However, you would not answer whether Merrill's alerts are called SMARTs or something else nor whether you discussed this with Merrill personnel in the course of conducting your investigation to locate alerts pursuant to our April 3 meet-and-confer. You disagreed with Harrington's position that you had an obligation to investigate the type of alerts used by Merrill. You also disagreed with Harrington's position that the "SMARTs" search term have been run on its own and not just in conjunction with the terms "Concordia" and its ticker symbols.

We then discussed each of the enumerated items in our March 26, 2024 letter and follow-up April 18, 2024 email and note the following outcomes for each below.

Compliance Deficiency No. 1 – you indicated there were no additional reports as Enterprise Independent Testing only started creating such reports in April 2016.

Compliance Deficiency No. 2 – you found that ████████ REDACTED ████████
████████████████

Compliance Deficiency No. 3 – was not discussed during this meet and confer but was discussed during the April 3 meet and confer and raised again in Harrington's April 18, 2024 email. The parties should plan to discuss this item during our meet and confer tomorrow evening.

Compliance Deficiency No. 4 – you indicated that you ran "layering" as a search term but only in conjunction with the term "Concordia" (and its ticker symbols) and returned no hits. We again raised our concern that (i) Merrill should have searched for the term "layering" independent of the term "Concordia" (or its ticker symbols); and (ii) there may be additional custodians. You disagreed on both points.

Compliance Deficiency No. 5 – you believe Harrington is not entitled to documents showing how Merrill's compliance system works and that Merrill never agreed to search for such documents. You represented that you produced procedure documents on monitoring customer trading as it relates to spoofing. Harrington's position is that these one-page documents are insufficient as they provide ████ REDACTED ████
████████████████████████ Nor are there any documents concerning the two systems Merrill had in place or how Merrill monitored customer trading to ensure they were not engaging in spoofing, which Harrington believes are basic documents concerning the functioning of Merrill's compliance program. You stated that Merrill will not conduct an additional search for such documents. We are therefore at an impasse.

Compliance Deficiency No. 6 – Merrill represented that it produced the requested

document on Friday, April 19, 2024.

Compliance Deficiency Nos. 7 through 10 – Merrill's position is that it is looking for the requested documents but that they will likely fall under the bank examination privilege.  Harrington asserted that the privilege is not Merrill's to assert.  You indicated that you have not yet notified the regulator about our request as you are still looking for the documents.  Please provide an update on the status of these documents during (or before) our already-scheduled meet and confer tomorrow, Wednesday, April 24, at 5:30 p.m.

Compliance Deficiency No. 11 – You stated that the redacted text is outside the scope of Merrill's production obligations as it is neither relevant nor responsive.  As previously discussed on April 3, and set forth in the prior correspondence on this matter, Harrington takes issue with Merrill redacting text other than for privilege and, without waiver, Harrington demands written explanations for redactions based on purported "non-responsiveness" and/or "non-relevance."

Compliance Deficiency No. 12 - Merrill represented that it produced the requested documents on April 10, 2024.  As set forth in the attached letter, however, Merrill's supplemental productions only raise further deficiencies and belie your representation.

Compliance Deficiency No. 13 – Merrill represented that it produced the requested document.

Compliance Deficiency No. 14 – You stated that you believed it was "unclear" what offerings Harrington was referring to despite Harrington providing the citation to such offerings, but that, in any event, you do not believe the request is responsive to Harrington's Requests for Production and that Merrill will not search for any such documents.  You offered a "compromise" to produce (i) a form agreement used by DMA customers in the U.S. and Canada; and (ii) a training manual Merrill provided to customers in Canada regarding a "range of topics" for DMA customers, but only on the condition that production of same would fully satisfy this request.  We agreed to discuss this offer and let you know whether it is sufficient – it is not.  Harrington demands unconditional production of the documents which Merrill has now identified, and that Merrill produce all policies, manuals, and procedures related to the multiple offerings related to customer trading set forth in MERRILL_03410 REDACTED ▮  Please be prepared to respond during our already-scheduled meet and confer tomorrow, Wednesday, April 24, at 5:30 p.m.

Compliance Deficiency No. 15 – While Merrill had previously agreed to include algorithms, parameters, and heuristics as topics in the interviews Merrill is conducting, you indicated that Merrill has not "found a way" to do so and stated your position that you only agreed to look into whether there was a simple way to obtain algorithms monitoring trading, but that there was not.  We reiterated that Merrill's position is in contravention of its discovery obligations:  Merrill has not produced any compliance or

monitoring algorithms – or heuristics or other guidance – used by Merrill during the Relevant Period.  You have nonetheless indicated that Merril is not producing such documents.  We are therefore at an impasse.

Given the foregoing, and apart from the areas where responses are sought before or during tomorrow evening's meet and confer, we propose the following joint statement:

Joint Statement:   Harrington raised deficiencies in a March 26, 2024 letter and the parties met and conferred by video conference on April 3, 2024 and April 22, 2024 but were unable to resolve their disagreement and are at an impasse as to whether Merrill must search for and produce (i) first-level alerts related to spoofing in Concordia; (ii) daily and monthly reports sent to supervisors referenced in Merrill's compliance-related documents; (iii) documents that show how Merrill monitored customer trading to ensure its customers were not engaged in spoofing; and (iv) compliance and monitoring algorithms – including parameters, heuristics, and other guidance – used by Merrill during the Relevant Period.

<image001.jpg>

Thomas Filardo  ·  Partner
Warshaw Burstein, LLP
575 Lexington Avenue  ·  New York, NY 10022  ·
www.wbny.com
Direct Telephone:  212-984-7806  ·  Facsimile:  212-972-9150
E-Mail:   tfilardo@wbny.com

**From:** Martin, Bill <wmartin@omm.com>
**Sent:** Monday, April 22, 2024 10:22 AM
**To:** Thumim, Leron <lthumim@wbny.com>; Aditi Shah <AShah@hsgllp.com>; Gregory J. Dubinsky <gdubinsky@hsgllp.com>
**Cc:** Jonathon R. La Chapelle <jlachapelle@hsgllp.com>; Andrew C. Indorf <aindorf@hsgllp.com>; Matthew Gurgel <mgurgel@hsgllp.com>; James Wes Christian <jchristian@christianattarlaw.com>; Ardalan Attar <aattar@christianattarlaw.com>; Pollack, Alan <APollack@wbny.com>; Ennis, Felicia <FEnnis@wbny.com>; Rudzin, Abby F. <arudzin@omm.com>
**Subject:** RE: Harrington

Leron – we're not willing to discuss our investigation process.  We have been preparing a written response to the email you sent late Thursday night, but if you prefer to hear our positions orally, that's fine.  We note that Merrill produced documents last week that clear up many of your concerns below.

