

O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY 10036-6537

T: +1 212 326 2000
F: +1 212 326 2061
omm.com

File Number:
0045231-00226

Abby F. Rudzin
D: +1 212 326 2033
arudzin@omm.com

May 28, 2024

The Honorable Lorna G. Schofield
United States District Court, Southern District of New York
500 Pearl Street
New York, NY 10007

Re:  *Harrington Global Opportunity Fund v. BofA Securities, et al., No. 1:21-cv-761*

Dear Judge Schofield:

We write in response to Harrington's letter (ECF 264) asking the Court to order Merrill to produce certain compliance and regulatory documents. Harrington's Requests for Production ("RFPs") do not call for these documents, and Merrill may not produce the requested documents without violating federal regulations, the bank examination privilege held by the Office of the Comptroller of the Currency (the "OCC"), or both. Harrington's motion should be denied.

***Federal Regulations and the Bank Examination Privilege.*** Banks are generally prohibited from disclosing non-public OCC information (12 CFR § 4.36(d)), including "a record created or obtained . . . by the OCC in connection with the OCC's performance of its responsibilities." 12 C.F.R. § 4.32(b)(i); *see also* 12 CFR § 4.35 (OCC has "sole discretion" to release non-public OCC information). Similarly, the bank examination privilege "accords agency opinions and recommendations and banks' responses thereto protection from disclosure to ensure that the integrity of the regulatory process remains protected." *Alaska Electrical Pension Fund v. Bank of America Corp.*, 2016 WL 6779901, *6 (S.D.N.Y. Nov. 16, 2016) (internal quotation marks omitted) (denying motion to compel). The privilege is critical to ensuring transparent communications between regulators and banks. *See In re Subpoena Upon Comptroller of Currency*, 967 F.2d 630, 633 (D.C. Cir. 1992) ("Bank management must be open and forthcoming in response to the inquiries of bank examiners, and the examiners must in turn be frank in expressing their concerns about the bank. These conditions simply could not be met as well if communications between the bank and its regulators were not privileged.").

Because the regulator holds the privilege, a court inclined to order the production of documents potentially covered by the privilege must defer such production to allow the regulator to review the documents at issue and decide whether to assert the privilege. *See, e.g.*, *In re Bankers Trust Co.*, 61 F.3d 465, 472 (6th Cir. 1995) ("[T]he Federal Reserve must be allowed the opportunity assert the privilege and the opportunity to defend its assertion."), *cert. dismissed*, 517 U.S. 1205 (1996); *Alaska Electrical Pension Fund*, 2016 WL 6779901, at *6 (relevant regulators should "have a reasonable opportunity to intervene here and be heard.").

***Requested Documents.*** In 2014, the OCC entered into a Consent Order with non-party Bank of America, N.A. (the "Bank") concerning alleged employee misconduct in foreign

currency trading (the "FX Consent Order"). *See* https://www.occ.treas.gov/news-issuances/news-releases/2014/nr-occ-2014-157a.pdf. Although the examination findings concerned only foreign currency trading, the FX Consent Order required the Bank to develop and submit to the OCC for review and approval a "Proactive Application of Remedial Measures Plan" (the "Plan") to "identify and address similar risks and control deficiencies" that might exist in Merrill's other trading businesses. *Id.*, Art. IX, ¶ 1. Harrington quotes documents describing █████

████████████

(ECF 133 ¶ 1.) Harrington now seeks the Plan and all documents ████
[1]

**Harrington's RFPs.** Harrington repeats its mantra that the documents it seeks are called for by its overbroad RFP 1 ("Merrill's trading and order activity in Concordia shares"), RFP 17 ("Compliance and procedure manuals"), and RFP 19 (certain "electronic communications"). But Harrington does not explain how these RFPs call for production of these documents, or why the Court should today order production of the documents over Merrill's objections to those RFPs, asserted two years ago. (ECF 264 at 2.)

