**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X

HARRINGTON GLOBAL OPPORTUNITY FUND,
LIMITED,

          Plaintiff,      **21-CV-761 (LGS) (VF)**

    -against-

                    **OPINION & ORDER**

CIBC WORLD MARKETS CORP., et al.,

          Defendants.

------------------------------------------------------------------X
**VALERIE FIGUEREDO, United States Magistrate Judge.**

  Plaintiff Harrington Global Opportunity Fund, Limited ("Plaintiff") seeks to compel a non-party (hereinafter, "the Non-Party Customer") to respond to a subpoena duces tecum dated May 16, 2024.[1] See ECF No. 344. The Non-Party Customer opposes the motion. See ECF No. 360. Defendant CIBC World Markets Inc. ("CIBC") submitted an opposition to Plaintiff's motion in support of the Non-Party Customer's objections to the subpoena. See ECF No. 356. For the reasons stated herein, Plaintiff's motion to compel is **DENIED**.

## BACKGROUND[2]

  Plaintiff alleges that CIBC, along with BofA Securities, Inc., Merrill Lynch Canada Inc., TD Securities, Inc., and TD Securities (USA) LLC (collectively, "Defendants"), violated Section

---

[1] On September 11, 2024, the Court granted CIBC's motion to maintain the identity of the Non-Party Customer confidential and permanently sealed from public disclosure. See ECF Nos. 353, 371. Because the identity of the customer is not relevant to the Court's analysis, the Court will not refer to the non-party customer by name in this opinion.

[2] Familiarity with the factual background of this case is presumed. See Harrington Glob. Opportunity Fund, Ltd. v. CIBC World Markets Corp., 585 F. Supp. 3d 405 (S.D.N.Y. 2022); see also id., No. 21 Civ. 761 (LGS), 2023 WL 6316252 (S.D.N.Y. Sept. 28, 2023).

1

10(b) of the Securities Exchange Act of 1934 and Rule 10b-5, as well as Section 9(a)(2) of the Exchange Act, by engaging in a cross-border market manipulation scheme known as "spoofing"[3] between January 27, 2016, and November 15, 2016. See, e.g., ECF No. 133 ("Second Amended Complaint" or "Second Am. Compl.") ¶¶ 1-4.

In August 2022, Plaintiff served an initial subpoena on the Non-Party Customer, an entity that is a customer of CIBC. See ECF No. 360, at 1. Although the Non-Party Customer objected to the subpoena, it ultimately agreed to produce certain trading records to Plaintiff, which Plaintiff agreed would satisfy the Non-Party Customer's discovery obligations. See Hr'g Tr. dated Sept. 26, 2024 ("Tr.") at 52-53; ECF No. 360, at 1-2. The Non-Party Customer produced spreadsheets with hundreds of thousands of rows of trading data for an 11-month period, consisting of orders, modifications, cancelations, and trade executions submitted by Defendants for Concordia stock. Tr. at 53-54; ECF No. 360, at 1-2.

In May 2024, Plaintiff served a second subpoena on the Non-Party Customer. See ECF No. 360, at 2. Plaintiff now seeks trading data from the relevant period in 2016 for trades by the Non-Party Customer in the United States. This trading data concerns buy orders by the Non-Party Customer placed in the United States. Tr. at 7. The Non-Party Customer did not place any buy orders through CIBC that were routed to the U.S. markets, and it is this trading data, from channels outside of CIBC, that is the subject of the instant dispute. See ECF No. 356, at 2.

---

[3] Spoofing is a form of market manipulation that involves "bidding or offering with the intent to cancel the bid or offer before execution." Nw. Biotherapeutics, Inc. v. Canaccord Genuity LLC, No. 22 Civ. 10185 (GHW) (GS), 2023 WL 9102400, at *14 (S.D.N.Y. Dec. 29, 2023) (quoting Kessev Tov, LLC v. Doe(s), No. 20 Civ. 4947 (LAH), 2023 WL 4825110, at *4 (N.D. Ill. July 27, 2023)) (internal quotation marks omitted).

**DISCUSSION**

Under Federal Rule of Civil Procedure 26, a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1); see also Sylla v. Amazon Lab. Union, No. 23 Civ. 05261 (AMD) (TAM), 2024 WL 2081805, at *4 (E.D.N.Y. May 9, 2024). A subpoena issued to a third party pursuant to Federal Rule of Civil Procedure 45 are "subject to Rule 26(b)(1)'s overriding relevance requirement." LaPolice v. FAM, LLC, No. 23 Civ. 7091 (DEH), 2024 WL 2133823, at *1 (S.D.N.Y. Apr. 2, 2024). As it concerns a non-party, courts give "special weight" to the burden imposed on the non-party from the production of "documents to parties involved in litigation." Sylla, 2024 WL 2081805, at *4 n.4 (internal quotation marks and citations omitted).

