<u>**VIA ECF**</u>                                                                February 13, 2026

The Honorable Valerie Figueredo
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    **Harrington Global Opportunity Fund, Ltd. v. BofA Securities, Inc., et al.,**
            **No. 1:21-cv-761**

Dear Judge Figueredo:

      We write to address the Court's question for Defendants' motion to exclude the opinions of Professor Jonathan Brogaard: "Whether the Court is permitted to edit Brogaard's conclusions or allow him to submit another report doing so." The answer is "No."

      Professor Brogaard offered the opinion that Defendants' customers engaged in spoofing, *i.e.*, intentionally manipulative trading, by placing orders they did not intend to execute and with the intent to deceive—orders that he refers to as "non-bona fide orders." *See, e.g.*, CIBC Report ¶¶ 22, 27-30.[1] He not only opined that the customers actually "engage[d] in . . . episodes of spoofing," *id.* ¶ 9, but explained that this conclusion results from his development of "an algorithm to systematically ***detect spoofing***," *id.* ¶¶ 58, 72. In other words, he concludes that his methodologies found "manipulative trading" that was "unlikely to have arisen unintentionally." *Id.* ¶ 111. Recognizing the inadmissibility of such opinions, the Court asked whether they can be changed to an opinion that Defendants' customers' trading was "consistent with spoofing."

      But importantly, Brogaard does not opine or conclude that Defendants' customers' trading was "consistent with spoofing." *See id.* ¶ 9 (summary of opinion does not contain phrase); *id.* ¶ 111 (conclusion does not contain phrase). In responding to criticism from Defendants' compliance experts that Harrington's compliance expert was relying on a Brogaard finding of actual spoofing rather than merely trading "consistent with spoofing," Brogaard made clear in his Reply Report that his opinion ***was not*** one of "consistent with spoofing":

      148: All three Compliance Reports characterize the Initial Reports as not having
      found spoofing, but only order and trade activity that is "consistent with"
      spoofing. This is a mischaracterization of the Initial Reports in which ***I concluded***
      ***that [customer] used CIBC's platform*** and [customers] used Merrill's platform ***to***
      ***engage in thousands of episodes of spoofing***. My conclusions were based on the
      results of the application of the Methodologies, which identified trade activity

---

[1] Brogaard's opening reports regarding CIBC and Merrill, cited as "CIBC Report" and "Merrill Lynch Report," have been submitted as ECF 517-1 & 517-2, respectively. Brogaard's reply report, cited as "Reply Report," has been submitted as ECF 517-4. All emphasis in quoted passages is added.

from [customers] that was not just "consistent with" spoofing, but more consistent with spoofing than non-manipulative trading.[2]

Brogaard also made it clear in his Reply Report that his conclusion that customers spoofed was based on inferences he made about their intent:

> 149:  The Merrill [Canadian compliance] Report **falsely states** that in the Initial Reports, ***I did not "state an opinion that [customers] placed an order to manipulate the market*** rather than execute it, which is required to determine that trading constitutes spoofing" under applicable Canadian regulations.  The [Merrill U.S. compliance] Report similarly makes the incorrect statements that (i) I do not "cite any evidence [] of manipulative intent on [I or P's] part," and (ii) I offer "***no opinion as to trader intent.***"  ***That is not correct.***  Intent can be inferred through statistical analysis of trading behavior, and ***the Methodologies are designed to make inferences about trader intent*** based on their trade and order activity.  ***My conclusion*** that [customers] spoofed ***is based on inferences about their intent***.

Reply Report ¶¶148-49 (footnotes omitted).

