

**WARSHAW
BURSTEIN**

**LERON THUMIM**
PARTNER

DIRECT DIAL: 212-984-7833
EMAIL: LTHUMIM@wbny.com

WARSHAW BURSTEIN, LLP
575 Lexington Avenue
New York, NY 10022
(212) 984-7700
www.wbny.com

February 13, 2026

**VIA ECF**
The Honorable Valerie Figueredo
United States Magistrate Judge
United States District Court for the Southern District of New York
500 Pearl Street, New York, NY 10007

    Re:    *Harrington Global Opportunity Fund, Ltd. v. BofA Securities, Inc.*, No. 21-CV-761

Dear Judge Figueredo:

    We write on behalf of Plaintiff Harrington Global Opportunity Fund, Limited ("Harrington") to provide the Court with the additional caselaw it requested during the January 12-13, 2026 oral argument on Defendants' motions to exclude the testimony of Harrington's experts, Drs. Robert Shapiro and Jonathan Brogaard. This letter focuses on the applicable case law with respect to Defendants' motion to exclude the testimony of Dr. Brogaard—pursuant to the parties' agreement [ECF No. 576]—sets forth authority that (i) this Court may permit Dr. Brogaard to supplement his expert report for the purpose of recalculating his conclusions if the trading data of the two Merrill customer entities were not combined, and (ii) this Court can either strike portions of Dr. Brogaard's testimony or permit Dr. Brogaard to amend his report to conform his conclusions to any rulings by the Court.

**<u>Defendants Improperly Seek Determination of a Disputed Fact Without Having Made a Motion with Respect to It.</u>**

    When calculating the number of spoofing episodes by defendant Merrill's customers, Dr. Brogaard combined the trading activity of two affiliated Merrill customers: ██ and ██████ In doing so, Dr. Brogaard was clear that he was making an assumption with respect to a question of fact and, in his reports and during his deposition, Dr. Brogaard explained the basis for that assumption. [*See, e.g.,* ECF 517-2, at ¶ 46; ECF 517-4, at ¶¶ 86-91; ECF 533-2 at 208:11-209:19]. During oral argument, Merrill's counsel argued that if she made a motion for summary judgment with respect to the disputed issue of fact, she would win on the basis of a declaration that she argues is uncontroverted. Day 2 Tr., Ex. 1 at 242:5-243:7. She is wrong; the declaration (which Harrington has argued is inadmissible in any case, [*id.* at 233:10-234:2]) <u>is</u> controverted by the facts upon which Dr. Brogaard relied, supporting an inference of coordination between ██ and ██████ But the larger issue is that Merrill is not entitled to summary judgment with respect to the disputed issue of fact because Merrill has not yet made—and the parties have not yet briefed—a motion for a factual finding as a matter of law. *See, e.g., TPI Cloud Hosting, Inc. v. Keller Williams Realty Inc.*, No. 19 Civ. 808, 2020 WL 10054265, at *4–5 (W.D. Tex. Oct. 23, 2020)

**Warshaw Burstein, LLP**

(denying a motion to exclude expert testimony that was supposedly based on "flawed assumptions," holding that "questions of fact [are] not properly decided in a *Daubert* motion"); *Sanders v. City of Chicago Heights*, No. 13 Civ. 0221, 2016 WL 4398011, at *10 (N.D. Ill. Aug. 18, 2016) (holding that factual questions that "must be determined by the trier of fact" are "not within the province of a *Daubert* motion). Simply put, it is premature for any ruling that █ and ████ did not coordinate, and that Dr. Brogaard was wrong to prepare a calculation based on the assumption that they did.

### Dr. Brogaard Should Be Permitted to Supplement His Report with an Alternate Calculation.

To be clear, on the basis of what Defendants argue was an incorrect factual assumption by Dr. Brogaard—one that even Defendants' expert conceded impacts only approximately 35% of his Merrill-related results, [ECF 517-3, at ¶ 66]—Defendants are seeking the "***extreme* sanction of preclusion**" of the *entirety* of Dr. Brogaard's testimony. *See JT Cleary, Inc. v. Narragansett Elec. Co.,* No. 22 Civ. 4533, 2024 WL 4627641, at *4 (S.D.N.Y. Oct. 30, 2024) (emphasis added). Again, for the reasons set forth in (i) Dr. Brogaard's Reply Report, [ECF 517-4, at ¶¶ 86-91] (ii) Harrington's *Daubert* briefing, [ECF 531 at pp. 12-13], and (iii) the January 13 oral argument [Day 2 Tr., Ex. 1 at 234:11-235:8, 256:2-16, 262:6-263:6], there was ample basis for Dr. Brogaard to reasonably assume that such customers' trading *was* combined for purposes of calculating the number of spoofing episodes in this case.

But if a factfinder *were* to ultimately determine that the trading of █ and ████ should not be combined for the purposes of a spoofing analysis, the "drastic" remedy of exclusion of Dr. Brogaard's testimony would still not be the proper result because the reasonable assumption that he made would be nothing more than a "minor flaw" in an otherwise reliable methodology. *See Amorgianos v. Nat'l R.R. Passenger Corp.,* 303 F.3d 256, 267 (2d Cir. 2002) (a "minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method will not render an expert's opinion *per se* inadmissible."). Indeed, a factual finding that Merrill's customers' trading was not combined would change nothing about Dr. Brogaard's overall methodology; it would impact only the inputs to the methodology and the resulting number of spoofing episodes found.

