

THOMAS FILARDO
PARTNER

DIRECT DIAL: 212-984-7806
EMAIL: TFILARDO@wbny.com

WARSHAW BURSTEIN, LLP
575 Lexington Avenue
New York, NY 10022
(212) 984-7700
www.wbny.com

February 13, 2026

**VIA ECF**
The Honorable Valerie Figueredo
United States Magistrate Judge
United States District Court for the Southern District of New York
500 Pearl Street, New York, NY 10007

    Re:    *Harrington Global Opportunity Fund, Ltd. v. BofA Securities, Inc.*, No. 21-CV-761

Dear Judge Figueredo:

    We write on behalf of Plaintiff Harrington Global Opportunity Fund, Limited ("Harrington") to provide the Court with the additional caselaw it requested during the January 12-13, 2026 oral argument on Defendants' motions to exclude the testimony of Harrington's experts, Drs. Robert Shapiro and Jonathan Brogaard. This letter focuses on the applicable case law with respect to Defendants' motion to exclude the testimony of Dr. Shapiro and—pursuant to the parties' agreement [ECF No. 576]—sets forth authority that provides (i) the Court may consider Dr. Shapiro's reply report to bolster or support the opinion in his initial report; (ii) for the Court's consideration of both Dr. Shapiro's initial report and his reply report as an entire package; and (iii) to the extent the Court determines that Dr. Shapiro made any errors, the Court can and should permit him to submit a supplemental report in line with the Court's *Daubert* ruling.

**The Notion of an Effective or Potential "Withdrawal" of Defendants' Expert Does Not Bar this Court from Considering Dr. Shapiro's Reply Report.**

    On April 17, 2024, the parties memorialized in a joint status letter to the Court [ECF No. 213] their agreement on an expert discovery schedule which involved (i) initial reports to be served by Harrington; (ii) rebuttal reports to be served by Defendants; and (iii) reply reports (if any) to be served by Harrington. Harrington ultimately served Dr. Shapiro's initial reports on October 8, 2024. Defendants served Dr. Terrence Hendershott's rebuttal report (a single report addressing Dr. Brogaard's *and* Dr. Shapiro's initial reports) on March 7, 2025, and Harrington served Dr. Shapiro's reply report on April 25, 2025. [ECF Nos. 380, 460.] Defendants then spent ten hours questioning Dr. Shapiro over two deposition days on May 21-22, 2025. Over the course of the two-day deposition, Defendants used Dr. Shapiro's initial and reply reports—as well as Dr. Hendershott's rebuttal report—as exhibits, and asked multiple questions about each report.

    Despite Defendants' agreement to Dr. Shapiro submitting a reply report, during oral argument on their Rule 702 motion, Defendants *for the first time* asserted the meritless argument that, because they did not cite to Dr. Hendershott's rebuttal report in their briefing on the motion to exclude *Dr. Shapiro*, they have not yet "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮," and, therefore, the Court

Warshaw Burstein, LLP

Hon. Valerie Figueredo
February 13, 2026
Page 2 of 8

may not consider any portion of Dr. Shapiro's reply report because there was nothing for him to "rebut." *See* Day 1 Tr., Ex. A, at 16:4-10, 32:7-17 ("▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋"); Day 2 Tr., Ex. B at 95:9-97:12. Defendants' argument should be summarily rejected because (i) the parties already agreed that Harrington's experts may submit reply reports; (ii) Defendants' argument is contradicted by their own conduct; and (iii) Defendants' attempt to surprise Harrington with the tactical gambit of suggesting they can knock out Dr. Shapiro's reply because they ultimately might, in effect, "withdraw" their own expert's rebuttal report is utterly without basis in the Federal Rules or applicable case law.