William J. Martin
O: +1-212-728-5942
C: +1-917-582-2461
wmartin@omm.com

---

**From:** Thumim, Leron <lthumim@wbny.com>
**Sent:** Monday, April 22, 2024 10:03 AM
**To:** Aditi Shah <AShah@hsgllp.com>; Martin, Bill <wmartin@omm.com>; Gregory J. Dubinsky <gdubinsky@hsgllp.com>
**Cc:** Jonathon R. La Chapelle <jlachapelle@hsgllp.com>; Andrew C. Indorf <aindorf@hsgllp.com>; Matthew Gurgel <mgurgel@hsgllp.com>; James Wes Christian <jchristian@christianattarlaw.com>; Ardalan Attar <aattar@christianattarlaw.com>; Pollack, Alan <APollack@wbny.com>; Ennis, Felicia <FEnnis@wbny.com>; Rudzin, Abby F. <arudzin@omm.com>
**Subject:** RE: Harrington

[EXTERNAL MESSAGE]

Bill,

We did not receive a response to the below email regarding the results of Merrill's investigation into and ongoing production of critical compliance documents, nor did we receive a response to our request for a meet-and-confer to discuss these issues. During today's meet-and-confer, please also be prepared to discuss the results of Merrill's investigation and why Merrill has been unable to provide any update in the almost three weeks since our April 3, 2024 meet-and-confer.

Best,



Leron Thumim  ·  Counsel
Warshaw Burstein, LLP
575 Lexington Avenue  ·  New York, NY 10022
·  www.wbny.com
Direct Telephone:  212-984-7833  ·  Facsimile:  212-972-9150
E-Mail:  lthumim@wbny.com

---

**From:** Thumim, Leron
**Sent:** Friday, April 19, 2024 6:18 AM
**To:** 'Aditi Shah' <AShah@hsgllp.com>; 'Martin, Bill' <wmartin@omm.com>; 'Gregory J. Dubinsky' <gdubinsky@hsgllp.com>
**Cc:** 'Jonathon R. La Chapelle' <jlachapelle@hsgllp.com>; 'Andrew C. Indorf' <aindorf@hsgllp.com>; 'Matthew Gurgel' <mgurgel@hsgllp.com>; 'James Wes Christian' <jchristian@christianattarlaw.com>; 'Ardalan Attar' <aattar@christianattarlaw.com>; Pollack, Alan <APollack@wbny.com>; Ennis, Felicia <FEnnis@wbny.com>; 'Rudzin, Abby F.' <arudzin@omm.com>
**Subject:** RE: Harrington

Abby and Bill,

Further to our below correspondence, please provide times for a meet-and-confer on Monday to discuss Merrill's production of documents and information related to compliance.

Best,



Leron Thumim · Counsel
Warshaw Burstein, LLP
575 Lexington Avenue · New York, NY 10022
· www.wbny.com
Direct Telephone:  212-984-7833  ·  Facsimile:  212-972-9150
E-Mail:  lthumim@wbny.com

---

**From:** Thumim, Leron
**Sent:** Thursday, April 18, 2024 9:18 PM
**To:** Aditi Shah <AShah@hsgllp.com>; Martin, Bill <wmartin@omm.com>; Gregory J. Dubinsky <gdubinsky@hsgllp.com>
**Cc:** Jonathon R. La Chapelle <jlachapelle@hsgllp.com>; Andrew C. Indorf <aindorf@hsgllp.com>; Matthew Gurgel <mgurgel@hsgllp.com>; James Wes Christian <jchristian@christianattarlaw.com>; Ardalan Attar <aattar@christianattarlaw.com>; Pollack, Alan <APollack@wbny.com>; Ennis, Felicia <FEnnis@wbny.com>; Rudzin, Abby F. <arudzin@omm.com>
**Subject:** RE: Harrington

Abby and Bill,

We write to follow up on the parties meet-and-confer discussions regarding Merrill's ongoing production of compliance-related documents.

**Merrill's Central Repository and the Lack of Compliance Alerts in Merrill's Production:**  In our March 26 letter, we noted that Merrill had previously represented that (i) it maintained a central repository of compliance-related alerts and escalation reports, but (ii) a search of the repository did not reveal any alerts or escalation reports for trading in Concordia, and that in any event, the repository would not contain a complete record of all alerts or exception reports generated by Merrill during the Relevant Period.  Our March 26 letter noted that the custodial searches that Merrill conducted—with the hope that doing so might find additional alerts and escalation reports absent from the repository—turned up only a single alert.  During the parties' most recent meet-and-confer on this issue, we expressed our concern:  that given the lack of completeness of the repository, the lack of alerts or escalation reports produced by Merrill might mean that no other alerts were generated, or it might mean that the alerts existed, but either they were deleted, or Merrill failed to search the correct

location.  During our conversation, you stated that—although you believed a reasonable search of the central repository had been conducted and all relevant documents were produced—you have undertaken an investigation and are conducting additional interviews of Merrill personnel to inquire further, and that the investigation would explore topics such as whether there are any other locations where Merrill might have stored (or other custodians who might have possessed) alerts, escalation reports, or daily/monthly reports as referenced in Merrill's policies.  We agreed that if your investigation reveals that such documents may still exist within Merrill's possession or control, we would discuss the scope of any additional search for and production of ESI by Merrill.  You also confirmed that you are open to Plaintiff deposing a document retention custodian who could speak to Merrill's preservation of the relevant documents.

Please, by <u>Friday, April 19</u>, provide an update on the status of the interviews regarding the central repository—if they are not complete, please provide a date by which the interviews will be complete and Merrill will be able to report back to us regarding their results.