In truth, Harrington first requested the documents it now seeks in a March 26 letter (ECF 264-1 at 37-44), months after the Court had prohibited Harrington from making new document requests (ECF 170). Merrill responded that the requested documents were likely covered by the bank examination privilege. Merrill subsequently also informed Harrington that it had submitted the Plan to the OCC; such submission was required by the FX Consent Order, and thus Merrill may not disclose it without the written consent of the OCC. *See* 12 C.F.R. § 4.36(d). Recently, Merrill clawed back some documents potentially subject to the privilege and is re-producing them this week with redactions.[2]

**Argument.** Harrington incorrectly contends that the documents sought in its motion are covered by its overbroad RFPs. The documents Harrington seeks concerning assessments are not Merrill's order and trade activity in Concordia (RFP 1) or "compliance and procedure manuals" (RFP 17). To the extent any such documents may be "electronic communications"

---

[1] Harrington also requests "all documents showing that █████████████ (ECF 264 at 3),
████████████████████████.

[2] Harrington contends that the January 10 Order requires Merrill to produce the documents it now seeks, but that Order does not suggest that the Court was ordering Merrill to produce documents that it is legally prohibited from disclosing. *See* 12 CFR § 4.36(d) (prohibiting banks from disclosing non-public OCC information). And the Order makes no assessment of the OCC's right to claim privilege over the documents.

O'Melveny

(RFP 19), Merrill objected to that Request in June 2022, and Harrington made no effort to narrow its request or ask the Court to rule on Merrill's objection. (ECF 264-2 at 6.)[3]

In any event, the requested documents are irrelevant to what Harrington needs to establish at trial—that alleged spoofing by Merrill's customers in 2016 constitutes "an extreme departure from the standards of ordinary care," i.e., that Merrill either knew about customer spoofing or it was "so obvious that [Merrill] must have been aware of it." *New England Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*, 80 F.4th 158, 178 (2d Cir. 2023) (internal quotation marks omitted). To reiterate, the FX Consent Order did not arise from any concerns by regulators about Merrill's compliance program for its stock trading business. As the name makes clear, it arose from the Bank's FX—foreign currency trading—business. And it concerns conduct years before the spoofing Harrington alleges. The FX Consent Order required the Bank to assess its procedures for monitoring potential spoofing in other trading activities, and

The documents do nothing to help Harrington prove any "extreme departure from the standards of ordinary care" by Merrill.

Federal law also prohibits Merrill from producing the Plan. The Plan is "non-public OCC information" because the OCC obtained it "in connection with the OCC's performance of its responsibilities (12 C.F.R. § 4.32(b)(i))—namely, deciding whether to make any "supervisory objection" to the Plan. *See* FX Consent Order, Art. IX, ¶ 3. The bank examination privilege covers both the Plan and potentially                                    .
Merrill conducted such

*See id.*, Art. IX, ¶ 2(c). They are therefore presumptively protected by the bank examination privilege. *See Alaska Electrical Pension Fund*, 2016 WL 6779901, at *6 (bank examination privilege covers "banks' responses" to agency recommendations). Merrill therefore cannot produce these documents without the OCC's consent. *See* 12 CFR § 4.36(d) (prohibiting banks from disclosing non-public OCC information); *In re Bankers Trust Co.*, 61 F.3d at 472 (banking regulator, not bank, holds privilege); *Alaska Electrical Pension Fund*, 2016 WL 6779901, at *6 (same). At a minimum, the Court should defer ordering Merrill to produce any requested documents until the OCC has had an opportunity to review them and decide whether to assert the privilege. Merrill is in the process of informing the OCC of Harrington's motion, and Harrington does not suggest that it has requested the documents itself, as 12 C.F.R. § 4.34 requires. Harrington has also cited no authority supporting the proposition that Harrington should be able to obtain these documents before the Court has provided the OCC time to decide whether to assert the privilege.

---

[3] In requesting "all documents evidencing that                                    "
(ECF 264 at 2–3), Harrington quotes from



Respectfully,

/s/ Abby F. Rudzin

Abby F. Rudzin
*of* O'MELVENY & MYERS LLP

cc: All counsel of record via ECF