There is no dispute that the trading data sought from the Non-Party Customer concerns trades executed on U.S. exchanges that did not occur through any CIBC channel. See Tr. at 7, 20. Plaintiff contends that the trading data is relevant to "a critical threshold" issue in this litigation—namely, "[d]id the customer spoof?" Tr. at 8, 14-15, 42. But the Non-Party Customer is not a defendant in this case. And the manipulative conduct alleged in the Second Amended Complaint concerns trading activity under CIBC's supervision and control.

Throughout the Second Amended Complaint, the conduct that Plaintiffs allege Defendants engaged in was a spoofing scheme with three stages: Defendants, on their own or following the instructions of their customers, disseminated and/or effected large quantities of baiting orders to sell Concordia shares; Defendants, almost simultaneously with the baiting orders, disseminated and/or effected executing orders in the United States to purchase Concordia shares; and Defendants, immediately after the completion of their executing orders to buy Concordia shares, cancelled and removed the baiting orders to sell. See, e.g., Second Am.

3

Compl. ¶¶ 4, 47, 50-52, 123, 123 n.11, 127, 129, 137. In seeking dismissal of the Second Amended Complaint, Defendants argued that the facts alleged in the complaint failed to plausibly suggest that any Defendant knew or recklessly ignored that its customers' orders were fraudulent. The Court rejected this argument, reasoning that the Second Amended Complaint detailed "a pattern of spoofing activity that strongly suggest[ed]" that Defendants had "shirked" their responsibility to "'detect and prevent manipulative or fraudulent trading that originated from algorithmic high-speed trading under *the supervision and control* of [the] firm.'" Harrington Glob. Opportunity Fund, No. 21 Civ. 761 (LGS), 2023 WL 6316252, at *7-8 (alteration in original and emphasis added); see also Second Am. Compl. ¶ 60. Contrary to Plaintiff's argument, whether the Non-Party Customer spoofed Concordia shares outside of CIBC is not a "threshold" issue in this case, because the claim, as pled in the Second Amended Complaint, concerns fraudulent trading activity under CIBC's supervision and control. The data Plaintiff seeks does not concern trades executed through a CIBC channel. It is therefore not relevant to trading activity under CIBC's supervision and control.

Plaintiff also argues that the trading data is relevant to CIBC's scienter. During the relevant time period, CIBC received 2,940 alerts for trading activity in Concordia shares by the Non-Party Customer in Canada through a CIBC channel. See ECF No. 344, at 2. Under Plaintiff's theory, the U.S. trading data is relevant to showing that CIBC was reckless in its duty to act as a gatekeeper, because it "kept sending orders to Canadian exchanges on behalf of [this] client[ ] even though they were on notice that this client was spoofing." Tr. at 37-39; see also Tr.

4

at 10-11, 17. As an initial matter, all of the alerts that CIBC received were not alerts specific to potential spoofing.[4] Tr. at 23-25.

In any case, Plaintiff's argument concerning CIBC's scienter does not require it to examine the trading data of the Non-Party Customer. Plaintiff claims that it is not attempting to hold CIBC "liable for not investigating;" it is seeking to hold CIBC liable only for "the orders they sent." Tr. at 37, 39, 46. But under that theory, any orders that occurred in the United States, outside of CIBC's channels, are not probative of CIBC's scienter because they are not orders that CIBC "sent," and CIBC was unaware of those orders when it "sent" the orders that were under its supervision and control in Canada. Further, as Plaintiff points out, based on the data it obtained from CIBC, it already has evidence of "order patterns" by this Non-Party Customer, executed through CIBC, that are "suspicious" and indicative of "complete spoofing cycles." Tr. at 13-14. With the information it has in its possession, Plaintiff can argue to the factfinder that CIBC was reckless, because it failed to inquire of the Non-Party Customer about its trading activity in the United States despite having reason to suspect that its customer was spoofing, given the alerts in Canada.

---

[4] Although the alerts "are set to pick up all kinds of different market activity," CIBC does not contest that at least some of the 2,940 alerts were triggered by concerns of potential spoofing. Tr. at 24-25, 30.

## CONCLUSION

For the reasons stated herein, Plaintiff's motion to compel is **DENIED**. The Clerk of Court is respectfully directed to terminate motions at ECF Nos. 344 and 345.

DATED:    New York, New York
          October 1, 2024

_____
VALERIE FIGUEREDO
United States Magistrate Judge