The law is clear that inferences about the intent or motive of parties are outside the bounds of admissible expert testimony.  *See, e.g.*, *SEC v. Lek Secs. Corp.*, 370 F. Supp. 3d 384, 410 (S.D.N.Y. 2019) ("an expert may not opine as to the state of mind of [the trading firm] and its traders"); *Novartis Pharma AG v. Incyte Corp.*, 2024 WL 3608338, at *10 (S.D.N.Y. July 29, 2024) ("Inferences about the intent or motive of parties or others lie outside the bounds of expert testimony," because "[t]he question of intent is a classic jury question and not one for the experts.") (quoting *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004)).  This is because expert testimony must not "usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it."  *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991).  As Judge Buchwald recently explained in *In re LIBOR-Based Financial Instruments Antitrust Litigation*, 801 F. Supp. 3d 330, (S.D.N.Y. 2025), an expert can offer opinions that economic conditions look like misconduct (in that case, anticompetitive conduct), but cannot "tell the jury what weight, if any, to give them, or what result to reach."  *Id.* at 381 (cleaned up).  Thus, while an expert "may opine on traders' . . . economic incentives as a general matter, those opinions may not extend to the traders' . . . specific states of mind."  *Id.* at 382 (original alterations omitted).  In sum, a party "can argue that the jury should draw certain inferences; but ***an expert cannot inform the jury that based on the evidence defendants likely engaged in the [alleged conduct]***."  *Id.* at *81; *see also Anderson News, L.L.C. v. Am. Media, Inc.*, 2015 WL 5003528, at *4 (S.D.N.Y. Aug. 20, 2015) (excluding opinions that referenced defendants' "motivations, thought process, and

---

[2] Harrington's counsel represented that the phrase "more consistent with spoofing" is "repeatedly in his report."  *See* Jan. 13, 2026 Hearing Tr. at 92:6-15, ECF 579-1.  But this reply statement is the only place Brogaard described the trading as such.  Harrington's counsel also incorrectly told the Court: "In his initial report, Professor Brogaard opined that the trading patterns he found were more consistent with spoofing than any non-manipulative intent."  *Id.* at 90:17-20.  A review of the initial reports proves the falsity of this statement.

understanding"), *aff'd* 899 F.3d 87 (2d Cir. 2018).  Yet that is exactly what Harrington proffered Brogaard to say.

An expert may testify that trading is "consistent with" the alleged misconduct.  But ***that is not Brogaard's opinion***.  Nor can Brogaard be read to encompass that opinion.  To the contrary, that is an opinion he explicitly ***disavowed***.  He cannot now change course and offer an opinion inconsistent with how he himself described his work and his conclusions. It is the expert's actual opinion that must be assessed on a motion to exclude under Rule 702, not an alternative conclusion that a proponent wished it could be or strategically forswore.

Nor should the Court allow Harrington and Brogaard to submit a new report with a different conclusion.  Rule 26 does not permit a supplemental opinion that "does not rely [on] any information that was previously unknown or unavailable to him."  *JT Cleary, Inc. v. Narragansett Elec. Co.*, 2024 WL 4627641, at *4 (S.D.N.Y. Oct. 30, 2024).  Harrington made a decision when it proffered Brogaard with impermissible intent-based methodologies and conclusions. As set forth in Defendants' letter on Brogaard's combining data from two different Merrill Lynch clients, which Defendants incorporate herein, Harrington should not be relieved of the consequences of its choices (citing*, inter alia, On Track Innovations, Ltd. v. T-Mobile USA, Inc.*, 2015 WL 14072083, at *6 (S.D.N.Y. July 24, 2015) (precluding second expert report); *Lippe v. Bairnco Corp.*, 249 F. Supp. 2d 357, 386 (S.D.N.Y. 2003), *aff'd*, 99 F. App'x 274 (2d Cir. 2004); *accord In re HHE Choices Health Plan, LLC*, 2019 WL 6112679, at *8 (Bankr. S.D.N.Y. Nov. 15, 2019)). A party may not use Rule 26(e) as "a vehicle to permit a party to serve a deficient opening report and then remedy the deficiency through the expedient of a 'supplemental' report."  *Lidle v. Cirrus Design Corp.*, 2009 WL 4907201, at *5 (S.D.N.Y. Dec. 18, 2009).  *See also Freeman v. Deebs-Elkenaney*, 2025 WL 472558, at *1 (S.D.N.Y. Jan. 30, 2025) ("The Court will not allow a party to redo its expert discovery 17 months later because of a strategic miscalculation.").