An expert's testimony should only be excluded if "the flaw is large enough that the expert lacks good grounds for his or her conclusions," *id.* (citing *In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 746 (3d Cir. 1994)), and even where an expert *does* commit an error large enough to cause his conclusions to lack "good grounds," courts still routinely permit supplementation to fix the error where, as here, the mistake is "eminently correctable." *See, e.g., Beastie Boys v. Monster Energy Co.,* No. 12 Civ. 6065, 2014 WL 888235, at *3 (S.D.N.Y. Mar. 6, 2014) (permitting expert to revise report less than two months before trial to correct major flaw).

Indeed, the result that would most efficiently serve judicial economy would be for the Court to permit Dr. Brogaard to amend his report now to include an alternate calculation of the number of spoofing episodes if the trading data of █ and ████ were not combined. Dr. Brogaard could do so on an expedited basis by simply re-running his methodology on a set of data in which ████ and ████ trading were separate. This solution would cause no prejudice whatsoever to Defendants, and it would have the benefit of resolving any lingering questions regarding the admissibility of Dr. Brogaard's testimony, *regardless* of factual determinations to be made at a later date. It would also serve the interests of justice and judicial economy by creating two options as to the number of spoofing episodes that occurred, either of which could be adopted by the finder of fact, depending upon the factual determination of whether █ and ████ coordinated.

Warshaw Burstein, LLP

**The Court Can Strike Portions of Dr. Brogaard's Testimony or Permit Him to Amend His Report to Conform to the Court's Rulings.**

Defendants have argued that some of Dr. Brogaard's language regarding his conclusions of intent exceeds the permissible scope of expert testimony. Harrington disagrees, but to the extent the Court finds that some of the language used by Dr. Brogaard was not proper, the remedy would not be to exclude the *entirety* of Dr. Brogaard's opinion, as Defendants meritlessly contend. Rather, the Court has ample discretion to address the problematic language by striking the specific portions of Dr. Brogaard's testimony and/or by providing Dr. Brogaard with an opportunity to amend his report by revising his language to conform to the Court's rulings.

*Ebbert v. Nassau Cnty.,* No. 05 Civ. 5445, 2008 WL 4443238 (E.D.N.Y. Sept. 26, 2008) is particularly instructive. There, the plaintiffs moved to preclude the reports and testimony of the defendants' expert, arguing that his reports contained impermissible legal conclusions. The Court identified an extensive (but not exhaustive) list of "impermissible legal discussion and conclusions" in the expert's reports, including specific sentences and paragraphs, as well as more vague references to "various portions of subsections" of the reports. *Id.* at *6-11. Finding that the remaining portions of the reports could still assist the jury, the Court found there was *no need to "throw the baby out with the bath water"* due to *common practice in the Second Circuit "to strike parts of an expert's report and testimony and to retain others."* *Id.* at *13 (emphasis added). The Court denied the motion to strike the reports in their entirety and directed the expert "to amend the [reports] to conform with the provisions of" the Court's order, specifically to "remove the impermissible legal analysis and conclusions outlined" in the order. *Id.* at *13-14. If the Court finds Dr. Brogaard's conclusions were improper, the same result should obtain here.

Equally relevant is *Beastie Boys,* 2014 WL 888235, in which, rather than excluding the expert's opinion due to a major flaw identified by the Court, the Court permitted the expert to revise her report to incorporate the "term of use" the Court found should have been used in the expert's analysis. In doing so, the Court limited the scope of revisions of the expert's report. *Id.* at *3. Thus, it is well-settled that Courts may give explicit guidance to experts regarding the permissible bounds of their testimony, and then give the expert the chance to amend their report to conform to that guidance.

This principle applies, of course, to not just Dr. Brogaard's opinions, but Dr. Shapiro's as well. As discussed further in Harrington's letter concerning Dr. Shapiro which is being filed concurrently herewith, Dr. Shapiro should also be permitted to revise his report in accordance with the Second Circuit's preference to not "throw the baby out with the bath water" and to avoid the "extreme sanction of preclusion" by "inquir[ing] more fully into the actual difficulties which the violation causes, and [] consider[ing] less drastic responses." *JT Cleary, Inc. v. Narragansett Elec. Co.,* No. 22-CV-4533 (JLR) (VF), 2024 WL 4627641, at *4 (S.D.N.Y. Oct. 30, 2024), citing *Outley v. City of New York,* 837 F.2d 587, 591 (2d Cir. 1988).

\*    \*    \*

For the reasons set forth above, the Court is entitled to permit Dr. Brogaard to submit a supplemental report providing alternate calculations and/or amending his conclusions to conform to the Court's guidance.

Warshaw Burstein, LLP

Respectfully submitted,

WARSHAW BURSTEIN LLP

By: */s/ Leron Thumim*
Alan M. Pollack
Felicia S. Ennis
Thomas Filardo
Leron Thumim
Meghan Hallinan
575 Lexington Avenue, 7th Floor
New York, New York 10022
Tel.: (212) 984-7700
apollack@wbny.com
fennis@wbny.com
tfilardo@wbny.com
lthumim@wbny.com
mhallinan@wbny.com

CHRISTIAN ATTAR
James Wes Christian
Ardalan Attar
2302 Fannin, Suite 205
Houston, Texas 77002
Tel.: (713) 659-7617
jchristian@christianattarlaw.com
aattar@christianattarlaw.com

cc:  All counsel via ECF