To begin with, contrary to Defendants' eleventh-hour assertion that they have not "called" Dr. Hendershott, Defendants have relied upon Dr. Hendershott's rebuttal and made arguments with respect to Dr. Shapiro's reply report. During their deposition of Dr. Shapiro, Defendants introduced and asked questions about Dr. Hendershott's rebuttal and Dr. Shapiro's reply. And although they did not directly cite to Dr. Hendershott's rebuttal report in their Shapiro motion papers, Defendants *did* refer to it. [*See* ECF No. 509, at 11 (describing an argument made by "▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋").] Plus, in their Brogaard motion papers, Defendants not only made many arguments related to Dr. Hendershott's rebuttal report—again, the *only* report submitted by Dr. Hendershott, seeking to rebut the initial reports of Drs. Shapiro *and* Brogaard—they even went so far as to attach Dr. Hendershott's rebuttal report as an exhibit. [*See* ECF No. 518-3.] Defendant's assertion that they have not yet "called" Dr. Hendershott is demonstrably false.

Nor have Defendants *actually* taken the position that they are not going to call Dr. Hendershott or otherwise intend to somehow withdraw his rebuttal report. Indeed, Defendants have only hinted at the possibility. *See* Day 1 Tr., Ex. A, at 32:7-17 (musing that Defendants "don't have any obligation to call Mr. Hendershott"). It strains credulity to believe that if this Court permits Dr. Shapiro to testify, Defendants will not ultimately call their rebuttal expert. In any event, at this stage, the Court is certainly not barred from considering Dr. Shapiro's reply report because Defendants *might* decide to effectively withdraw their expert.

Even if Defendants *had* not cited or made any arguments referring to Dr. Hendershott (they did) and *did* decide to withdraw their own expert's rebuttal report (they have not), that would *still* not be reason for the Court to disregard Dr. Shapiro's reply report. There is simply no support anywhere in the Federal Rules or applicable caselaw for the proposition that a party may strategically withdraw a rebuttal report, and in doing so, bar the Court from considering an otherwise relevant reply report responsive to the rebuttal.[1] To the contrary, there is ample case law demonstrating that expert reports may not be "withdrawn" and Defendants' gambit fails. *See, e.g., Wade-Greaux v. Whitehall Lab'ys, Inc.*, 874 F. Supp. 1441, 1465 (D.V.I.), *aff'd*, 46 F.3d 1120 (3d Cir. 1994) (noting that although a party attempted to "withdraw [one of its experts] as an expert witness . . . the court determined that his testimony would remain of record for consideration"); *Soldo v. Sandoz Pharms. Corp.*, 244 F. Supp. 2d 434, 573 (W.D. Pa. 2003) (same).

---

[1] To the extent that Defendants attempt to rely on *LaSalle Bank Nat. Ass'n v. CIBC Inc.*, No. 08 Civ. 8426, 2012 WL 466785 (S.D.N.Y. Feb. 14, 2012) to argue that Dr. Shapiro's reply opinions may be excluded if Defendants withdraw Dr. Hendershott's rebuttal report (and again, Defendants have *not* actually withdrawn Dr. Hendershott's opinions), *LaSalle* is utterly inapposite. There, the withdrawal of the testimony to which the rebuttal expert was replying rendered the rebuttal testimony "irrelevant." *Id.* at *19. Here, the opinions in Dr. Shapiro's reply report are indisputably relevant and germane to his opinions regarding damages because, as discussed below, it clarifies and offers further explanation of the methodology in his initial report, which remains unchanged.

*In re Puda Coal Sec. Inc., Litig.*, 30 F. Supp. 3d 230 (S.D.N.Y. 2014), *aff'd sub nom. Querub v. Hong Kong*, 649 F. App'x 55 (2d Cir. 2016) is particularly on point and instructive. There—exactly as Defendants seek to do here—one party sought to withdraw its expert and therefore preclude the admission of the other side's rebuttal report. Judge Forrest took a dim view of this attempted maneuver, holding:

> [T]he Court views plaintiffs' decision to withdraw its primary accounting expert as a tactical decision, and one that plaintiffs are no doubt entitled to make. However, ***they cannot withdraw their expert and expect that they can thereby achieve a secondary benefit of controlling the [opposing party]'s expert choices***.