With respect to these alerts and reports, we also discussed the issue of potential spoliation.  As we explained, Plaintiff needs to understand whether alerts and escalation reports were never generated or whether they were generated but no longer exist.  You contended there is no spoliation issue if any of these documents were deleted between 2016 and the time the action was commenced in 2021.  Not so.  On the contrary, FINRA Rule 4511 establishes a default preservation obligation of <u>six years</u>.  Given that Harrington initiated this action five years after the beginning of the Relevant Period, FINRA rules obligated Merrill to preserve relevant records until the commencement of this litigation, and spoliation obligations required Merrill to preserve them thereafter.  Merrill must either locate these documents, or confirm that the relevant records from the Relevant Period have been destroyed or otherwise no longer exist.

**Remaining Deficiencies:**  During the parties' meet and confer on these issues, we also discussed each of the following discrete deficiencies set forth in Harrington's letter of March 26, 2024, and reached the following agreements.

1. Compliance Deficiency No. 1 ( REDACTED —you agreed to conduct additional searches if it turns out that its initial searches did not encompass the correct custodians.
2. Compliance Deficiency No. 2 (" REDACTED )— you agreed to consider asking in your interviews whether the subject "Quote Manipulation" test encompasses spoofing.
3. Compliance Deficiency No. 4 ( REDACTED )—with respect to this deficiency, we asked whether you would add "layering" as a search term as a means of ascertaining whether the lack of documents is due to the fact that

they do not exist.  You agreed to consider adding "layering" as a search term once we send you documents to support that Merrill had an obligation to maintain these alerts for six years, which we have done above.

4. Compliance Deficiency No. 5 (███████ REDACTED ████████)—you agreed to consider adding "SMARTS" as a search term, if you are otherwise unable to locate a central repository of alerts that existed prior to the one created the fall of 2016.  Indeed, we note that Merrill has also failed to produce documents regarding how its trade surveillance systems that were in place during the Relevant Period worked, or the criteria that was used to generate alerts.  If Merrill cannot locate these documents through addition of "SMARTS" as a search term, it must conduct go-get searches to identify these critical compliance documents.

5. Compliance Deficiency No. 6 (███████ REDACTED ████████ and related documents)—you agreed to search for this document.

6. Compliance Deficiency No. 7 (documents related to the 2014 FX Consent Order)—you agreed to conduct a reasonable search to locate the Proactive Application of Remedial Measures Plan and will produce it if it refers to the monitoring of alerts.

7. Compliance Deficiency Nos. 8-10 (additional documents related to the 2014 FX Consent Order)—you likewise agreed to conduct a reasonable search for the requested items relating to the FX Consent Order and will produce if they refer to the monitoring of alerts.

8. Compliance Deficiency No. 11 (documents with unexplained redactions)—you agreed to log any privileged information and to provide explanations for redactions based on non-relevance.

9. Compliance Deficiency No. 12 (██████ REDACTED ████████)—while you contend the requested policy concerns trading algorithms, you agreed to look into whether there was a policy in place in 2016 to assess whether such algorithms were compliant.

10. Compliance Deficiency No. 13 (██████ REDACTED ██████)—you agreed to look into whether the ████ REDACTED ████ policy concerns compliance policies and controls that would have been in place in connection with the kinds of customer trading relevant to Harrington's claims.

11. Compliance Deficiency No. 14 (DEA/DMA policies, manuals, and procedures)—███████████████ REDACTED ███████████████
██████████████████████████████████

Please produce all policies, manuals, and procedures related to the multiple offerings set forth therein.  In addition, you stated your belief that communications by Merrill to customers not to use direct market access to manipulate the market are likely to be contained in a customer contract, and accordingly, you agreed to attempt to locate an example of such a contract.

12. Compliance Deficiency No. 15 (monitoring algorithms, parameters, and heuristics)—you agreed to include this as a topic in the interviews you are conducting.  As noted above, Merrill has yet to produce critical documents regarding the workings of the applicable trade surveillance systems Merrill had

in place during the Relevant Period.  This must be remedied.

We look forward to receiving the items above and an update on the status of your investigation, which you agreed to provide this week.  Plaintiff reserves all rights.

Best,



Leron Thumim · Counsel
Warshaw Burstein, LLP
575 Lexington Avenue · New York, NY 10022
· www.wbny.com
Direct Telephone:  212-984-7833 · Facsimile:  212-972-9150
E-Mail:  lthumim@wbny.com

---

**From:** Aditi Shah <AShah@hsgllp.com>
**Sent:** Wednesday, April 3, 2024 12:47 PM
**To:** Martin, Bill <wmartin@omm.com>; Gregory J. Dubinsky <gdubinsky@hsgllp.com>
**Cc:** Jonathon R. La Chapelle <jlachapelle@hsgllp.com>; Andrew C. Indorf <aindorf@hsgllp.com>; Matthew Gurgel <mgurgel@hsgllp.com>; James Wes Christian <jchristian@christianattarlaw.com>; Ardalan Attar <aattar@christianattarlaw.com>; Pollack, Alan <APollack@wbny.com>; Thumim, Leron <lthumim@wbny.com>; Ennis, Felicia <FEnnis@wbny.com>; Rudzin, Abby F. <arudzin@omm.com>
**Subject:** RE: Harrington

Thank you.  I will send a calendar invite with a Zoom link shortly.

Aditi Shah
HOLWELL SHUSTER & GOLDBERG LLP
Office: (646) 837-8389 | Mobile: (914) 433-6386
425 Lexington Ave | New York, New York 10017 | hsgllp.com

---

**From:** Martin, Bill <wmartin@omm.com>
**Sent:** Wednesday, April 3, 2024 12:44 PM
**To:** Aditi Shah <AShah@hsgllp.com>; Gregory J. Dubinsky <gdubinsky@hsgllp.com>
**Cc:** Jonathon R. La Chapelle <jlachapelle@hsgllp.com>; Andrew C. Indorf <aindorf@hsgllp.com>; Matthew Gurgel <mgurgel@hsgllp.com>; James Wes Christian <jchristian@christianattarlaw.com>; Ardalan Attar <aattar@christianattarlaw.com>; Pollack, Alan <APollack@wbny.com>; Thumim, Leron <lthumim@wbny.com>; Ennis, Felicia <FEnnis@wbny.com>; Rudzin, Abby F. <arudzin@omm.com>
**Subject:** RE: Harrington

Sure, that time works for us.