To be clear, were the Court to permit any Brogaard testimony notwithstanding the above and Defendants' other arguments, Brogaard would have to re-write his reports (without any other changes). In his initial report for CIBC, for example, he uses the phrase "spoofing episodes" 43 times—effectively giving the impermissible opinion that the "episodes" he identified in fact constitute spoofing. He repeatedly, in all reports, refers to "non-bona fide orders," calls the trading "manipulative," refers to his methods as "detecting" spoofing, opines that the customers' actions were "deliberate," and speculates about a trader's "beliefs," all of which requires exclusion.  A list of such instances appears under "Appendix" below. Were the Court to permit an overhauled opening report, Defendants would then have to consider whether to have Hendershott prepare another rebuttal report, whether to re-depose Brogaard—and Harrington's other experts who relied on him—and challenge what Harrington ultimately intends to proffer. All of this additional work should be exclusively at Harrington's expense, including both Defendants' counsel's time and their experts' time, as this is a problem of Harrington's creation.[3]

Moreover, permitting a redo would be highly prejudicial.  Harrington can identify no

---

[3] At minimum, the Court should order Harrington to show cause as to why such relief should not be granted. *See generally Sportsvision Inc. v. MLB Advanced Media, LP*, 2025 WL 1883367, *1 (S.D.N.Y. July 8, 2025) (citing cases).

evidence of spoofing to which Brogaard can tie the trading patterns he observed as "consistent." This is a monumental difference from *Lek*, where there were emails and testimony supporting the layering allegation.[4]  Harrington has no other evidence to support its spoofing claim and no evidence to tie the alleged spoofing to an injury to Harrington.  A re-do would be a waste of time and seriously unfair to Defendants, particularly in light of the trajectory of this case.

Respectfully submitted,

/s/ Abby F. Rudzin
Abby F. Rudzin
O'MELVENY & MYERS LLP
1301 Avenue of the Americas
New York, NY 10019
(212) 326-2000
arudzin@omm.com

Counsel for Defendants BofA Securities, Inc.
and Merrill Lynch Canada Inc.

/s/ Sandra D. Hauser
Sandra D. Hauser
DENTONS US LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 768-6802
sandra.hauser@dentons.com

Counsel for Defendant CIBC World Markets
Inc. (Canada)

---

[4] *See SEC v. Lek Sec. Corp.*, 612 F. Supp. 3d 287, 296-97 (S.D.N.Y. 2020) (penalty opinion).

**Appendix**: Impermissible Intent References in Brogaard Reports

Referring to trading episodes as "spoofing episodes," claiming that any customer engaged in "spoofing," or declaring that his methodology "detected spoofing":

CIBC Report ¶¶ 9, 44, 45, 47, 48, 49, 50, 52, 53, 55 at fn. 37, 56, 57, 58, 61, 63, 64, 65, 66, 68, 69, 70, 71, 72, 77, 79, 80, 81, 82, 83, 84, 85, 87, 91, 92, 94, 95, 96, 97, 98, 101, 104, 105, 107, 110, 111; Merrill Lynch Report ¶¶ 9, 44, 45, 47, 48, 49, 50, 52, 53, 55 at fn. 39, 56, 57, 58, 61, 63, 64, 65, 66, 68, 69, 70, 71, 72, 77, 79, 80, 81, 82, 83, 84, 85, 87, 99, 100, 102, 103, 104, 105, 106, 109, 112, 113, 114, 115, 118, 119; Reply Report ¶¶ 1, 4, 4a, 4c, 4e, 4f, 4j, 5, 6, 7, 8, 9, 10, 13, 14, 16, 17, 18, 19, 20 incl. fn24 and fn25, 21, 27, 33, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 54, 55, 57 incl. fn.91, 61, 64, 67, 68, 69, 70, 71, 72, 73, 74, 75, 78, 79, 82, 84, 92, 95, 107, 108, 111 at fn. 178, 112, 114, 118, 120, 121, 123, 125, 126, 127, 128, 129, 130, 131, 132, 135, 145, 148, 149, 151.

Referring to trading and orders as "manipulative," "manipulation," or "non-bona fide" or to a customer as acting intentionally or deliberately:

CIBC Report ¶¶ 36, 38, 44, 45, 52, 64, 79, 80, 95, 111; Merrill Lynch Report ¶¶ 36, 38, 44, 45, 52, 64, 79, 80, 103, 119; Reply Report ¶¶ 4j, 6, 7, 21, 27, 33, 43, 44, 49, 50, 51, 60, 63, 65, 66, 67, 68, 73, 79, 81, 83, 93, 94, 95, 120, 129, 130, 132, 138, 140, 142, 149.