*Id.* at 256 (emphasis added) (also noting that because, as here, the parties had agreed on an expert disclosure schedule, <u>all</u> expert reports scheduled and disclosed in accordance with that schedule could be considered). *See also Bleck v. City of Alamosa, Colo.* No. 10 Civ. 03177, 2012 WL 695138, at *4 (D. Colo. Mar. 5, 2012), *R&R adopted*, No. 10 Civ. 03177, 2012 WL 764467 (D. Colo. Mar. 7, 2012) (rejecting a similar attempt to exclude a rebuttal expert after withdrawing the testimony to which the expert was responding, holding that the rebuttal "disclosures were timely at the time they were made" and characterizing the argument that the rebuttal was subject to preclusion because another expert was withdrawn as "***without merit or logic***" (emphasis added)). In sum, Defendants' last-second backdoor attempt to limit Dr. Shapiro's testimony by hinting that they may withdraw portions of their own expert's testimony has no basis in fact, law, or logic.

### It is Well-Settled that Experts' Reply Reports may Bolster Their Initial Reports.

Defendants also argued that Dr. Shapiro's reply report should be disregarded because it seeks to bolster the opinions in his opening report. *See* Day 1 Tr., Ex. A at 16:7-10. This argument is equally devoid of merit. Expert reply reports are treated as "rebuttal reports," which are limited, under FRCP 26(a)(2)(D)(ii), to addressing new matters raised in an opposing expert's disclosure. *See, e.g., Camarata v. Experian Info. Sols., Inc.,* No. 16 Civ. 132, 2018 WL 1738335, at *2 (S.D.N.Y. Mar. 5, 2018); *Kleen Prods. LLC v. Int'l Paper,* 306 F.R.D. 585, 591 (N.D. Ill. 2015), *aff'd sub nom. Kleen Prods. LLC v. Int'l Paper Co.,* 831 F.3d 919 (7th Cir. 2016) ("Rule 26 does not address reply expert reports, but, much like reply briefs, parties may not advance new arguments for the first time in a reply expert report."). Rebuttal evidence is admissible "when it will explain, repel, counteract or disprove the evidence of the adverse party." *Crowley v. Chait,* 322 F.Supp.2d 530, 551 (D.N.J. 2004) (denying motion to exclude rebuttal report citing further support for expert's methodology that could have been included in initial report because "[a]ll that is required is for the information to repel other expert testimony").

Although Dr. Shapiro's reply report contains clarifications and explanations—including that the work of Nobel laureate economist Dr. Eugene Fama supports the assumptions in his damages model—that could have been included in Dr. Shapiro's initial report, there is no basis for the Court to exclude Dr. Shapiro's reply report. A district court has wide discretion in determining whether to permit evidence on rebuttal. *United States v. Tejada,* 956 F.2d 1256, 1266 (2d Cir. 1992). The "test under Rule 26(a)(2)(D)(ii) is not whether a rebuttal report contains new information, but whether it is 'intended solely to contradict or rebut evidence on the same subject matter' of an opponent's expert report." *Teledyne Instruments. Inc. v. Cairns,* No. 12 Civ. 854, 2013 WL 5781274, at *17 (M.D. Fla. Oct. 25, 2013), citing Fed. R. Civ. P. 26(a)(2)(D)(ii). Furthermore, a rebuttal or reply report "may cite new evidence and data so long as the new evidence and data is offered to directly contradict or rebut the opposing party's expert." *Glass*

*Dimensions, Inc. ex rel. Glass Dimensions, Inc. Profit Sharing Plan & Tr. v. State St. Bank & Tr. Co.,* 290 F.R.D. 11, 16 (D. Mass. 2013).

Indeed, the "very purpose of a reply report" is "to refute a defendant's expert's arguments and to provide further support, rather than abandoning, one's initial opinions." *Kleen Prods.*, 306 F.R.D. at 592 (denying a motion to exclude additional analyses in a reply report because they were directly responsive to criticisms from the opposing expert and provided further support for expert's original opinions). Dr. Shapiro's reply report contains no novel methodology, makes no changes to his initial framework, and sits comfortably within the ambit of permissible reply/rebuttal reports.