William J. Martin

O: +1-212-728-5942
C: +1-917-582-2461
wmartin@omm.com

___

**From:** Aditi Shah <AShah@hsgllp.com>
**Sent:** Wednesday, April 3, 2024 12:37 PM
**To:** Martin, Bill <wmartin@omm.com>; Gregory J. Dubinsky <gdubinsky@hsgllp.com>
**Cc:** Jonathon R. La Chapelle <jlachapelle@hsgllp.com>; Andrew C. Indorf <aindorf@hsgllp.com>; Matthew Gurgel <mgurgel@hsgllp.com>; James Wes Christian <jchristian@christianattarlaw.com>; Ardalan Attar <aattar@christianattarlaw.com>; Pollack, Alan <APollack@wbny.com>; Thumim, Leron <lthumim@wbny.com>; Ennis, Felicia <FEnnis@wbny.com>; Rudzin, Abby F. <arudzin@omm.com>
**Subject:** RE: Harrington

[EXTERNAL MESSAGE]

Bill,

Thank you for your email.  We are considering your response regarding the algorithm codes and your proposal on additional ESI searches.  Pursuant to Leron's email from Monday, April 1, we would like for the focus of our meet-and-confer this afternoon to be on the issues raised in our March 26 letter to you, and to schedule a separate time to discuss your proposal on the additional ESI searches.  Would you be available to discuss at 3pm ET tomorrow, right before our 4pm meet-and-confer with all defendants?

Thank you,
Aditi

Aditi Shah
HOLWELL SHUSTER & GOLDBERG LLP
Office: (646) 837-8389 | Mobile: (914) 433-6386
425 Lexington Ave | New York, New York 10017 | hsgllp.com

___

**From:** Martin, Bill <wmartin@omm.com>
**Sent:** Tuesday, April 2, 2024 5:11 PM
**To:** Gregory J. Dubinsky <gdubinsky@hsgllp.com>
**Cc:** Aditi Shah <AShah@hsgllp.com>; Jonathon R. La Chapelle <jlachapelle@hsgllp.com>; Andrew C. Indorf <aindorf@hsgllp.com>; Matthew Gurgel <mgurgel@hsgllp.com>; James Wes Christian <jchristian@christianattarlaw.com>; Ardalan Attar <aattar@christianattarlaw.com>; Pollack, Alan <APollack@wbny.com>; Thumim, Leron <lthumim@wbny.com>; Ennis, Felicia <FEnnis@wbny.com>; Rudzin, Abby F. <arudzin@omm.com>
**Subject:** RE: Harrington

We write to follow up on last week's meet and confer.

On the first topic you raise below, in 2016, the computer code underlying Merrill's stock trading algorithms was being overwritten rather than preserved.  Therefore, any code from that period was gone years before Harrington filed this action in 2021.

On the second topic, as we discussed, Merrill Lynch proposes the following compromise on additional ESI searches:

Merrill Lynch will search the ESI for the relevant period of Todd Baebler.  Todd is a Director for Bank of America's Global Markets Division for Equity Execution Services, which includes the electronic trading platform for equities in the Americas.  Todd has been in that role since before 2016, and during 2016 was the primary contact point between Merrill Lynch and **[REDACTED]**  He also manages the client relationships with clients who use the electronic trading platform and **[REDACTED]** services.  Merrill Lynch will use the following search terms:

> ("Concordia" OR "CXRX" OR "CXR") AND spoof!
>
> ("Concordia" OR "CXRX" OR "CXR") AND bait!
>
> ("Concordia" OR "CXRX" OR "CXR") AND cancel!
>
> ("Concordia" OR "CXRX" OR "CXR") AND "market movement"

Merrill Lynch will produce any document discussing, mentioning, or referring to spoofing in Concordia, whether the document is a communication with or about a customer or with or about **[REDACTED]**  We will redact customer names and replace with the same unique identifier used in the trading data, to the extent we are able to do so.  If you agree to our compromise proposal about "the 11" customers/accounts you previously identified, we will not redact their names.


William J. Martin
O: +1-212-728-5942
C: +1-917-582-2461
wmartin@omm.com

---

**From:** Gregory J. Dubinsky <gdubinsky@hsgllp.com>
**Sent:** Sunday, March 31, 2024 8:26 PM
**To:** Rudzin, Abby F. <arudzin@omm.com>; Martin, Bill <wmartin@omm.com>
**Cc:** Aditi Shah <AShah@hsgllp.com>; Jonathon R. La Chapelle <jlachapelle@hsgllp.com>; Andrew C. Indorf <aindorf@hsgllp.com>; Matthew Gurgel <mgurgel@hsgllp.com>; James Wes Christian <jchristian@christianattarlaw.com>;

Ardalan Attar <aattar@christianattarlaw.com>; Pollack, Alan <APollack@wbny.com>;
Thumim, Leron <lthumim@wbny.com>; Ennis, Felicia <FEnnis@wbny.com>
**Subject:** Harrington

[EXTERNAL MESSAGE]

Counsel:

I write to follow up on our most recent meet-and-confers and to confirm our next steps
in advance of our next meet-and-confer scheduled for 4pm next Wednesday, April 3.

First, you stated during our meet-and-confer on March 18 that your client informed
you that you do not have the 2016 trading algorithm codes to produce.  Is it your
position that underline(none) of the code underlying the algorithms relevant to trading in
Concordia during the Relevant Period (including, for example, routing algorithms or
algorithms involved in portions of the transaction or in certain Merrill-controlled
venues or ATSs) exist any longer?  If so, when were they deleted or destroyed?  We are
concerned about potential spoliation issues, particularly given that Merrill has known
that the use of high-speed algorithms has been part of Harrington's claims since
January 2021 when the original complaint was filed.  *See, e.g.*, Dkt. 5 at 10.

Second, to confirm our next steps in advance of our next meet-and-confer, you agreed
during our discussion on March 27 to (1) investigate the identity of the additional
custodians who would have relevant documents and communications regarding client
trading in Concordia during the Relevant Period based on, for the purpose of this
preliminary assessment, the list of 11 client IDs and 11 account IDs identified by us in
our February 20 letter, and (2) investigate who the additional custodians would be who
would have relevant documents and communications regarding [REDACTED] – which, as
discussed, include documents regarding the services provided by [REDACTED] to Merrill and
its clients, the relationship between Merrill and [REDACTED] as relevant to Concordia during
the Relevant Period, and communications between Merrill and [REDACTED] regarding client
trading in Concordia during the Relevant Period – starting with, for sake of efficiency,
the additional custodians you may find based on your investigation in relation to (1).
Please let us know promptly if you disagree on any of these points.  Thank you.