Here, Dr. Shapiro's reply report is a proper "rebuttal" in accordance with Rule 26 because it <u>specifically</u> responds to arguments made by Dr. Hendershott in his rebuttal report. Dr. Shapiro's reply report cites to Hendershott's rebuttal report at least *47* times, [*see* ECF No. 511-3], demonstrating its responsive nature. *See Teledyne*, 2013 WL 5781274, at *16-18 (holding expert report was a "bona fide rebuttal" notwithstanding its inclusion of information that could have been disclosed in an original report, as such information was intended to rebut other expert—as evidenced by over 30 references to and frequent quoting of other expert's report). Indeed, there is *not a single section* in Dr. Shapiro's reply report that does not cite and respond to specific criticisms raised by Hendershott. [*See* ECF No. 511-3.]

Contrary to Defendants' contentions, Dr. Shapiro's reports bear no relation to scenarios in which a plaintiff serves "a deficient or bare-bones opening report, or fail[s] to serve an opening report, and then serv[es] a full and complete report merely by claiming that the second, complete report is a reply or a supplementation pursuant to Fed. R. Civ. P. 26(e)." *Camarata*, 2018 WL 1738335, at *2. Rather, this case is more akin to *In re Zimmer M/L Taper Hip Prosthesis or M/L Taper Hip Prosthesis With Kinectiv Tech. & Versys Femoral Head Prods. Liab. Litig.,* No. 18-MC-2859 (PAC), 2021 WL 1405185 (S.D.N.Y. Apr. 14, 2021). There, the defendant moved to strike the plaintiffs' experts' rebuttal reports, in part because one of the plaintiff's experts defined, for the first time in his rebuttal report, scientific terms that were used in his initial report. The defendant argued that, if the "20 newly-submitted definitions were truly essential, he should have offered those definitions in his initial report." *Id.* at *4. The Court rejected this argument, finding that it was "perfectly acceptable" for plaintiff's expert to define the terms in his rebuttal report to rebut the defendant's experts, who he believed had incorrectly used the terms. *Id.* The Court's reasoned that "an expert need not disclose in his initial report everything that might possibly be useful later" because such a rule would "lead to the inclusion of vast amounts of arguably irrelevant material in an expert's report on the off chance that failing to include any information in anticipation of a particular criticism would forever bar the expert from later introducing the relevant material." *Id.,* citing *Crowley,* 322 F.Supp.2d at 551; *see also Teledyne Instruments,* 2013 WL 5781274, at *17 ("The rules do not require parties or their expert witnesses to anticipate all foreseeable opposing arguments and meet those arguments in their initial reports.").

Ultimately, that is all Dr. Shapiro has done in his reply report: clarify, explain, and provide arguments supporting his initial opinions, all in direct response to Dr. Hendershott.

**<u>The Court May Consider Dr. Shapiro's Initial and Reply Report Together.</u>**

Nothing prohibits the Court from generally considering Dr. Shapiro's reply report in connection with Defendants' motion to exclude Dr. Shapiro. *See, e.g., In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.,* No. 14-MD-2542, 2025 WL 354671, at *33

(S.D.N.Y. Jan. 30, 2025) (citing to an expert's reply report in its decision denying motion to exclude such expert's testimony); *City of Philadelphia v. Bank of Am. Corp.,* No. 19 Civ. 1608, 2023 WL 6160534, at *5-8 (S.D.N.Y. Sept. 21, 2023) (same). As discussed above, all parties agreed to the expert disclosure schedule in which Harrington's experts were expressly permitted to serve initial *and* reply reports. All of Harrington's experts' reports were timely served in accordance with the agreed-upon disclosure schedule. For the reasons set forth above, Dr. Shapiro's report is a wholly proper reply report and the Court may consider it.