Best,
Greg

Gregory J. Dubinsky
HOLWELL SHUSTER & GOLDBERG LLP
Office: (646) 837-8554 | Bio
425 Lexington Ave | New York, New York 10017 | hsgllp.com

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for
the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is
prohibited. If you believe that you have received this email in error, please notify the sender immediately and

delete it from your system.

---

NOTICE: This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential or exempt from disclosure under applicable law. If you are not the intended recipient of this message, or the employee or agent responsible for delivering this message to the intended recipient, you are advised that any dissemination, distribution or copying of this message, or acting on the information contained herein, may be a violation of applicable law and is strictly prohibited. If you have received this message in error, please notify the sender immediately by replying to this message.

---

NOTICE: This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential or exempt from disclosure under applicable law. If you are not the intended recipient of this message, or the employee or agent responsible for delivering this message to the intended recipient, you are advised that any dissemination, distribution or copying of this message, or acting on the information contained herein, may be a violation of applicable law and is strictly prohibited. If you have received this message in error, please notify the sender immediately by replying to this message.

---

NOTICE: This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential or exempt from disclosure under applicable law. If you are not the intended recipient of this message, or the employee or agent responsible for delivering this message to the intended recipient, you are advised that any dissemination, distribution or copying of this message, or acting on the information contained herein, may be a violation of applicable law and is strictly prohibited. If you have received this message in error, please notify the sender immediately by replying to this message.

---

NOTICE: This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential or exempt from disclosure under applicable law. If you are not the intended recipient of this message, or the employee or agent responsible for delivering this message to the intended recipient, you are advised that any dissemination, distribution or copying of this message, or acting on the information contained herein, may be a violation of applicable law and is strictly prohibited. If you have received this message in error, please notify the sender immediately by replying to this message.

---

NOTICE: This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential or exempt from disclosure under applicable law. If you are not the intended recipient of this message, or the employee or agent responsible for delivering this message to the intended recipient, you are advised that any dissemination, distribution or copying of this message, or acting on the information contained herein, may be a violation of

applicable law and is strictly prohibited. If you have received this message in error, please notify the sender immediately by replying to this message.
<Spoofing and Layering Exception Report Review.pdf>
<Spoofing.pdf>
<Spoofing and Layering Review.pdf>

_____

NOTICE: This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential or exempt from disclosure under applicable law. If you are not the intended recipient of this message, or the employee or agent responsible for delivering this message to the intended recipient, you are advised that any dissemination, distribution or copying of this message, or acting on the information contained herein, may be a violation of applicable law and is strictly prohibited. If you have received this message in error, please notify the sender immediately by replying to this message.

_____

NOTICE: This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential or exempt from disclosure under applicable law. If you are not the intended recipient of this message, or the employee or agent responsible for delivering this message to the intended recipient, you are advised that any dissemination, distribution or copying of this message, or acting on the information contained herein, may be a violation of applicable law and is strictly prohibited. If you have received this message in error, please notify the sender immediately by replying to this message.

_____

NOTICE: This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential or exempt from disclosure under applicable law. If you are not the intended recipient of this message, or the employee or agent responsible for delivering this message to the intended recipient, you are advised that any dissemination, distribution or copying of this message, or acting on the information contained herein, may be a violation of applicable law and is strictly prohibited. If you have received this message in error, please notify the sender immediately by replying to this message.



**ALAN M. POLLACK**
PARTNER

DIRECT DIAL: 212-984-7794
EMAIL: apollack@wbny.com

WARSHAW BURSTEIN, LLP
575 Lexington Avenue
New York, NY 10022
(212) 984-7700
www.wbny.com

March 26, 2024

**BY EMAIL**

Abby F. Rudzin
O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY 10036
arudzin@omm.com

Re:     *Harrington Global Opportunity Fund, Ltd. v. BofA Securities, Inc.*, No. 21-CV-761

Dear Abby:

On behalf of Plaintiff Harrington Global Opportunity Fund, Ltd. ("Harrington"), I write to follow up on my March 1, 2024 letter to you, in which I outlined certain continuing deficiencies in Merrill's discovery responses and productions. Because Harrington had only just received Merrill's production of compliance-related documents and our review thereof was ongoing, I noted in my March 1 letter that once our review was complete, I would write under separate cover to address remaining deficiencies in Merrill's production of compliance-related documents. I do so here and reiterate our continued and unallayed concerns about Merrill's failure to comply with basic discovery obligations—a failure rendered all the more acute by Merrill's apparently inaccurate March 1 representation to the Court that it has substantially completed its document productions. The most glaring deficiency, of course, is Merrill's utter failure to produce (i) compliance-related alerts; (ii) daily or monthly reports regarding potential spoofing; or (iii) escalation reports or other follow-up regarding alerts or daily reports. Further, below is a list of ***fifteen additional demonstrable deficiencies*** in Merrill's production of compliance-related documents, which we expect Merrill to address promptly. Unless otherwise specified, the documents sought are responsive to Harrington's Requests for Production Nos. 1 and 17-19.

As always, Harrington reserves all rights.

{1666007.1 }

**Warshaw Burstein, LLP**

Abby F. Rudzin, Esq.
March 26, 2024
Page 2 of 8

### Merrill's Failure to Produce Alerts, Daily/Monthly Reports, or Escalation Reports

Unlike other Defendants in this action, Merrill has failed to produce critical compliance-related documents related to spoofing in Concordia. During prior meet-and-confers in December 2023, you indicated that there was a central repository in which some of these documents were stored. You further indicated—without offering specifics—that the central repository was destroyed but that copies of the relevant documents it contained might still be present in custodial emails. You suggested that in an attempt to recover those documents, Merrill engaged in custodial searches of the emails of relevant personnel and asked us to wait until your production of compliance-related files to see if it had the documents Harrington sought. We have completed review of your recent production of compliance-related documents, and it does <u>not</u> contain the highly relevant and critical compliance documents that Merrill must produce.