Still, even if Dr. Shapiro's reply testimony *did* go beyond the permissible scope of rebuttal testimony (and it did not), this Court would *still* be permitted to consider it in conjunction with Dr. Shapiro's initial report. It is well-settled in the Second Circuit that the exclusion of expert testimony is a "***drastic*** remedy which is inconsistent with the judicial preference for determining issues on the merits." *In re Specialist & Other Vessel Owner Limitation Actions,* No. 16 Civ. 5010, 2020 WL 8665287, at *2 (S.D.N.Y. June 30, 2020) (emphasis added; citations and quotations omitted); *see also Simo Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.,* 354 F. Supp. 3d 508, 510 (S.D.N.Y. 2019) ("Precluding testimony is a ***drastic and disfavored*** measure." (Emphasis added)). "Precluding testimony of an expert, even when there has not been strict compliance with Rule 26, may at times tend to frustrate the Federal Rules' overarching objective of doing substantial justice to litigants." *Brink's Glob. Servs. USA, Inc. v. Bonita Pearl Inc.,* No. 22 Civ. 6653, 2024 WL 4227760, at *6 (S.D.N.Y. Sept. 18, 2024) (citation omitted).

As this Court noted during oral argument, in scenarios where (unlike here) a party's expert disclosures did *not* comply with Rule 26, courts in this Circuit consider the following *Softel* factors in deciding whether the drastic remedy of precluding expert testimony is warranted: "(1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.,* 118 F.3d 955, 961 (2d Cir. 1997). Accordingly, even where (unlike here) experts disclose improper and/or untimely rebuttal reports, courts nevertheless deny motions to exclude if the noncompliant disclosure causes no prejudice to the opposing party. *See, e.g., RVC Floor Decor, Ltd. v. Floor & Decor Outlets of Am., Inc.*, No. 18 Civ. 6449, 2023 WL 2838423, at *5 (E.D.N.Y. Apr. 7, 2023) (holding that "regardless of whether the . . . report is a timely served rebuttal or an untimely served initial expert report, wholesale preclusion of the report is unwarranted" based on *Softel* factors "particularly due to the fact that Defendant will suffer no prejudice"); *Brink's,* 2024 WL 4227760, at *6 (even where a "proposed rebuttal report presents new legal arguments or otherwise goes beyond the bounds of Rule 26(a)(2)(D)(ii), the court may permit the rebuttal report if the [] disclosure causes no prejudice." (citation omitted)).

This Court's approach in *JT Cleary, Inc. v. Narragansett Elec. Co.,* No. 22 Civ. 4533, 2024 WL 4627641 (S.D.N.Y. Oct. 30, 2024) (Figueredo, J.) is particularly pertinent. In *JT Cleary*, this Court denied the plaintiff's motion to strike supplemental reports submitted by defendants' experts after the deadline for the close of expert discovery. *Id.* at *1. This Court denied the motion to exclude even after finding that the untimely additional reports were neither proper rebuttal nor supplemental reports under Rule 26—and this Court did so based on the holding that preclusion of expert testimony would be a "harsh sanction" that—based on application of the *Softel* factors— was unnecessary because the untimeliness of the disclosures could be rendered harmless if the other side were afforded an additional opportunity to depose the expert about the supplemental reports. *Id.* at *4. Relevant to the Court's holding was a determination that, as is true for Dr.

Shapiro, the experts' opinions had not changed since his initial reports. *Id.* at *6-8 (noting that the expert's supplemental report was "more explicit" about the mechanics of his methodology, but finding that "he did not alter" his position). Additionally, in *JT Cleary*, a continuance to allow supplementation and further deposition testimony was possible because neither summary judgment nor trial had yet been scheduled (as is the case here). *Id.* at *6.