**Alerts:** We have been able to identify only <u>one</u> alert regarding customer trading in Concordia in Merrill's production—a single Excel file with the Bates number MERRILL 03050 which appears to be an alert ███████ REDACTED ███████ ████████. By contrast, CIBC has produced thousands of alerts for customer trading in Concordia—a number that stands in even starker contrast to Merrill's virtually-nonexistent production given that CIBC's production of alerts does not encompass all days during the Relevant Period. Either one of three things is true: (i) Merrill has failed to produce alerts regarding potential spoofing in Concordia that Merrill possesses; (ii) Merrill once possessed alerts regarding potential spoofing in Concordia, but Merrill cannot produce them because they have since been destroyed; or (iii) Merrill <u>never</u> generated alerts regarding potential spoofing in Concordia—if this is the case, Merrill must confirm so that Harrington can make appropriate inferences regarding the adequacy of Merrill's compliance program.

**Daily/Monthly Reports:** Merrill's own production repeatedly refers to daily reports that were sent to supervisors. For example, the document with the Bates number Merrill 02420 refers to processes in which supervisors ████████ REDACTED ████████." According to this document, it was then the supervisor's obligation to ████████ REDACTED ████████. *Id.* Merrill's compliance procedures also required the trading supervisor to REDACTED ████████████████████████████████████████████." *Id.* We are unable to identify any daily reports in Merrill's production.

According to another document—with the Bates number MERRILL 02433—Merrill's compliance policies required that trading supervisors ████████ REDACTED ███████ ██████████████████████." This policy requires the trading supervisor to REDACTED ████████████████. *Id.* The policy further requires supervisors to REDACTED

# Warshaw Burstein, LLP

Abby F. Rudzin, Esq.
March 26, 2024
Page 3 of 8

**REDACTED**," and also mandates that the supervisors **REDACTED**" *Id.*

**Escalation Reports:**   The Merrill policies discussed require that **REDACTED**. We have been unable to identify any escalation reports in Merrill's production.

**Potential Spoliation:**  During a pair of meet-and-confers in December 2023, you indicated that there was a central repository for certain compliance-related documents (though it was unclear whether the repository stored alerts, daily/monthly reports, escalation reports, or some combination of the three).   And although you said that the central repository was no longer accessible, you agreed to undertake custodial searches to see whether the relevant documents could be found in the email accounts of Merrill employees who worked in compliance during the Relevant Period.  That effort has failed, and with the exception of the solitary alert discussed above, Merrill's production remains utterly and glaringly devoid of these critical compliance documents.

To the extent that the documents may have been destroyed, Merrill must:  (i) provide further information regarding where those documents were kept and when they were destroyed; (ii) detail the steps taken to attempt to recover the documents from the central repository and, if those steps are inadequate, supplement those steps with additional efforts; and (iii) work with plaintiff's counsel in good faith to make further efforts to recover the lost files from custodial email accounts.  As part of this, Merrill must answer the following questions regarding their failure to retain alerts, daily/monthly reports, and escalation reports regarding potential spoofing in Concordia:

- If such documents existed in Merrill's custody or control, when were they deleted or destroyed?

- If such documents existed in Merrill's custody or control, why were they deleted or destroyed?

- If such documents have been destroyed, what steps, if any, has Merrill taken to determine whether the information is recoverable?

- Were such documents ever maintained or within the custody or control of a nonparty, such as third-party vendor?

- Who at Merrill is involved in the retention and/or deletion of such documents?  In addition, please provide copies of all relevant document-retention polices.

- If such documents <u>never</u> existed in Merrill's custody or control, please provide all relevant evidence showing that such documents did not exist.

# Warshaw Burstein, LLP

Abby F. Rudzin, Esq.
March 26, 2024
Page 4 of 8

As you well know—and as other Defendants have acknowledged by producing such documents—Harrington is entitled to documents relevant to whether Defendants "are primarily liable for following their customer[s'] instructions" to "disseminate and/or effect false and misleading Baiting Orders" and "Executing Orders" because Defendants "knew or recklessly ignored" that their customers' market activity was "part of a spoofing scheme." SAC ¶¶ 129, 137; *see* MTD Op., Dkt. 147, at 17 ("The SAC details a pattern of spoofing activity that strongly suggests Defendants shirked [their] duties."). Either Merrill has additional alerts and reports related to trading in Concordia to which Harrington is entitled but Merrill has yet to produce, or Merrill <u>never generated such alerts</u>, in which case Harrington is entitled to confirmation of that fact. In any event, Merrill must promptly address its deficiency and/or provide answers.

## **Additional Discrete Deficiencies in Merrill's Production of Compliance-Related Documents**

**Compliance Deficiency No. 1:** Merrill has produced PowerPoint documents entitled " REDACTED As you know, however, the Relevant Period in this action covers January 27, 2016 through November 15, 2016. Please provide documents reflecting testing results for the entirety of the Relevant Period.

**Compliance Deficiency No. 2:** Only three of the PowerPoints that Merrill produced REDACTED REDACTED (MERRILL_02727, MERRILL_02779, and MERRILL_02836.) And as these documents reflect, REDACTED . (*Id.*) *First*, if this test was conducted during or for any other months of the Relevant Period, please produce documents reflecting results for any additional months. *Second*, if this test was conducted REDACTED REDACTED please produce all documents reflecting such testing. *Third*, each of these three PowerPoints reflects that the REDACTED REDACTED (*Id.*) Please produce all documents and communications underlying this determination.

**Compliance Deficiency No. 3:** The REDACTED REDACTED dated April 2016 that Merrill produced— REDACTED notes as follows: REDACTED REDACTED ." (MERRILL_02464.) Please produced this REDACTED , and all related documents and communications. *See* Harrington RFP No. 18 ("All Regulatory communications and regulatory review reports that reference any portion of the Relevant Period.").

**Compliance Deficiency No. 4:** Additionally, Merrill produced a document entitled REDACTED ," which reflects REDACTED for 2016. (MERRILL_03242-03244.) This "summary" document identifies REDACTED

## Warshaw Burstein, LLP



(MERRILL 03243.)  For this deficiency, the summary identifies the following remediation plan: REDACTED ."  (*Id.*; *see also* MERRILL 03407 (Nov. 11, 2016 email chain stating, *inter alia*, that " REDACTED ").)  Please produce the referenced REDACTED .

*See* Harrington RFP No. 17 ("Compliance and procedure manuals including but not limited to Merrill's policies, procedures, and compliance measures in connection with algorithmic trading, short selling, and spoofing.").

**Compliance Deficiency No. 5:**  With respect to the above-mentioned remediation plan, in a November 11, 2016 email, a Merrill employee noted that REDACTED (MERRILL 03407.)  Please produce all documents concerning the referenced process in which REDACTED —including without limitation all alerts and reports concerning Concordia.