Here, even if Dr. Shapiro's reply had been improper (and it was not), the *Softel* factors would plainly weigh against exclusion. *First*, there was no failure by Harrington to comply with a discovery order—Dr. Shapiro's reports were timely and in full accordance with the parties' agreed-upon expert discovery schedule. *Second*, because Dr. Shapiro is Harrington's sole expert offering testimony relevant to Harrington's damages, his testimony is indisputably important to Harrington's case. *Third*, Defendants suffered no prejudice because they had ample opportunity to question Dr. Shapiro about his reply report during his ten-hour, two-day deposition. Indeed, Dr. Shapiro was specifically questioned about Eugene Fama-related testimony at least *18 times*. *Fourth*, no continuance is necessary here. Thus, even if Dr. Shapiro's report did exceed the permissible scope of a rebuttal/reply (and it did not), there would still be no basis for its exclusion.

### To the Extent that the Court Holds that Dr. Shapiro Made Any Errors in His Analysis, Harrington Should be Afforded an Opportunity to Submit a Supplemental Report.

As discussed above, there is a strong preference in the Second Circuit that cases be determined <u>on the merits</u> rather than by exclusion of one side's expert for making correctable mistakes. *See, e.g., In re Specialist & Other Vessel Owner Limitation Actions,* 2020 WL 8665287, at *2; *Powerweb Energy, Inc. v. Hubbell Lighting, Inc.,* No. 12 Civ. 220, 2014 WL 1572746, at *6 (D. Conn. Apr. 17, 2014) (denying motion to strike an improper supplemental report bolstering an expert's original opinion "[b]ased on the Court's balancing of the *Softel* factors, and the general preference to determine the issues on the merits"). As this Court has recognized, "***[b]efore the extreme sanction of preclusion may be used by the district court, a judge should inquire more fully into the actual difficulties which the violation causes, and must consider less drastic responses***." *JT Cleary*, 2024 WL 4627641, at *4 (emphasis added).

Given the extent to which the "drastic remedy" of exclusion is disfavored, to the extent that this Court holds that Dr. Shapiro made errors in his methodology, this Court *can and should* provide Harrington with an opportunity to submit a supplemental report in which Dr. Shapiro fixes the errors identified by the Court. The *Softel* factors would strongly militate in favor of permitting supplementation: (i) there has been no failure by Harrington to comply with any discovery order; (ii) Dr. Shapiro's testimony remains material to Harrington's case; (iii) any prejudice could be cured by permitting Defendants the opportunity to depose Dr. Shapiro about his supplemental report; and (iv) there are no scheduled trial or summary judgment dates. *Softel*, 118 F.3d at 961.[2]

There is ample authority demonstrating that this Court certainly has the discretion to permit such supplementation. For example, in *Amorgianos v. Nat'l R.R. Passenger Corp.,* 303 F.3d 256 (2d Cir. 2002)—a case cited affirmatively by *both* parties—one of the plaintiff's expert's trial testimony was stricken because in applying his methodology, he had failed to include all the

---

[2] At oral argument, Defendants argued that the Court must consider the *Softel* factors when deciding whether to exercise its discretion to allow Dr. Brogaard to supplement his report. *See* Day 2 Tr., Ex. B at 228:3-24. The *Softel* factors apply equally to any potential supplemental by Dr. Brogaard or Dr. Shapiro, and in both cases, they strongly favor affording Harrington's experts opportunities to supplement.

variables he had testified were necessary, even though available. *Id.* at 268. Nevertheless, <u>the district court granted plaintiff leave to supplement the expert's testimony</u> because he "could remedy the defects in his testimony" by using all the variables. *Id.* at 269 n.3. The expert's opinion was only excluded after he inexplicably declined to fix the errors in his testimony. *Id.*

Similarly, in *Beastie Boys v. Monster Energy Co.,* No. 12 Civ. 6065, 2014 WL 888235 (S.D.N.Y. Mar. 6, 2014), the Court permitted an expert to supplement her report even where her opinion contained *not* just a "minor flaw," but rather an error that was "large enough" that the report lacked "good grounds for [its] conclusions." *Id.* at *3. There, <u>even though the Court found that the expert's report contained a fatal flaw so "large" that it rendered her testimony inadmissible</u>, the Court <u>nevertheless</u> <u>gave the expert an opportunity to disclose a supplemental report less than two months before trial</u>." *Id.* at *3 (citing *Amorgianos,* 303 F.3d at 267).