**Compliance Deficiency No. 6:**  Merrill also produced various drafts of a document entitled REDACTED " that relates to three lines of business: REDACTED Other documents that Merrill has produced indicate that there is also a REDACTED so please produce the "Market Misconduct Risk Assessment Summary" related to any REDACTED Please also produce all drafts and final versions of these REDACTED " documents, or confirm that you have already done so.

**Compliance Deficiency No. 7:**  You have indicated that the "consent order" referred to in Merrill's document production is the 2014 FX Consent Order with the Office of Comptroller of the Currency (the "2014 FX Consent Order").  Article IX of the 2014 FX Consent Order required Merrill to submit a "written plan to ensure that the Bank proactively uses a risk-based approach to apply Employee market conduct remedial measures in this Order to other wholesale trading in which the Bank acts as principal and other benchmark activities," which the Consent Order defines as the "Proactive Application of Remedial Measures Plan."  (2014 FX Consent Order, pp. 17-18.)



Warshaw Burstein, LLP

Abby F. Rudzin, Esq.
March 26, 2024
Page 6 of 8

Please produce the Proactive Application of Remedial Measures Plan that was submitted in compliance with the 2014 FX Consent Order—indeed, ██████ REDACTED ██████ ███████████████████████.

**Compliance Deficiency Nos. 8-10:** Other documents apparently flowing from the 2014 FX Consent Order do not appear to have been produced:

- *First*, MERRILL_03415 states that ████ REDACTED ████ ██████████████████████ ” and that ██████ REDACTED ██████ ████████████████████████████ ” Please produce all documents relating to this REDACTED ████████████████ ,” including all documents reflecting ████ REDACTED ████ ██████████████

- *Second*, MERRILL_3410 states that, ████ REDACTED ████ ██████████████████████████████████ ” This document continues as follows: ████ REDACTED ████ ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ ” Please produce all documentation showing that ████ REDACTED ████ ██████ ,” as well as all documents evidencing that ████ REDACTED ████ ████████████████ ”

- *Third*, MERRILL_3410 states further that the " ████ REDACTED ████ ██████████ and the " ████ REDACTED ████ ██████████ ” Please produce this " ████ REDACTED ████ ████ ."

**Compliance Deficiency No. 11:** Merrill's Production VOL008 contains custodial documents consisting of emails with Excel spreadsheet attachments that appear to REDACTED . Yet these Excel files have been extensively and improperly redacted. (MERRILL_03410, MERRILL_03461, and MERRILL_03534.) Merrill has provided no basis for the redactions and

# Warshaw Burstein, LLP

Abby F. Rudzin, Esq.
March 26, 2024
Page 7 of 8

has yet to produce any privilege log.  Please re-produce these files without redactions or provide the basis for the redactions.

**Compliance Deficiency No. 12:**  MERRILL_03413 notes that  REDACTED

REDACTED

" Merrill's   REDACTED

and all documents associated therewith are directly responsive to Harrington's Request for Production No. 17 ("Compliance and procedure manuals including but not limited to Merrill's policies, procedures, and compliance measures in connection with algorithmic trading, short selling, and spoofing."), and must be produced.

**Compliance Deficiency No. 13:**  In addition, MERRILL_03470 references an "REDACTED REDACTED," policy.  Please produce this policy as well, which is likewise responsive to Harrington's Request for Production No. 17.

**Compliance Deficiency No. 14:**  Although Merrill does not appear to have produced any DEA/DMA policies, manuals, or procedures that relate to direct-market access that Merrill offers its customers—despite such documents being clearly responsive to Harrington's Request for Production No. 17—MERRILL_03410 nonetheless sets forth, in detail, various offerings related to customer trading.  Please produce all DEA/DMA policies, manuals, procedures, or any other documents applicable to customer trading, including without limitation that relate to the services and platforms set forth at length in MERRILL_03410.

**Compliance Deficiency No. 15:**  Although Harrington's Request for Production Nos. 14, 16, and 17 seek the production of algorithms which Merrill utilized to monitor trading to ensure that they complied with applicable laws, statutes, regulations, policies, and procedures, Merrill has yet to produce any compliance or monitoring algorithms.  Please promptly produce all algorithms used by Merrill to monitor trading of Concordia during the Relevant Period, including the algorithms used to generate alerts and escalation reports, and the algorithms—or heuristics or other guidance—used to determine whether to escalate such alerts or exception reports.

\*     \*     \*

Again, Merrill's deadline to certify substantial completion of its production came and went on March 1.  And given the imminent fact-discovery cutoff, Merrill's ongoing failure to produce relevant documents continues to cause Harrington substantial prejudice.  Please confirm by Friday, March 29, 2024, therefore, that you will:  (i) produce all responsive, non-privileged documents set forth above; and (ii) provide answers regarding any responsive non-privileged documents that Merrill failed to maintain.  To the extent that Merrill disputes that it owes Harrington any of the above-described materials, please inform Harrington by Wednesday, March 27, 2024 and provide proposed times and dates to meet and confer regarding your position.

{1666007.1 }

Warshaw Burstein, LLP

Abby F. Rudzin, Esq.
March 26, 2024
Page 8 of 8

Sincerely,

 /s/ *Alan M. Pollack*
Alan M. Pollack

{1666007.1 }

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HARRINGTON GLOBAL OPPORTUNITY FUND, LIMITED, | |
| Plaintiff, | Civil Action No.:  1:21-cv-00761-LGS |
| v. | Hon. Lorna G. Schofield |
| CIBC WORLD MARKETS CORP., *et al.*, | |
| Defendants. | |

**MERRILL DEFENDANTS' OBJECTIONS AND RESPONSES**
**TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION (NOS. 1-23)**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendants BofA

Securities, Inc. ("Merrill-US") and Merrill Lynch Canada Inc. ("Merrill-Canada") (collectively,

"Merrill Defendants") hereby object and respond to Plaintiff's First Request for Production of

Documents to Merrill Defendants as follows:

**GENERAL OBJECTIONS**

Merrill Defendants object to the Instructions to the extent they attempt to impose

obligations beyond those provided under Rules 26 and 34 of the Federal Rules of Civil

Procedure, the Local Rules of the United States District Courts for the Southern and Eastern

Districts of New York, any protocol governing the production of documents or information in

this action, the orders of this Court, and any agreement of the parties about document production.