To the extent that the Court finds that there were any flaws in Dr. Shapiro's reports, irrespective of whether they were "minor" or "large," or even large enough to warrant exclusion, permitting supplementation would unquestionably be more appropriate here than it was in either *Beastie Boys* or *Amorgianos*, where supplementation was permitted less than two months before trial, or even after trial, respectively. *See id.* at *1; *Amorgianos*, 303 F.3d at 259-60.[3] Here, not only has trial yet to be scheduled; *summary judgment* has yet to be scheduled. Harrington merely asks that, if the Court identifies any errors in Dr. Shapiro's reports, the Court not proceed directly to the "drastic" and harsh remedy of wholesale exclusion, but rather, permit the less drastic remedy of giving Dr. Shapiro the opportunity to correct his analysis. In such a scenario, any supplemental report disclosed by Dr. Shapiro would be limited to addressing and "fixing" those errors identified by the Court, and Defendants could be afforded additional time to question Dr. Shapiro about his supplemental report. *See JT Cleary*, 2024 WL 4627641, at *8 (permitting a supplemental report but granting the opposing party two hours to depose the expert about the supplemental report).

\* \* \*

For the reasons set forth above, there is no basis for Defendants' argument that this Court cannot consider Dr. Shapiro's reply report, this Court may consider Dr. Shapiro's initial and reply reports together, and to the extent this Court identifies any errors in Dr. Shapiro's analysis, this Court should permit Dr. Shapiro to submit a supplemental report based on the Court's holdings. The "drastic" result of exclusion that Defendants are seeking is not warranted, and Defendants' motion to exclude the testimony of Dr. Shapiro should be denied.

---

[3] In light of this precedent, it would be particularly appropriate to allow for supplementation here if, despite Harrington's arguments to the contrary [ECF 528 at pp. 21-22; Ex. A at 28:11-16], the Court is nonetheless influenced by the very recent case law cited by Defendants. *See, e.g., Phunware, Inc. v. UBS Sec. LLC*,2025 WL 2636568 (S.D.N.Y. Sept. 12, 2025); *Nw. Biotherapeutics, Inc. v. Canaccord Genuity LLC*, 2025 WL 368717 (S.D.N.Y. Jan. 31, 2025), *report and recommendation adopted*, 2025 WL 934319 (S.D.N.Y. Mar. 26, 2025); *M&N Trading LLC v. BofA Secs., Inc.*, 2024 WL 4651857 (N.D. Ill. Nov. 1, 2024)). Such cases were decided *after* Dr. Shapiro submitted his October 8, 2024 initial report setting forth his analysis. In other words, especially if the Court identifies an issue with the duration of the price impact of spoofing in light of caselaw post-dating Dr. Shapiro's expert report, the Court can and should exercise its discretion to permit Dr. Shapiro to submit a supplemental report fixing any errors by providing alternate calculations and/or amending his conclusions to conform to the Court's guidance.

Warshaw Burstein, LLP

Respectfully Submitted,

                WARSHAW BURSTEIN LLP

                By: */s/ Thomas Filardo*
                Alan M. Pollack
                Felicia S. Ennis
                Thomas Filardo
                Leron Thumim
                Meghan Hallinan
                575 Lexington Avenue, 7th Floor
                New York, New York 10022
                Tel.: (212) 984-7700
                apollack@wbny.com
                fennis@wbny.com
                tfilardo@wbny.com
                lthumim@wbny.com
                mhallinan@wbny.com

                CHRISTIAN ATTAR
                James Wes Christian
                Ardalan Attar
                2302 Fannin, Suite 205
                Houston, Texas 77002
                Tel.: (713) 659-7617
                jchristian@christianattarlaw.com
                aattar@christianattarlaw.com

cc: All counsel via ECF