Merrill Defendants will not follow such "instructions" from Plaintiff but will comply with the

law.

Merrill Defendants object that the definition of "You" and "Your" is overbroad because it

includes, inter alia, parents and affiliates that have nothing to do with securities trading.  Merrill

Defendants further object to Plaintiffs' implication that the conduct of these distinct corporate entities was linked, or worse yet that they are one company, without justification.  Merrill Defendants will interpret these words to apply solely to Merrill-US and Merrill-Canada, and their respective officers and employees.

## **REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS**

## **REQUEST FOR PRODUCTION NO. 1:**

All Documents and Communications concerning Merrill's trading and order activity in Concordia's shares on U.S. and Canadian exchanges, alternative trading systems and any other trading venue, including but not limited to:

    (a) parent orders;

    (b) child order messages (including creation, cancellations, updates, modification and any other relevant updates); and

    (c) execution and any other transaction data in Concordia's shares.

## **RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Merrill Defendants object to this Request as overbroad, unduly burdensome, and seeking information that is not relevant to the parties' claims or defenses.  Merrill Defendants further object to this Request as vague and ambiguous for its use of the term "Merrill's trading and order activity."  Merrill Defendants will interpret "Merrill's trading and order activity" to mean trades and orders placed for the principal accounts of either Merrill Defendant.  Merrill Defendants further object to this Request as vague and ambiguous for its use of the terms "alternative trading systems" and "any other trading venue."  Merrill Defendants will interpret both terms to mean what is defined in Regulation ATS [17 CFR § 242.300].

Without waiving the foregoing objections, Merrill Defendants will produce documents sufficient to show trades in and orders for Concordia common stock placed for the principal

accounts of either Merrill Defendant from January 27, 2016 to November 15, 2016 (the "Relevant Period").

**REQUEST FOR PRODUCTION NO. 2:**

A cross-reference file identifying all parties and counterparties to all trades and orders identified by Request 1, including account number, full name, address, and type of account— with the type of account specifying whether it is a cash, margin, DVP/RVP, firm trading, firm operations, firm control, and/or error account.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Merrill Defendants object to this Request as overbroad and seeking information that is not relevant to the parties' claims or defenses. Merrill Defendants further object that this Request seeks information not in Merrill Defendants' possession, custody, or control to the extent it seeks the identities of "counterparties" to trades made on exchanges by either Merrill Defendant. Merrill Defendants state that in such circumstances, the exchange is its nominal counterparty on all such trades and the actual counterparty is known only to the exchange.

Without waiving the foregoing objections, Merrill Defendants will produce documents sufficient to show the beneficial owner or other party with authority to cause the submission of orders and execution of trades to be identified in response to Request for Production No. 1, and related account type(s) and, if available, counterparty information for such orders and trades.

**REQUEST FOR PRODUCTION NO. 3:**

Documents and Communications sufficient to identify the parties, counterparties, trading strategies and/or portfolio managers responsible for Merrill's trading and order activity in Concordia's shares on U.S. and Canadian exchanges, alternative trading systems and any other trading venue, including but not limited to parent orders, child order messages (including

either Merrill Defendant during the Relevant Period that Merrill Defendants locate after a reasonable search.

**REQUEST FOR PRODUCTION NO. 16:**

All Documents and Communications sufficient to identify the goals and purpose of the algorithms and underlying code responsive to Requests 14 and 15.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Merrill Defendants object to this Request as overbroad, unduly burdensome, and seeking information that is not relevant to the parties' claims or defenses.  Merrill Defendants further object to this Request as vague and ambiguous for its use of the phrase "goals … of algorithms and underlying code."

Without waiving the foregoing objections, Merrill Defendants will produce any non-privileged documents discussing or referring to the purposes of the trading algorithms that Merrill Defendants used for trades in and orders for Concordia common stock placed for the principal accounts of either Merrill Defendant during the Relevant Period that Merrill Defendants locate after a reasonable search.

**REQUEST FOR PRODUCTION NO. 17:**

Compliance and procedure manuals including but not limited to Merrill's policies, procedures, and compliance measures in connection with algorithmic trading, short selling, and spoofing.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Merrill Defendants object to this Request as overbroad, unduly burdensome, and seeking information that is not relevant to the parties' claims or defenses.  The Request appears to seek all "compliance and procedure manuals" of any entity in the world.

**REQUEST FOR PRODUCTION NO. 18:**

All Regulatory communications and regulatory review reports that reference any portion of the Relevant Period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Merrill Defendants object to this Request as overbroad, unduly burdensome, and seeking information that is not relevant to the parties' claims or defenses. The Request appears to seek all "Regulatory communications and regulatory review reports" issued by or directed to any entity in the world, on any subject.  Merrill Defendants further object to this Request as vague and ambiguous for its use of the term "Regulatory communications."  Merrill Defendants further object that this Request is not proportional to the needs of the case.

**REQUEST FOR PRODUCTION NO. 19:**

To the extent not already produced, all electronic communications including email, mobile communications, text messaging, instant messaging, and all other communications covered under SEC Rule 17a-4 and FINRA rule 4511(c) concerning any of the claims or defenses asserted in this action.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

Merrill Defendants object to this Request as not compliant with Rule 34(b)(1)(A), which requires a Request to "describe with reasonable particularity" the documents sought.  Merrill Defendants further object to this Request as overbroad and unduly burdensome.

**REQUEST FOR PRODUCTION NO. 20:**

To the extent not already produced, all Documents and Communications relied on, reviewed, or considered by Merrill in responding to these Interrogatories or preparing Merrill's April 11, 2022 Rule 26(a) Disclosures.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

Merrill Defendants object to this Request as vague and ambiguous for its use of the phrase "offer as evidence at any time."

Without waiving the foregoing objection, Merrill Defendants will produce any documents that Merrill Defendants currently intend to present as evidence at trial.

Dated: June 6, 2022      O'MELVENY & MYERS LLP

            */s/ Abby F. Rudzin*
            Abby F. Rudzin
            William J. Martin
            Seven Times Square
            New York, NY 10026
            Telephone: (212) 326-2000
            arudzin@omm.com
            wmartin@omm.com
            *Attorneys for BofA Securities, Inc. and*
            *Merrill Lynch Canada Inc.*